DEAN S. KRISTY (CSB No. 157646)
dkristy@fenwick.com
JENNIFER BRETAN (CSB No. 233475)
jbretan@fenwick.com
CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
JOSHUA PARR (CSB No. 318549)
jparr@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

FELIX LEE (CSB No. 197084)
flee@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendant Temujin Labs Inc.
(Delaware)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARIEL ABITTAN, | Case No.:  5:20-cv-09340 |
| Plaintiff, | **DECLARATION OF JENNIFER C. BRETAN IN SUPPORT OF DEFENDANT TEMUJIN LABS INC. (DELAWARE)'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), DAMIEN DING (A/K/A DAMIEN LEUNG, A/K/A TAO DING), TEMUJIN LABS INC. (A DELAWARE CORPORATION), AND TEMUJIN LABS INC. (A CAYMAN CORPORATION), | Date:   May 19, 2021<br>Time:  1:00 PM<br>Place:  Courtroom 5, 4th Floor<br>Judge:  Hon. Nathanael Cousins |
| Defendants, | |
| and | |
| EIAN LABS INC., | |
| Nominal Defendant. | |

FENWICK & WEST LLP
ATTORNEYS AT LAW

I, Jennifer C. Bretan, hereby declare:

1.     I am an attorney admitted to practice before this Court and a partner at the law firm of Fenwick & West LLP, which represents defendant Temujin Labs Inc. (Delaware) ("Temujin Delaware").  I have personal knowledge of the matters set forth in this declaration and, if called upon to do so, could and would testify competently as to the matters described below.

2.     Attached as **Exhibit A** are true and correct copies of the certification of incorporation available from Delaware's Secretary of State and the entity details of Temujin Delaware as published online by the Delaware Secretary of State, Division of Corporations (last accessed March 30, 2021, available at https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx).

3.     Attached as **Exhibit B** is a true and correct copy of the Cayman Islands General Registry Report for Temujin Labs Inc. (Cayman) ("Temujin Cayman").

4.     Attached as **Exhibit C** is a true and correct copy of the July 3, 2019 Unanimous Action of Members of Juniper Venture Partners LLC approving the transfer of all assets from Eian Labs Inc. ("Eian") to Temujin Cayman.

5.     Attached as **Exhibit D** is a true and correct copy of the August 12, 2019 Intellectual Property Sale Agreement between Eian and Temujin Cayman.

6.     Attached as **Exhibit E** is a true and correct copy of the complaint filed by Temujin Delaware against Ariel Abittan and other co-defendants on November 6, 2020 in Santa Clara County Superior Court, *Temujin Labs Inc. v. Abittan et al.*, No. 20CV372622.

7.     Attached as **Exhibit F** is a true and correct copy of the Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline entered by the court in *Temujin Labs Inc. v. Abittan et al.* on November 9, 2020.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of April, 2021, at Piedmont, California.

By: /s/  *Jennifer C. Bretan*
Jennifer C. Bretan

FENWICK & WEST LLP
ATTORNEYS AT LAW

# Exhibit A



# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THAT "TEMUJIN LABS INC" IS DULY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD
STANDING AND HAS A LEGAL CORPORATE EXISTENCE NOT HAVING BEEN
CANCELLED OR DISSOLVED SO FAR AS THE RECORDS OF THIS OFFICE SHOW
AND IS DULY AUTHORIZED TO TRANSACT BUSINESS.

THE FOLLOWING DOCUMENTS HAVE BEEN FILED:

CERTIFICATE OF INCORPORATION, FILED THE SECOND DAY OF JULY,
A.D. 2019, AT 11:03 O`CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE TWENTY-SEVENTH DAY OF
JANUARY, A.D. 2020, AT 4:35 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID
CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE
AFORESAID CORPORATION, "TEMUJIN LABS INC".

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE
BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES
HAVE BEEN PAID TO DATE.



Jeffrey W. Bullock, Secretary of State

7497264  8310

SR# 20210627405

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 202590874

Date: 02-24-21

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies



**Department of State: Division of Corporations**

Allowable Characters

**HOME**

| Entity Details |
| --- |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 7497264 | Incorporation Date / Formation Date: | 7/2/2019 (mm/dd/yyyy) |
| --- | --- | --- | --- |
| Entity Name: | TEMUJIN LABS INC | | |
| Entity Kind: | Corporation | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | PARACORP INCORPORATED | | |
| --- | --- | --- | --- |
| Address: | 2140 S DUPONT HWY | | |
| City: | CAMDEN | County: | Kent |
| State: | DE | Postal Code: | 19934 |
| Phone: | 302-697-4590 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

Submit

View Search Results      New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

# Exhibit B



# Search Report

---

**Entity Name :**    Temujin Labs Inc
**Jurisdiction :**    Cayman Islands
**Registration Number :**    353128
**Registration Date :**    02nd July 2019
**Entity Type :**    EXEMPT
**Registered Office :**    AEQUITAS INTERNATIONAL MANAGEMENT LTD.
P. O. Box 10281
Grand Pavilion Commercial Centre,
Suite 24, 802 West Bay Road,
Grand Cayman  KY1-1003
Cayman Islands

| | |
|---|---|
| **Status :** | ACTIVE |
| **Status Date :** | 02nd July 2019 |

---

- INFORMATION REGARDING THE CORPORATE RECORDS AND REGISTERS ARE NOT AVAILABLE FOR PUBLIC INSPECTION

- THIS REPORT DOES NOT CONFIRM THE ENTITY IS IN GOOD STANDING

Authorisation Code : 697672256313
www.verify.gov.ky
07 January 2021

Exhibit C

## UNANIMOUS ACTION OF MEMBERS
Juniper Venture Partners LLC

The undersigned, being all the members of Juniper Venture Partners LLC (the "Company"), pursuant to the provisions of Section 18-404(d) of the Delaware Limited Liability Company Act, agree that the following action shall be deemed duly taken as if taken at a regularly called meeting and entered into the minutes of the company:

WHEREAS the Company is a shareholder of Eian Labs, Inc, a Delaware corporation. ("Eian Labs")

WHEREAS Eian Labs owes a debt in the amount of approximately $300,000 (the "Debt") to Temujin Labs Inc (the "Creditor");

WHEREAS Eian Labs has no sufficient assets to repay the Debt;

WHEREAS the Creditor is willing to purchase any and all assets of Eian Labs, both tangible and intangible (including intellectual property of Eian Labs) for $1.00 in satisfaction of Company's debt obligation to Creditor; and

RESOLVED:    It is in the Company's best interest to approve Eian Labs to sell all of its assets to Creditor for $1.00 as full settlement of the Debt owed to Creditor.

RESOLVED:    The Company approves that Eian Labs is authorized to enter into a settlement and mutual release agreement as well as asset purchase agreement with the Creditor, the forms of which are set forth on Exhibit A attached here to.

RESOLVED:    That any executive officer of the Company, and each of them acting singly, is hereby authorized, empowered and directed to take any further action, including the execution of such additional documents, as such person may deem necessary, appropriate or desirable to carry out the intent of the above resolution.



By: <u>Guanghua Liang</u>
Title: CEO of Member Fourhair LLC

By: Ariel M. Abittan, Member

Dated: July 3, 2019

# Exhibit D

# INTELLECTUAL PROPERTY SALE AGREEMENT

This Intellectual Property Sale Agreement (this "***Agreement***") is entered into on August 12, 2019 (the "***Effective Date***") by and between Eian Labs Inc., a Delaware corporation ("***Seller***"), and Temujin Labs Inc., an exempted company incorporated in the Cayman Islands ("***Purchaser***").

## RECITALS

**WHEREAS**, Seller desires to sell, transfer and assign all of its right, title, and interest in and to the assets specified in Schedule 1 hereto (the "**Acquired Assets**") to Purchaser, and Purchaser desires to purchase the Acquired Assets from Seller, on the terms set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. <u>Purchase and Sale of Acquired Assets</u>.  Subject to the provisions of this Agreement, Seller shall sell to Purchaser and Purchaser shall purchase from Seller all of Seller's right, title, and interest in and to the Acquired Assets, effective as of the Effective Date.

2. <u>Consideration</u>.  In exchange for the Acquired Assets, Purchaser shall pay to Seller a purchase price of $300,000 USD (the "***Purchase Price***"), payable within five (5) business days after the Effective Date.

3. <u>Representations and Warranties of Seller</u>.  Seller represents and warrants to Purchaser as follows:

   a. Seller is a company duly organized, validly existing, and in good standing under the State of Delaware.

   b. Seller has all requisite legal power and authority to enter into, execute, deliver and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

   c. The execution and delivery by Seller of this Agreement, and the assignment and transfer of the Acquired Assets to Purchaser, does not conflict with, or result in any violation of or default under (with or without notice or lapse of time, or both), any contract, concession, franchise, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or to any of the Acquired Assets.

   d. This Agreement has been duly executed and delivered by Seller.

   e. This Agreement is a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, subject only to the effect, if any, of

(i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

4.  Representations and Warranties of Purchaser.  Purchaser represents and warrants to Seller as follows:

a.  Purchaser is a company duly organized, validly existing, and in good standing under the laws of Cayman Islands.

b.  Purchaser has all requisite legal power and authority to enter into, execute, deliver and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

c.  The execution, delivery, and performance of this Agreement by Purchaser of this Agreement, and the transactions contemplated herein, do not conflict with, or result in any violation of or default under (with or without notice or lapse of time, or both), any contract, concession, franchise, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Purchaser.

d.  This Agreement has been duly executed and delivered by Purchaser.

e.  This Agreement is a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject only to the effect, if any, of (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

5.  DISCLAIMER OF WARRANTIES.  EXCEPT AS EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT, SELLER HEREBY DISCLAIMS ALL CONDITIONS, WARRANTIES, AND STATEMENTS IN RESPECT OF THE ACQUIRED ASSETS, WHETHER EXPRESS OR IMPLIED, BY STATUTE, CUSTOM OF THE TRADE, OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY SUCH CONDITION, WARRANTY, OR STATEMENT RELATING TO THE DESCRIPTION OR QUALITY OF THE ACQUIRED ASSETS, THEIR MERCHANTABILITY OR THEIR FITNESS FOR A PARTICULAR PURPOSE OR USE UNDER ANY CONDITIONS) AND ANY SUCH CONDITION, WARRANTY OR STATEMENT IS HEREBY DISCLAIMED BY SELLER AND EXCLUDED.  IN NO EVENT SHALL SELLER BE LIABLE UNDER OR WITH RESPECT TO THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, BREACH OF WARRANTY, TORT, OR BREACH OR REPUDIATION OF ANY TERM OR CONDITION OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT NOTHING IN THIS AGREEMENT OR ANY ASSIGNMENT INSTRUMENT SHALL LIMIT

THE LIABILITY OF SELLER OR PURCHASER TO THE OTHER PARTY PURSUANT TO ARTICLE 6 HEREOF FOR SUCH DIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OR LOSS OF PROFITS OF ANY THIRD PARTY PAID BY THE OTHER PARTY TO SUCH THIRD PARTY.

6.   Indemnification.

   a.   Subject to the limitations of this Section 7, Seller shall indemnify and hold harmless Purchaser and its directors, officers, agents and employees and each person who controls or may control Purchaser (the "***Purchaser Indemnified Persons***") after the Effective Date from and against any and all losses, liabilities, damages, costs and expenses, including costs of investigation and defense, reasonable legal fees and expenses and other professionals' and experts' reasonable fees and expenses (collectively, "***Damages***") arising from assessments, claims, demands, assertions of liability or actual or threatened actions, suits or proceedings (whether civil, criminal, administrative or investigative) directly or indirectly incurred, paid or accrued in connection with, resulting from or arising out of:

      (i)   the breach of any representation or warranty made by Seller pursuant to Section 4 of this Agreement; and

      (ii)   any acts, failures to act, or events relating to the Acquired Assets and occurring prior to the Effective Date.

   b.   Subject to the limitations of this Section 6, Purchaser shall indemnify and hold harmless Seller and its directors, officers, agents and employees and each person who controls or may control Seller (the "***Seller Indemnified Persons***") after the Effective Date from and against any and all Damages arising from assessments, claims, demands, assertions of liability or actual or threatened actions, suits or proceedings (whether civil, criminal, administrative or investigative) directly or indirectly incurred, paid or accrued in connection with, resulting from or arising out of:

      (i)   the breach of any representation or warranty made by Purchaser pursuant to Section 3 of this Agreement;

      (iv)   any acts, failures to act, or events relating to the Acquired Assets and occurring after the Effective Date.

   c.   The period during which claims for indemnification may be initiated (the "***Claims Period***") shall begin on the Effective Date and shall end 12 months thereafter.

   d.   If either party (the "***Indemnitee***") becomes aware of a third-party claim which such party believes may result in a claim against the other party (the "***Indemnitor***") by or on behalf of an Indemnified Person, the Indemnitee shall promptly notify the Indemnitor of such third-party claim, and the Indemnitor shall be entitled, at its expense, to participate in, but not to determine or conduct, any

3

defense of such claim. No delay in providing, or failure to provide, such notice shall affect the Indemnitee's rights hereunder so long as the Indemnitor has not been materially prejudiced thereby. The Indemnitee shall have the right in its sole discretion to conduct the defense of and to settle any such claim; provided, however, that, except with the consent of the Indemnitor, which consent shall not be unreasonably withheld, conditioned or delayed and which shall be deemed to have been given unless the Indemnitor shall have objected within 20 days after a written request for such consent by the Indemnitee, no settlement of any such claim with any third party claimant shall be determinative of the existence of or amount of Damages relating to such matter. If the Indemnitor has consented to any such settlement, the Indemnitor shall have no power or authority to object to the amount of any claim by or on behalf of any Indemnified Person for indemnity with respect to such settlement.

7.   Confidential Information.

  a.   Seller shall use every reasonable effort to keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others any Confidential Information. As used herein, the term "**Confidential Information**" shall mean all information with respect to the Acquired Assets, including, without limitation, information with respect to any financial statements, marketing plans, budgets, third party contracts, technology, trade secrets, design specifications, formulae, processes, methods, procedures, formats, and data.

  b.   Paragraph (a) shall not apply in the case of Confidential information which (i) at the time of receipt or thereafter becomes generally known to the public through no wrongful act of Seller, (ii) is disclosed to Seller by a third party having a bona fide right to do so, (iii) is approved for release by the written authorization of Purchaser; or (iv) is disclosed pursuant to the requirement of a government agency, by court order, or by other operation of law after Purchaser has been given reasonable notice and an opportunity to object to such disclosures.

8.   Further Assurances. At the request of Purchaser, Seller shall take such action and execute such documents as Purchaser may reasonably require in order to complete, record, or perfect Seller's sale, assignment, and transfer of the Acquired Assets to Purchaser.

9.   Successors and Assigns. No party shall be entitled to assign its rights and obligations under this Agreement without the prior written consent of the other party; provided, however, that at any time a party shall be entitled, without the prior written consent of the other party, to assign its rights and obligations hereunder to an affiliate, but such assignment to an affiliate or third party shall not relieve the assigning party of its obligations hereunder. No permitted assignment shall be deemed effective until the assignee has executed and delivered in writing such instruments as are reasonably satisfactory to assure the other party that the assignee has assumed all of the obligations of the assigning party. This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and permitted assigns of the parties hereto. A merger or

consolidation of a party with or into a third party shall not be considered an assignment hereunder.

10. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to its choice of laws or conflict of laws principles, as though entered into between residents of California. All disputes arising out of this Agreement shall be subject to the exclusive jurisdiction and venue of the federal or state courts located in Santa Clara County, California. Each party consents to the personal and exclusive jurisdiction and venue of these courts.

11. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Each Party hereby covenants and agrees to execute all duplicates or replacement counterparts of this Agreement as may be required.

12. Severability. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement, the balance of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms and the parties shall substitute a valid provision with the same intent and economic effect.

13. Notices. Any notice or other documents to be given under this Agreement shall be in writing and shall be deemed to have been duly given if sent by an internationally recognized overnight courier to the recipient's address specified below, provided that such courier regularly delivers to addresses in that area, by facsimile transmission at the facsimile number specified below, or to such other address or number as the party may from time to time designate by written notice to the other:

      To Seller:           Eian Labs Inc.
                            468 Middlefield Rd
                            Atherton, CA 94107

      To Purchaser:     Temujin Labs Inc.
                            Grand Pavilion Commercial Centre, Suite 24, 802 West Bay Road, P.O. Box 10281, Grand Cayman KY1-1003, Cayman Islands

**IN WITNESS WHEREOF,** the parties hereto have each caused this Agreement to be duly executed as of the date and time first written above.

**Eian Labs Inc.**

By: _____

Name: _Guanghua Ling_

Title: _Director_

Date: _8/12/2019_

**Temujin Labs Inc.**

By: _____

Name: _____

Title: _Director_

Date: _08/12/2019_

6

DRAFT

## Schedule 1

## Acquired Assets

All intellectual property rights that are owned by Seller, including but not limited to all know-how, software in both source and object code forms, drawings, designs, technology, ideas, processes, formulas, compositions, data, techniques, improvements, inventions (whether patentable or not), works of authorship, mask works, trade secrets, domain names, URLs, web sites, unique names, logos used or proposed to be used in the business, business and product development plans, market studies, financial projections, customer lists, and all other information and items relating to the business of Eian Labs, Inc., as well as any precursors, derivatives, modifications, and improvements to the same, and any related materials (including but not limited to documentation, designs, algorithms, notes, etc. related thereto).

Exhibit E

E-FILED
11/6/2020 12:16 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV372622
Reviewed By: R. Walker

1 TYLER NEWBY (CSB No. 205790)
tnewby@fenwick.com
2 JENNIFER BRETAN (CSB No. 233475)
jbretan@fenwick.com
3 CASEY O'NEILL (CSB No. 264406)
coneill@fenwick.com
4 JOSHUA PARR (CSB No. 318549)
jparr@fenwick.com
5 FENWICK & WEST LLP
555 California Street, 12th Floor
6 San Francisco, CA 94104
Telephone: 415.875.2300
7 Facsimile: 415.281.1350

8 FELIX LEE (CSB No. 197084)
flee@fenwick.com
9 FENWICK & WEST LLP
801 California Street
10 Mountain View, CA 94041
Telephone: 650.988.8500
11 Facsimile: 650.938.5200

12 Attorneys for Plaintiff
Temujin Labs Inc.

13

14 SUPERIOR COURT OF THE STATE OF CALIFORNIA

15 COUNTY OF SANTA CLARA

16 TEMUJIN LABS INC.,

17 Plaintiff,

18 v.

19 ARIEL ABITTAN, BENJAMIN FISCH,
CHARLES LU, and DOES 1-10,
20 inclusive,

21 Defendants.

22

23

24

25

**Case No.: 20CV372622**

**COMPLAINT FOR DECLARATORY RELIEF, CIVIL CONSPIRACY, TORTIOUS INTERFERENCE, BREACH OF CONTRACT, TRADE SECRET MISAPPROPRIATION UNDER CAL. CIV. CODE §§ 3426 ET SEQ., VIOLATION OF CAL. PENAL CODE 502(C), CONVERSION, BREACH OF FIDUCIARY DUTY, AND DAMAGES AND INJUNCTIVE RELIEF**

**[DEMAND FOR JURY TRIAL]**

26    Plaintiff Temujin Labs Inc. ("Temujin" or the "Company") hereby alleges for its

27 Complaint against defendants Ariel Abittan, Benjamin Fisch, and Charles Lu as follows, upon

28 information and belief:

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

COMPLAINT                                          1                              CASE NO:

**NATURE OF THE CASE**

This case arises in the high technology space. Plaintiff Temujin Labs Inc. (also known as "Findora") is a successful financial technology company founded at Stanford University. Defendants are (1) an investor in an unrelated company, (2) a former consultant to the Company, and (3) a former employee. Dissatisfied with their ability to share in Temujin's financial and operational successes, Defendants have banded together to obstruct the Company's progress while preparing to launch competing ventures. In recent weeks, they have conspired to (a) assert a frivolous and false claim of ownership of the Company, (b) misappropriate Company trade secrets, (c) usurp and interfere with control of and access to the Company's assets, such as social media accounts, and (d) interfere with and obstruct Company relationships with investors and business partners. Temujin is entitled to immediate injunctive relief redressing these wrongs and monetary and exemplary damages.

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Temujin Labs Inc. (Delaware) ("Temujin DE") is a Delaware corporation registered with the California Secretary of State and doing business in Santa Clara County under the name "Findora." It is wholly owned by Temujin Labs Inc. (Cayman) ("Temujin Cayman" and together with Temujin DE, "Temujin" or the "Company"), a foreign company organized under the laws of the Cayman Islands.

2.      Defendant Ariel Abittan resides in Lawrence, New York and is a shareholder of a Delaware limited liability company called Juniper Venture Partners LLC ("JVP"). JVP is the majority shareholder of Eian Labs Inc. ("Eian") (formerly known as Porepsus Labs Inc), a Delaware corporation. Neither Mr. Abittan, nor JVP, nor Eian holds any shares of Temujin.

3.      Defendant Benjamin Fisch is a former consultant to Temujin who resides in Menlo Park, California. Mr. Fisch worked with Temujin pursuant to a Consulting Agreement and parallel advisory agreement, effective July 5, 2019. He has since ended his consulting relationship with Temujin.

4.      Defendant Charles Lu is the former Chief Executive Officer ("CEO") of Temujin. Mr. Lu first joined Temujin on July 5, 2019. He has since resigned from Temujin. Temujin is

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

informed, believes, and thereon alleges that Mr. Lu is a resident of California, but is uncertain where he resides.

5.      Defendant Does 1 through 10, inclusive, are sued herein under fictitious names because their true names, capacities, and the extent of their involvement are unknown to Temujin at this time.  When their true names, capacities, and the extent of their involvement are ascertained, Temujin will amend this Complaint.  Temujin is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and for damages suffered by Temujin.

6.      Temujin is informed, believes, and thereon alleges that Mr. Abittan, Mr. Fisch, and Mr. Lu, (collectively, "Defendants") are each an adult residing or doing business in the state of California.

7.      Venue is proper in the County of Santa Clara because various contracts that are the subjects of this action were entered into in this county and many of the wrongful acts alleged herein occurred in this county.

## **TEMUJIN AND ITS BUSINESS**

8.      Temujin Cayman was incorporated in July 2019 under the laws of the Cayman Islands.

9.      Temujin DE was incorporated in July 2019 in the state of Delaware.

10.     Temujin develops software products that carry the "Findora" brand name.  One such product is the Findora Ledger.  The Findora Ledger is an online and digital transactional system.  Put simply, the Findora Ledger facilitates online transaction processing in a way that is auditable—through a public and decentralized process—but also confidential.  Because it is auditable, and yet does not sacrifice user privacy, the Findora Ledger represents a significant advancement in the digital transaction processing space.

11.     The Findora Ledger relies on blockchain-based technology.  The term "blockchain," in this context, means that transactions are verified in a decentralized manner by market participants who run software that confirms and records the transactions.  Blocks of verified transactions are periodically added to a ledger, and hence the term blockchain developed

to describe the ledger.

12.     Temujin acquired the intellectual property underpinning the Findora Ledger from Eian pursuant to an Intellectual Property Sale Agreement dated August 12, 2019 (the "IP Sale Agreement").

13.     Eian is a defunct Delaware corporation that is no longer in good standing with the Delaware Secretary of State.  Temujin is informed, believes, and thereon alleges that Eian is jointly owned by two shareholders: JVP and Lakeside Garden Heritage LLC ("Lakeside").

14.     Under the IP Sale Agreement and in exchange for consideration in the amount of $300,000, Eian sold all of its intellectual property to Temujin.  The IP Sale Agreement describes the "Acquired Assets," which became the property of Temujin pursuant to the agreement, as follows:

> All intellectual property rights that are owned by [Eian], including but not limited to all knowhow, software in both source and object code forms, drawings, designs, technology, ideas, processes, formulas, compositions, data, techniques, improvements, inventions (whether patentable or not), works of authorship, mask works, trade secrets, domain names, URLs, web sites, unique names, logos used or proposed to be used in the business, business and product development plans, market studies, financial projections, customer lists, and all other information and items relating to the business of Eian Labs, Inc., as well as any precursors, derivatives, modifications, and improvements to the same, and any related materials (including but not limited to documentation, designs, algorithms, notes, etc. related thereto).

15.     Further, the IP Sale Agreement provides that "each party consents to the personal and exclusive jurisdiction and venue of" federal or state courts located in Santa Clara County, California.

16.     Temujin is informed, believes, and thereon alleges that at the time of the negotiation and execution of the IP Sale Agreement, JVP had only two shareholders (Fourhair LLC and Defendant Ariel Abittan), and that Guanghua Liang was manager of JVP.

17.     The IP Sale Agreement was unanimously approved by Eian's Board of Directors as well as its shareholders.  Further, the IP Sale Agreement was unanimously approved by JVP's members, including Mr. Abittan.

18.     On July 3, 2019, by unanimous action of its members, JVP (acting as a shareholder

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of Eian) authorized Eian to sell "all of its assets" to Temujin.  Both of JVP's members at that time, Mr. Abittan and Fourhair LLC approved of the proposed sale.

19.     On August 10, 2019, the Board of Directors of Eian unanimously approved of the sale of "substantially all of [Eian's] assets" to Temujin.

20.     On August 13, 2019, Eian's shareholders unanimously approved of the intellectual property sale.

21.     Eian does not own any shares of Temujin DE or Temujin Cayman.

### DEFENDANTS' INTERFERENCE WITH TEMUJIN'S BUSINESS

22.     Despite the above transactional history – and without basis – Defendant Ariel Abittan in recent weeks has represented to co-founders and current and former employees of Temujin, including Defendants Benjamin Fisch and Charles Lu, that Mr. Abittan is the rightful owner of Temujin and/or its intellectual property, ostensibly by virtue of his stake in JVP and/or Eian.

23.     On or about October 15, 2020, Mr. Abittan represented to Temujin and its counsel that he was a majority shareholder of Temujin by virtue of his stake in Eian.

24.     Upon information and belief, Mr. Abittan has made similar representations regarding his supposed interest in Temujin and/or its intellectual property to several current and former employees, advisors, affiliates, and investors of Temujin for the purpose of obstructing Temujin from conducting its business.

25.     On or about October 21, 2020, several founders, employees, and consultants of Temujin, including Defendants Charles Lu and Benjamin Fisch and Temujin advisors Dan Boneh, Balaji Srinivasan and Rosario Gennaro, resigned from the Company.

26.     Upon information and belief, the employees and advisors who resigned on or about October 21, 2020 from their roles with Temujin were encouraged to do so by Mr. Abittan's false assertions of ownership of Temjuin and his other false and misleading representations.

27.     Temujin is informed, believes, and thereon alleges that, since the mass resignation, or in anticipation of the same, Mr. Abittan, Mr. Lu, and Mr. Fisch have acted in concert to obstruct the continued operation of Temujin's business in several ways, including but not limited

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

to the following:

a. Obstructing Temujin's access to its social media accounts by improperly withholding the credentials to those accounts from Temujin;

b. Attempting to open source and/or benefit from open-sourcing Temujin's confidential and proprietary source code;

c. Interfering with Temujin's relationships with its advisors, business partners, and investors; and

d. Soliciting Temujin employees to resign from Temujin.

## THEFT OF COMPANY SOCIAL MEDIA ACCOUNTS

28.     Temujin maintains certain social media accounts that it uses in connection with its business.  Among them are: Twitter (https://twitter.com/findoraorg); YouTube (https://www.youtube.com/channel/UCkhY3HZViowhJC4UWxfqpJw); Medium (https://medium.com/@findora); Telegram (https://t.me/findoranetwork); and Discord (https://discord.gg/2wrgyEn) (collectively, the "Social Media Accounts").  Upon information and belief, Defendant Charles Lu is in sole possession of the credentials to access each of the Social Media Accounts and/or may have changed the access credentials in anticipation of his resignation.

29.     Since resigning from Temujin, Mr. Lu has refused to provide the credentials to access the Social Media Accounts to any current Temujin employee, despite the Company demanding multiple times that he return the credentials in order to restore Temujin's access to its accounts and despite promises that the credentials would be forthcoming.

30.     Rather than provide Temujin the credentials to access the Social Media Accounts, Mr. Lu claims to have taken steps to escrow the credentials with an attorney.  Mr. Lu claims his actions are justified because he believes Ariel Abittan is the controlling shareholder of Temujin. In reality, however, Mr. Lu appears to be acting in concert with both Mr. Abittan and Defendant Benjamin Fisch to obstruct Temujin's ability to operate and to deny it the ability to access its Social Media Accounts, including by delay in providing Temujin with the access credentials.

## MISAPPROPRIATION AND PUBLIC DISCLOSURE OF COMPANY SOURCE CODE

31.     On information and belief, the actions of Mr. Abittan and Mr. Lu are the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

culmination of a months-long scheme formulated jointly by all three Defendants. Since as early as August 2020, Defendant Benjamin Fisch had proposed "open sourcing" (making available to the public through a permissive open source license) Findora source code, including the Findora Ledger and a related "Zei cryptography library" – all of which are proprietary Company software and data, that is, trade secrets.

32. On or about August of 2020, Mr. Fisch was engaged in discussions at Findora to open source the Company's Zei cryptography library. The Company's Board of Directors explicitly cautioned Mr. Fisch not to open source any of the Company's code or intellectual property without Board approval. Temujin's Board never approved releasing the Company's code to open source.

33. Despite the fact that Mr. Fisch was told to refrain from open sourcing Temujin source code, he has attempted to do just that.

34. Specifically, Mr. Fisch has attempted to open source Temujin's proprietary source code, including the Findora Ledger and Zei cryptography library software, by publishing it online under the pretext of a regulatory disclosure. Supposedly pursuant to export compliance regulations, on September 15, 2020, Mr. Fisch posted the code online pursuant to a highly permissive Massachusetts Institute of Technology ("MIT") license. Upon information and belief, Mr. Fisch did so in a manner that does not suggest any bona fide regulatory disclosure purpose, but rather, suggests it was done to make the code accessible to Messrs. Fisch, Lu, Abittan and their conspirators known and unknown, who have sought to misappropriate, misuse, and capitalize on the code, which comprises Temujin's most valuable trade secrets, following these individuals' October 2020 defection from the Company.

35. In publishing Temujin code in the manner he did, Mr. Fisch acted without authorization and with knowledge that doing so would risk diminishing the commercial value of the Findora Ledger and Zei cryptography library.

## INTERFERENCE WITH COMPANY BUSINESS AND INVESTOR RELATIONSHIPS

36. Messrs. Abittan, Fisch and Lu have also acted in concert to interfere with Temujin's business relationships. Reportedly, Defendants jointly contacted one of Temujin's

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

advisors and made representations concerning Mr. Abittan's illegitimate claim to ownership of either Temujin or its intellectual property by virtue of his ownership interest in Eian, in an attempt to discourage the advisor from advising Temujin further.

37.    Temujin also understands that Messrs. Abittan, Fisch and Lu have attempted to contact at least two other advisors to Temujin in similar attempts to disrupt Temujin advisory relationships.

38.    Upon information and belief, Messrs. Abittan, Fisch, and Lu have had similar communications with other advisors or business partners of Temujin.

39.    Upon information and belief, Defendants also have jointly contacted certain of Temujin's investors, in what is believed to be an attempt to disrupt the relationship between Temujin and those investors.

40.    In each of these communications, Defendants have falsely stated and/or implied that Mr. Abittan is the actual owner of Temujin.

## FOSTERING INTERNAL DISSENT AT COMPANY

41.    Finally, upon information and belief, Messrs. Abittan, Fisch, and Lu have communicated with and continue to communicate with current and former Temujin employees regarding Mr. Abittan's supposed ownership of Temujin and/or its intellectual property in an effort to sow distrust among Temujin employees, diminish morale, and obstruct Temujin's ability to conduct its business.

42.    Upon information and belief, through these communications, Defendants have solicited several current employees to disrupt and/or defect from the Company, encouraging employees to abandon Temujin and work with Defendants to leverage and/or cause delay to the development of Temujin's proprietary software code in an effort to compete with Temujin.

43.    As a consequence of the foregoing actions by Defendants, Temujin has been damaged, including economically and tangibly.  Among other costs incurred, Temujin's business operations have been disrupted and delayed, it has been forced to incur significant attorneys' fees and others costs to combat Defendants' efforts, and it has suffered and/or will suffer lost business opportunities.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**FIRST CAUSE OF ACTION**

(Declaratory Relief – All Defendants)

44.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

45.     Through the above-described actions, Defendants, acting in concert, seek to usurp control of Temujin's source codes.

46.     Those codes are Temujin's property exclusively.

47.     Temujin is entitled to and seeks declaratory relief confirming that the source codes to its cryptography library and its ledger are, in fact, the exclusive property of Temujin and that neither Defendants nor any third parties are entitled to use those codes.

**SECOND CAUSE OF ACTION**

(Civil Conspiracy – All Defendants)

48.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

49.     Through the above-described actions, Defendants, acting in concert through knowing and mutual agreement, formed a conspiracy and conspired.

50.     The purpose of the conspiracy was, in sum, to disrupt and interfere with Temujin's business operations for the sake of damaging Temujin, permitting Defendants to pursue competing ventures, and enriching Defendants unjustly.

51.     Defendants' operation of the conspiracy, through acts such as (a) publicizing Temujin's source codes without authorization, (b) fomenting dissent internally at Temujin, (c) interfering with Temujin's advisory, business, investor, and other relationships, and (d) refusing to hand over access credentials to Temujin's social media accounts, have damaged and continue to damage Temujin.

52.     As such, each Defendant is liable to Temujin on the basis of civil conspiracy, as a joint tortfeasor for all damages ensuing from the wrongs, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**THIRD CAUSE OF ACTION**

(Tortious Interference with Contract – All Defendants)

53.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

54.     Prior to the above-described actions by Defendants, Temujin had entered into numerous valid contracts with third parties, including advisors, investors, employees, and consultants.

55.     Defendants knew of the existence of those contracts.

56.     Defendants have carried out intentional, tortious acts, including false statements that Mr. Abittan owns Temjuin, designed to induce a breach or disruption of Temujin's contractual relationships.

57.     Those acts have disrupted or attempted to disrupt and/or caused actual breaches of Temujin's contractual relationships.

58.     Absent Defendants' interference, Temujin's contracts would have been performed.

59.     As a result of Defendants' interference, Temujin has been damaged, including economically and tangibly.

60.     As such, Defendants are liable to Temujin for tortious interference.

**FOURTH CAUSE OF ACTION**

(Breach of Contract – Charles Lu)

61.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

62.     On or about July 1, 2019, Temujin and Defendant Charles Lu entered into a written employment contract, whereby Mr. Lu would serve as Temujin's CEO.

63.     Among other contractual obligations Mr. Lu agree to, the employment contract stated: "During the period that you render services to the Company, you agree to not engage in any employment, business or activity that is in any way competitive with the business or proposed business of the Company."

64.     The contract further stated: "You will not assist any other person or organization in

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

competing with the Company or in preparing to engage in competition with the business or proposed business of the Company."

65.     Temujin performed under the contract in all material respects.

66.     Through the above-described actions, Mr. Lu breached the contract, and specifically, the quoted provisions of the contract prohibiting Mr. Lu from preparing to engage in, engaging in, and assisting others to engage in activity competitive with Temujin.

67.     Mr. Lu's breaches have resulted in damage to Temujin.

**FIFTH CAUSE OF ACTION**

(Breach of Contract – Charles Lu)

68.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

69.     On or about December 1, 2019, Temujin and Defendant Charles Lu entered into a written contract titled, "Employee Invention Assignment and Confidentiality Agreement."

70.     Among other contractual obligations Mr. Lu agreed to, the contract stated: "I agree that all Inventions that I make, create, conceive or first reduce to practice during the period of my employment . . . that (i) are developed using equipment, supplies, facilities or trade secrets of the Company; (ii) result from work performed by me for the Company; or (iii) relate to the Company's business or actual or demonstrably anticipated research or development (the "Assigned Inventions"), will be the sole and exclusive property of the Company."

71.     The contract further stated: "Upon termination of my employment with the Company, I will promptly deliver to the Company all documents and materials of any nature pertaining to my work with the Company, and I will not take with me or retain in any form any documents or materials or copies containing any Proprietary Information."

72.     The contract further stated: "During the period of my employment, I will at all times devote my best efforts to the interests of the Company, and I will not, without the prior written consent of the Company, engage in, or encourage or assist others to engage in, any other employment or activity that: (i) would divert from the Company any business opportunity in which the Company can reasonably be expected to have an interest; (ii) would directly compete

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

with, or involve preparation to compete with, the current or future business of the Company; or (iii) would otherwise conflict with the Company's interests or could cause a disruption of its operations or prospects."

73.     The contract further stated: "During my employment with the Company and for a one (1) year period thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my own benefit or for the benefit of any other person or entity, nor will I encourage or assist others to do so."

74.     Temujin performed under the contract in all material respects.

75.     Through the above-described actions, Mr. Lu breached the contract, and specifically, the quoted provisions of the contract confirming that work and inventions on behalf of Temujin are Temujin's exclusive property, requiring Mr. Lu to return Temujin's property upon his termination, and prohibiting Mr. Lu from competing with or soliciting employees from Temujin.

76.     Mr. Lu's breaches have resulted in damage to Temujin.

## SIXTH CAUSE OF ACTION

(Breach of Contract – Benjamin Fisch)

77.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

78.     On or about July 5, 2019, Temujin and Defendant Benjamin Fisch entered into a written contract titled, "Consulting Agreement," whereby Mr. Fisch would serve as a consultant to Temujin.

79.     Among other contractual obligations Mr. Fisch agree to, the contract stated: "Consultant agrees that during the term of this Agreement and thereafter it will not use or permit the use of Client's Confidential Information in any manner or for any purpose not expressly set forth in this Agreement, will hold such Confidential Information in confidence and protect it from unauthorized use and disclosure . . . ."

80.     The contract further stated: "Consultant agrees that during the Term of this Agreement, Consultant will not, without Client's express written consent, either directly or

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

indirectly engage in any employment or business activity that is competitive with, or would otherwise conflict with the Services rendered to, or that would otherwise interfere with the business of, the Client."

81.     The contract further stated: "Consultant agrees that during the Term of this Agreement, and for one year thereafter, Consultant will not either directly or indirectly, solicit or attempt to solicit any employee, independent contractor, or consultant of Client to terminate his, her or its relationship with Client in order to become an employee, consultant, or independent contractor to or for any other person or entity."

82.     Temujin performed under the contract in all material respects.

83.     Through the above-described actions, Mr. Fisch breached the contract, and specifically, the quoted provisions prohibiting Mr. Fisch from disclosing Temujin's proprietary information without authorization and from competing with or soliciting employees from Temujin.

84.     Mr. Fisch's breaches have resulted in damage to Temujin.

## SEVENTH CAUSE OF ACTION

(Breach of Contract – Benjamin Fisch)

85.     Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

86.     On or about July 5, 2019, Temujin and Defendant Benjamin Fisch entered into a written contract in the form of a letter agreement confirming and describing Mr. Fisch's role as an advisor to Temujin.

87.     Among other contractual obligations Mr. Fisch agree to, the contract stated: "All . . . knowledge, information and materials acquired [from or concerning Temujin], the existence, terms and conditions of this letter agreement, and all Designs and Materials, are and will be the trade secrets and confidential and proprietary information of the Company.  [ . . . ]  You agree to hold all such Confidential Information in strict confidence, not to disclose it to others or use it in any way, commercially or otherwise (including without limitation lecturing upon or publishing articles concerning Confidential Information), except in performing your obligations under this

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   letter agreement, and not to allow any unauthorized person access to it."

2         88.    The contract further stated: "You hereby represent that the obligations

3   contemplated hereby do not, in any way, conflict with any other agreement and/or commitment

4   on your part. You agree to inform the Company promptly and in writing if any such conflict

5   arises."

6         89.    The contract further stated: "During the term in which you provide services to the

7   Company pursuant to this letter agreement and for one year thereafter, you will not directly or

8   indirectly solicit away any employees or consultants of the Company for your benefit or for the

9   benefit of any other person or entity."

10         90.    Temujin performed under the contract in all material respects.

11         91.    Through the above-described actions, Mr. Fisch breached the contract, and

12   specifically, the quoted provisions prohibiting Mr. Fisch from disclosing Temujin's proprietary

13   information without authorization and from competing with or soliciting employees from

14   Temujin.

15         92.    Mr. Fisch's breaches have resulted in damage to Temujin.

16   **EIGHTH CAUSE OF ACTION**

17   (Trade Secret Misappropriation, Cal. Civ. Code §§ 3426, *et seq.* – All Defendants)

18         93.    Temujin reiterates and incorporates by reference the foregoing allegations in

19   Paragraphs 1 to 43.

20         94.    Temujin's source codes and other technical, confidential and proprietary

21   information related to Temujin's business are Temujin's "trade secrets" within the meaning of the

22   Uniform Trade Secrets Act enacted in California Civil Code §§ 3426-3426.11.  Such information

23   derives actual and potential economic value from not being generally known to the public or to

24   other persons who can obtain economic value from its disclosure or use.

25         95.    Temujin has made reasonable efforts to maintain and protect the secrecy of such

26   trade secrets, including by establishing clear and strict access and rights management to its

27   password protected repositories and implementing a fine-grained rights delegation of access only

28   to those for whom access is necessary and essential, and otherwise ensuring that such information

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

is password protected and restricted and that any employees or consultants with access to such information are bound by appropriate confidentiality and invention assignment agreements.

96.     Upon information and belief, Defendants, acting in concert, have misappropriated Temujin's source codes and other trade secrets by using and/or disclosing them without Temujin's authorization or consent and/or by permitting third parties to use the trade secrets without Temujin's authorization or consent.

97.     Defendants' misappropriation of Temujin's trade secrets has caused and will continue to cause Temujin substantial injury, including but not limited to lost profits and the diminution in value of its trade secrets.  In addition, Defendants have been unjustly enriched by their misappropriation of Temujin's trade secrets.

98.     Temujin is entitled to recover its actual damages from Defendants' misappropriation and/or to recover for Defendants' unjust enrichment resulting from the misappropriation.

99.     Temujin also is entitled to preliminary and permanent injunctive relief restraining Defendants' improper use and/or disclosure of Temujin's trade secrets.

100.    Defendants' misappropriation of Temujin's trade secrets is willful and malicious, and accordingly, Temujin is entitled to an award of exemplary damages and reasonable attorneys' fees and costs.

### NINTH CAUSE OF ACTION

(California Penal Code § 502(c) – Charles Lu)

101.    Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

102.    California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), at California Penal Code Section 502(c), permits one who "suffers damage or loss by reason of a violation" of the Section to bring a private civil action.  Cal. Penal Code § 502(e)(1).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

103.    Section 502(c) states as follows:

. . . . any person who commits any of the following acts is guilty of a public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

[ . . . ]

(3) Knowingly and without permission uses or causes to be used computer services.

(4) Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

[ . . . ]

(7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

104.    Temujin's Social Media Accounts and the access credentials thereto constitute "computer services," as well as a "computer, computer system, or computer network," as defined in California Penal Code Section 502(a).

105.    By knowingly and without permission accessing Temujin's Social Media Accounts, upon information and belief modifying access credentials to the accounts, usurping control over those accounts, and in denying and/or delaying Temujin access to those accounts by withholding credentials, Defendant Charles Lu violated each of the foregoing provisions.

106.    As a result, Temujin has been damaged, for which Mr. Lu is liable under Section 502(c).

## **TENTH CAUSE OF ACTION**

### (Conversion – Charles Lu)

107.    Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

108.    Temujin is and always has been the rightful owner and sole party with the exclusive right to possession of its Social Media Accounts, and the access credentials thereto, which accounts were created in Temujin's name for its benefit.

109.    Defendant Lu, by declining to return to Temujin the access credentials to those accounts, has wrongfully and actively converted property belonging to Temujin.

110.    As a result, Temujin has been damaged, for which Mr. Lu is liable.

**ELEVENTH CAUSE OF ACTION**

(Breach of Fiduciary Duty – Charles Lu)

111.    Temujin reiterates and incorporates by reference the foregoing allegations in Paragraphs 1 to 43.

112.    By virtue of his prior role as CEO of Temujin, Defendant Charles Lu owed Temujin and its shareholders the fiduciary duties of good faith, loyalty and care.

113.    Through the above-described activities, including the retention of access credentials for Temujin's Social Media Accounts following his departure from Temujin, Mr. Lu breached his fiduciary duties to Temujin and its shareholders.

114.    Mr. Lu's fiduciary breaches have proximately caused Temujin and its shareholders damage, for which Mr. Lu is liable.

**PRAYER FOR RELIEF**

WHEREFORE, Temujin requests entry of judgment in its favor against Defendants Ariel Abittan, Benjamin Fisch, and Charles Lu, and Does 1 through 10, inclusive, as follows:

1.    For declaratory relief, stating and confirming that the source codes to Temujin's cryptography library and its ledger are, in fact, the exclusive property of Temujin and that neither Defendants nor any third parties are entitled to use those codes;

2.    For preliminary and permanent injunctive relief, and/or an order of specific performance, restraining and enjoining Defendants and any third parties associated with Defendants from accessing or using Temujin's source codes for any commercial purpose;

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

3.    For compensatory, special, incidental and consequential damages according to proof;

4.    For exemplary and punitive damages to the extent permitted by law;

5.    For recovery of the unjust enrichment obtained by Defendants as a result of their wrongful conduct;

6.    For an award of prejudgment interest, the costs of suit, and reasonable attorneys' fees, to the extent permitted by contract or by operation of law; and

7.    For such other and further relief as the Court may deem just and proper.

DATED: November 6, 2020                    FENWICK & WEST LLP


By: _____
       Jennifer C. Bretan

Attorneys for Plaintiff
Temujin Labs Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all jury triable claims and issues in this action.

DATED:  November 6, 2020

FENWICK & WEST LLP

By: _____
       Jennifer C. Bretan

Attorneys for Plaintiff
Temujin Labs Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Exhibit F

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA  95113-1090**

**Electronically Filed**
**by Superior Court of CA,**
**County of Santa Clara,**
**on 11/10/2020 9:48 AM**
**Reviewed By: R. Walker**
**Case #20CV372622**
**Envelope: 5269595**

TO:      FILE COPY

RE:            Temujin Labs Inc. v. Abittan, et al.
CASE NUMBER:      **20CV372622**

**ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY**
**AND RESPONSIVE PLEADING DEADLINE**

WHEREAS, the Complaint was filed by Plaintiff **TEMUJIN LABS INC.** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **November 6, 2020** and assigned to Department **1** (Complex Civil Litigation), the **Honorable Brian C. Walsh**  presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:

The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400.  The matter remains assigned, for all purposes, including discovery and trial, to Department  **1** (Complex Civil Litigation), the **Honorable Brian C. Walsh**  presiding.

The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.

Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **TEMUJIN LABS INC.**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.

Pursuant to Government Code section 70616(c), each party's complex case fee is due within ten (10) calendar days of this date.

Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.

Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order.  Any response to the objection must be filed within seven (7) days of service of the objection.  The Court will make its ruling on the submitted pleadings.

The Case Management Conference remains set for **March 4, 2021 at 2:30 p.m. in Department 1** and all counsel are ordered to attend by **CourtCall**.

Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:

1. Issues related to recusal or disqualification;
2. Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;

-----
Updated on 7/30/20.

1

3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;
6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;
7. Any issues involving the protection of evidence and confidentiality;
8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:

1. A Statement as to whether additional parties are likely to be added and a proposed date by which all parties must be served;
2. Service lists identifying all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses and fax numbers for all counsel;
3. A description of all discovery completed to date and any outstanding discovery as of the date of the conference;
4. Applicability and enforceability of arbitration clauses, if any;
5. A list of all related litigation pending in other courts, including Federal Court, and a brief description of any such litigation, and a statement as to whether any additional related litigation is anticipated (CRC 3.300);
6. A description of factual and legal issues – the parties should address any specific contract provisions the interpretation of which may assist in resolution of significant issues in the case;
7. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;
8. Whether discovery should be conducted in phases or limited; and if so, the order of phasing or types of limitations of discovery.  If this is a class action lawsuit, the parties should address the issue of limited merits discovery in advance of class certification motions.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda.  The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case.  The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE**  Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction.  Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for

change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings. This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date: __November 9, 2020__

Hon. **Brian C. Walsh**
Judge of the Superior Court

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.