UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL ABITTAN,<br><br>        Plaintiff,<br><br>        v.<br><br>LILY CHAO, et al.,<br><br>        Defendants. | Case No. 20-cv-09340-NC<br><br>**ORDER GRANTING TEMUJIN LABS, INC. (DELAWARE)'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>Re: ECF 36 |

This case arises out of a dispute between Plaintiff Ariel Abittan and Defendants Lily Chao, Damien Ding, Temujin Labs, Inc. (Delaware), and Temujin Labs, Inc. (Cayman) over the assets and intellectual property of a financial technology venture, Findora. It is the second lawsuit between Temujin (Delaware) and Abittan; *Temujin Labs, Inc. v. Abittan*, No. 20-cv-372622 is pending in Santa Clara County Superior Court. The Court finds that Abittan's claims against Temujin (Delaware) should have been brought as compulsory counterclaims in the state action, and thus GRANTS Temujin (Delaware)'s motion to dismiss without leave to amend.

I. **BACKGROUND**

    A. **Factual Allegations**

Abittan first met Chao and Ding online in 2016. ECF 1 ¶ 27. Abittan, Chao, and Ding began transacting in "high-end" watches. *Id*. ¶ 29. The parties then formed a business arrangement to locate luxury watches and resell them for a profit. *Id*. at ¶ 32.

The relationship among the three continued to develop, and in 2017 they began to discuss using blockchain technology to facilitate secure and anonymous watch transactions. *Id.* ¶ 42.

Eventually, Abittan, Ding, and Chao formed several entities to pursue this technology as a new business opportunity, independently from the watch venture. *Id.* ¶¶ 43, 47. The three created Porepsus Labs Inc. to be the operating entity for developing and running the blockchain business. *Id.* ¶ 49, 50. Porepsus issued 672,000 shares of its common stock to Juniper Ventures Partners, LLC, an entity created as a partnership between Abittan and another entity called Fourhair LLC. *Id.* at 48–49. Porepsus also issued the remaining 176,471 shares of its common stock to Lakeside Garden Heritage LLC, an entity allegedly owned by the wife of Jack Ma, founder of Chinese e-commerce giant Alibaba. *Id.* ¶¶ 49. In October 2018, Porepsus changed its name to Eian Labs, Inc. *Id.* ¶ 51. Abittan, Chao, and Ding named the blockchain technology venture "Findora" for public-facing purposes, although Eian continued to hold the venture's rights and intellectual property. *Id.* ¶ 52.

In January and February 2018, Abittan began hiring employees for the Findora project. *Id.* ¶ 60. Abittan also had "operational responsibilities," including fundraising and investor pitches. *Id.* ¶ 62. Chao and Ding, however, "made it clear that they were in charge." *Id.* ¶ 63. By March 2019, Findora had prepared an operating demo and signed a contract with the Chinese government, and Chao and Ding "consistently represented" to Abittan that they had secured investments from "major players in China." *Id.* ¶¶ 64–65.

Relying on these representations, Abittan pursued investors from his own professional network, ultimately securing $1.2 million in funds for Findora. *Id.* ¶¶ 69–70. The investments came in the form of Simple Agreements for Future Tokens; these agreements ultimately called for converting invested funds into Findora coins at a discounted price if Findora conducted an initial coin offering ("ICO"). *Id.* at ¶ 71. But if Findora did not have an ICO, the investors were to receive their money back within 90 days. *Id.*

When the ICO did not occur, the investors demanded their money back. *Id.* ¶ 73. Responding to pressure, Abittan and Chao met with investors in March 2019 to propose a new deal: a promise to return their investments with a 25 percent annualized return if the Findora project did not issue coins. *Id.* ¶ 74. Chao also showed the investors a term sheet purporting a $10 million investment soon to come from a Chinese company, with a $60 million valuation for Findora. *Id.*

Abittan also alleges that in 2018, Chao began pressuring him to open credit card accounts for business purposes, in the names of Chao and other associated individuals. *Id.* ¶¶ 75, 77. Abittan alleges that Chao did not use the credit cards for business purposes. *Id.* ¶ 79. Instead, Chao used them for personal expenses including gifts from Saks Fifth Avenue, a piano for her children, fine wines, and online shopping, among other spending. *Id.* ¶ 79.

On July 2, 2019, Chao attempted to convince Abittan that they needed to create a Cayman entity to hold and control the Findora project. *Id.* ¶ 89. Chao argued that a Cayman entity was necessary to protect investors and minimize liability. *Id.* Chao met Abittan at 7:45 that night, immediately before Abittan needed to catch a 9:45 flight, and Chao insisted that Abittan sign paperwork to create the Cayman entity then and there. *Id.* ¶¶ 90–91. Chao represented, however, that Abittan's equity interest as a founder and his interest in Findora's intellectual property would remain unchanged. *Id.* ¶ 91. Abittan attempted to ask questions about the document, but Chao insisted that Abittan take her at her word. *Id.* ¶ 92. Abittan believed Chao's representations and, worried that he would miss his flight, signed the document. *Id.* Abittan later discovered that the document "purported to transfer all of Findora's assets [from Eian] to a new company called Temujin" in exchange for $300,000.00. *Id.* ¶ 95. Abittan alleges Findora's assets are worth "far more" than $300,000.00, and that he "never would have signed the paperwork had he known the truth." *Id.*

Chao and Ding then "quickly set to work shutting [Abittan] out of his own company." *Id.* ¶ 97. Chao and Ding hired new executives for Temujin, created a new

3

Findora website that failed to mention Abittan's name, and cut off Abittan's access to his Findora company email. *Id*. ¶¶ 98–100. On August 10, 2019, Eian's board of directors unanimously approved the sale of the Findora project and associated intellectual property to Temujin, and on August 13, 2019, Eian's shareholders approved the sale. *Id*. ¶ 101. Abittan alleges that he never saw any documents relating to the sale or shareholder approval. *Id*.

Later, Chao wired "significant sums of [Findora's] money" to a Chinese company called Xipin Group. *Id*. ¶ 115. Abittan alleges that Chao controls Xipin, that there was no legitimate purpose for the transfers, and that Chao effectively embezzled the funds for her own personal use. *Id*. ¶¶ 115–117. Eventually, many Findora employees began to resign "as a result of concerns about how Findora was being run." *Id*. ¶ 119. Chao and Ding then installed a new CEO—their personal driver Jianrong Wang—and continued to solicit token investments in the United States and Asia. *Id*. ¶ 120.

On November 6, 2020, Temujin (Delaware) filed a complaint against Abittan in Santa Clara County Superior Court alleging various business torts relating to the breakdown of the relationship between Chao, Ding, and Abittan. *See id*. ¶ 101; ECF 38. Abittan, however, does not allege any facts about the state court case in his federal complaint.

### B. Procedural History

In this federal case, Abittan alleges that Chao, Ding, and the Temujin entities improperly induced Abittan to sign away Findora's intellectual property for the "paltry sum" of $300,000.00. ECF 1 at 2. Abittan brings eight claims against Temujin (Delaware): (1) aiding and abetting breach of fiduciary duty; (2) fraudulent inducement; (3) unjust enrichment; (4) civil violations of the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. § 1962(c)); (5) conspiracy to commit civil RICO violations; (6) fraud; (7) conversion; and (8) an accounting. ECF 1 at 26–37. Temujin (Delaware) moves to dismiss all claims against it under Rule 12(b)(6) arguing that the claims are compulsory in the pending state court case, and for failure to state a viable claim. *See* ECF

4

1    36 at 6, 10.  Temujin (Delaware) alternatively moves to dismiss claims 1-3, which Abittan

2    brings derivatively on behalf of Eian Labs, Inc., under Rule 12(b)(1) because Abittan does

3    not have standing under Rule 23.1.  *See* ECF 36 at 9.

4    　　　Temujin (Delaware) filed the instant motion to dismiss on April 9, 2021, and the

5    remaining defendants filed a separate motion to dismiss on May 28, 2021.  *See* ECF 36;

6    53.  Thus, the Court addresses only Temjuin (Delaware)'s motion in this order; the other

7    pending motion will be addressed in a separate order.  The Court finds the motion suitable

8    for decision without oral argument and vacated the scheduled hearing.  ECF 45.  All

9    parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).

10   ECF 8, 18, 52, 66.

11   **II.    JUDICIAL NOTICE**

12   　　　Temujin (Delaware) asks the Court to judicially notice six documents.  ECF 38.

13   Abittan opposes judicial notice of all six documents.  ECF 49 at 2 n.2.  The only document

14   relevant to this order is the complaint filed in the pending Santa Clara Superior Court case,

15   ECF 37 ex. E, so the Court does not address the remaining five documents.  It is

16   appropriate to judicially notice "undisputed matters of public record" and court filings.

17   *See Lee v. City of Los Angeles*, 250 F.3d 68, 690 (9th Cir. 2001); *Reyn's Pasta Bella, LLC*

18   *v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Thus, the Court takes judicial

19   notice of the complaint filed in Santa Clara County Superior Court.

20   **III.   LEGAL STANDARD**

21   　　　A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

22   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To

23   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

24   true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

25   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

26   reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the

27   complaint and draw all reasonable inferences in favor of the non-moving party."  *Retail*

28   *Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**IV.   DISCUSSION**

Temujin (Delaware) offers three arguments for dismissal: (1) that all claims against it should have been brought as compulsory counterclaims in the state action; (2) that Abittan does not have standing to bring derivative claims on behalf of Eian Labs, Inc.; and (3) that the complaint fails to state a viable claim. *See* ECF 36 at 6, 9, 10. Because the compulsory counterclaim issue is dispositive of the motion, the Court does not address the remaining two arguments.

**A. Issue Preclusion Under State Procedural Law**

Temujin (Delaware) argues that all of Abittan's claims against it should be dismissed because they should have been brought as compulsory counterclaims in the earlier-filed state court action. Section 426.30(a) of the California Code of Civil Procedure provides:

> [I]f a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

*See* Cal. Code Civ. Proc. § 426.30(a); ECF 36 at 6–7. Having considered the parties' briefing, the Court finds that the California statute applies, that Abittan's claims are compulsory counterclaims under the statute, and that the claims must be brought in Temujin (Delaware)'s pending state action.

6

### 1. California Code of Civil Procedure Section 426.30

In response, Abittan argues that section 426.30 should not apply in federal court because it is a state procedural rule. ECF 49 at 7–8. Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1933), federal courts apply state substantive law but federal procedural law. ECF 49 at 7–8. Courts throughout the Ninth Circuit, however, have found that section 426.30 is "outcome determinative" and therefore substantive law applicable in federal court. *See, e.g., Minna v. Washer*, No. 09-cv-1373-DOC (ANx), 2010 WL 11595820, at *3 (C.D. Cal. May 5, 2010) (explaining that section 426.30 applies in federal court because "procedural rules of preclusive effect are different, since their application may implicate principles of *res judicata* or collateral estoppel"); *Laguna Beach Sober Living, LLC v. City of Dana Point*, No. 19-cv-00024-AG (JDEx), 2020 WL 947946, at *2 (C.D. Cal. Jan. 6, 2020) ("Though state procedural rules don't usually apply in federal court, [section 426.30] governs whether a federal claim should've been asserted as a compulsory counterclaim in an earlier-filed state court action."); *see also Pochiro v. Prudential Ins. Co. of America*, 827 F.2d 1246, 1249–50 (9th Cir. 1987) (holding that Arizona's similar compulsory counterclaim statute applies in federal court); *but see McErlain v. Park Plaza Towers Owners Ass'n*, No. 13-cv-3232-MMC, 2014 WL 5861767, at *1 (N.D. Cal. Nov. 12, 2014) (finding section 426.30(a) to be a procedural law and thus inapplicable in federal court, without engaging in an analysis of whether the statute is outcome determinative). Based on the "outcome determinative" *Erie* analysis, this Court agrees that section 426.30(a) is applicable in federal court.

In the alternative, Abittan also argues that section 426.30(a) should not apply because he has yet to file an answer in the state case. ECF 49 at 9. Section 426.30(b)(2) provides that the compulsory counterclaim rule does not apply if "[t]he person who failed to plead the related cause of action [in state court] did not file an answer to the complaint against him." Cal. Code Civ. Proc. § 426.30(b)(2). The Court finds, however, that this exception is meant to apply to parties who *never* filed an answer in the prior action, thus preserving their rights to pursue their claims after a default judgment; the exception is *not*

meant to apply to parties who will file an answer in due course. *See Creative Impact Inc. v. MGA Ent., Inc.*, No. 19-cv-07009-AG (ASx), 2019 WL 7906430, at *4 (C.D. Cal. Nov. 4, 2019) ("Section 426.30 only requires that Plaintiffs' [claims] exist at the time Plaintiffs file their answer to Defendant's state court claims, not that it be asserted before their answer is filed."); *compare with Clean Earth Sols., Inc. v. Vande Vegte*, No. 11-cv-2397-JM (WMc), 2012 WL 13175968, at *2 (S.D. Cal. Feb. 17, 2012) (finding that section 426.30 does not apply when a party "ignored" the previous lawsuit in state court before filing its own federal action).

The plain text of the statute requires parties to assert causes of action that exist "at the time of serving [an] answer to the complaint." *See* Cal. Code Civ. Proc. § 426.30(a). Thus, the temporal aspect of the statute focuses on whether it is *possible* for a party to assert the claim at the time of filing its answer, *not* on the precise timing of the pleadings in the state and federal actions. In fact, it is contrary to the statute's legislative history to argue otherwise. *See* 10 Cal. L. Rev. Comm. Reports 501, 547 (1970) ("[Section 426.30(b)(2)] permits a party to default without waiving any cause of action. If the party does not desire to defend the action and a default judgment is taken, it would be unfair if an additional consequence of such default were that all related causes of action the party had would be waived and extinguished.").

Here, there is no indication that Abittan plans to "ignore" the state court case to allow a default judgment to be entered against him. In fact, the parties have openly discussed voluntarily dismissing this federal case in favor of litigating the entire dispute in state court, as Temujin (Delaware) would prefer. *See* ECF 53 at 2. Furthermore, the parties have been actively engaged in the litigation process in state court. *See, e.g.,* Order Mooting *Ex Parte* Appl. for Order for Continuance, *Temujin Labs, Inc. v. Abittan*, No. 20-cv-372622 (Santa Clara Cnty. Superior Court 2021). Abittan's actions do not indicate an intention to "ignore" the state case, allowing a default judgment to be entered. Accordingly, the Court finds that the exception in section 426.30(b)(2) does not apply.

### 2. Abittan Must File His Claims Against Temujin Labs Inc. (Delaware) in State Court

Having found that section 426.30 applies in this context, the Court must next determine if Abittan's claims are "related" to those in the state court complaint, and thus compulsory counterclaims. California's Code of Civil Procedure defines "related" as a cause of action that "arises out of the same transaction, occurrence, or series of transactions or occurrences" as the claims alleged in the prior complaint. *See* Cal. Code Civ. Pro. § 426.10(c). California courts have adopted an "expansive, logical relation test" for making this determination; courts do not require "an absolute identity of factual backgrounds . . . but only a logical relationship among them." *See Currie Med. Specialties, Inc. v. Bowen*, 136 Cal. App. 3d 774, 777 (1982). Section 426.30 "must be liberally construed" to further the statute's purpose of "avoiding a multiplicity of actions" and preventing "piecemeal litigation." *Align Technology, Inc. v. Tran*, 179 Cal. App. 4th 940, 959–60 (2009); *see also Flickinger v. Swedlow Eng'g Co.*, 45 Cal.2d 388, 393 (1955) ("the obvious intent of the Legislature in enacting the counterclaim statutes . . . was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction.").

Here, the Court agrees with Temujin (Delaware) that all claims—in both the state and federal cases—hinge on the same dispute over whether Abittan owns "some part of the Findora project." ECF 36 at 8. Each claim in the federal case relates to an allegedly fraudulent effort by Defendants to deprive Abittan of his ownership interest in Findora, and each claim in the state court case relates to Abittan's alleged efforts to interfere with the Findora project after having voluntarily given up his ownership interest. ECF 36 at 2, 7. Far from being merely logically related, these claims have nearly "absolute identity of factual backgrounds," meeting and exceeding the "liberal" construction that California courts give the relatedness requirement under section 426.30. Therefore, Abittan's claims are compulsory counterclaims under the state statute and must be brought in the pending case in Santa Clara County Superior Court.

9

Accordingly, the Court GRANTS Temujin (Delaware)'s motion to dismiss. Because all of Abittan's claims against Temujin (Delaware) must be dismissed under section 426.30, the Court does not address Temujin (Delaware)'s remaining arguments for dismissal.

### B. Leave to Amend

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, the Court declines to grant leave to amend because there are no facts Abittan could plead to prevent these claims from being compulsory in the state action under section 426.30.

### V. CONCLUSION

For the foregoing reasons, Temujin (Delaware)'s motion to dismiss is GRANTED as to all claims against it without leave to amend. In a separate order on the second motion to dismiss, ECF 53, the Court will address how the remaining defendants should proceed.

**IT IS SO ORDERED.**

Dated: July 20, 2021

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

10