Craig A. Hansen (SBN 209622)
  Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
  Email: steve@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
  Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
  Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Defendant
Temujin Labs Inc., a Cayman corporation
By Special Appearance

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ARIEL ABITTAN<br><br>PLAINTIFF,<br><br>v.<br><br>LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), DAMIEN DING (A/K/A DAMIEN LEUNG, A/K/A TAO DING), TEMUJIN LABS INC. (A DELAWARE CORPORATION), AND TEMUJIN LABS INC. (A CAYMAN CORPORATION),<br><br>DEFENDANTS,<br><br>and<br><br>EIAN LABS INC.,<br><br>NOMINAL DEFENDANT. | Case No.:  5:20-CV-09340-NC<br><br>**DEFENDANT TEMUJIN LABS INC., A CAYMAN CORPORATON'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Date:      December 15, 2021<br>Time:      1:00 PM<br>Place:     Courtroom 5, 4th Floor<br>Judge:    Hon. Nathanael Cousins |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ............................................................................. 3

    A.   Parties .................................................................................................. 3

    B.   Findora Blockchain Technology .......................................................... 3

    C.   Plaintiff's Alleged Relationship with the Individual Defendants and the Findora Project .................................................................................................. 4

    D.   Alleged Improprieties At Findora ........................................................ 4

    E.   Formation of the Temujin Defendants and Sale of the Eian Assets ............................ 5

    F.   Plaintiff's Interference with Temujin's Business and Prior Pending Litigation .......... 5

    G.   Procedural History and Plaintiff's Claims ............................................ 6

III.   ARGUMENT .................................................................................................. 6

    A.   Plaintiff's Derivative Claims Violate the Pleading Requirements of Rule 23.1 in Multiple Respects and Must Therefore Be Dismissed ................................................ 6

        1.   The Derivative Claims Must be Dismissed As Unverified .............................. 6

        2.   Plaintiff Fails to Allege He Is (Or Ever Was) An Eian Shareholder ................ 7

    B.   Plaintiff Otherwise Fails to State a Viable Claim ................................ 7

        1.   All Claims Against Temujin Cayman Fail As Group Pleading ....................... 8

        2.   Plaintiff Has Not Adequately Pleaded a RICO Claim .................................. 9

            (a)   Plaintiff Fails to Allege the Required "Conduct" ............................. 10

            (b)   Plaintiff Fails to Allege a RICO "Enterprise" ................................. 11

            (c)   Plaintiff Fails to Allege a "Pattern" of Racketeering Activity ........... 12

            (d)   Plaintiff Fails to Allege "Racketeering" Activity .............................. 13

        3.   Plaintiff's RICO Conspiracy Claim Fails in Turn .......................................... 13

        4.   Plaintiff's State Law Claims Fail for Numerous Additional Reasons ............ 14

            (a)   The Derivative Aiding and Abetting Claim Fails ............................... 14

            (b)   The Derivative Fraudulent Inducement Claim Fails .......................... 15

(c)    Plaintiff Has Not Adequately Pleaded Fraud ..................................... 16

(d)    The Conversion Claim Fails ............................................................. 18

(e)    Plaintiff Cannot Recover on Grounds of Unjust Enrichment, Whether Derivative or Direct ........................................................................ 19

(f)    Plaintiff Is Not Entitled to an Accounting ......................................... 20

IV.    CONCLUSION ............................................................................................. 20

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 8

5

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ................................................................................... 14

6

7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................. 7

8

*Bus. Funding Grp., Inc. v. Architectural Renovators, Inc.*,
  1993 WL 104611 (Del. Ch. Mar. 31 1993)............................................................ 20

9

10

*City of Santa Monica v. Stewart*,
  126 Cal. App. 4th 43 (2005) ................................................................................... 18

11

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017)................................................................... 11

12

13

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) .................................................................................... 9

14

*DiGiacobbe v. Sestak*,
  2003 WL 1016985 (Del. Ch. Mar. 3, 2003)........................................................... 20

15

16

*Duggal v. G.E. Capital Commc'ns Services, Inc.*,
  81 Cal. App. 4th 81 (2000) ..................................................................................... 20

17

*Eclectic Properties E., LLC v. The Marcus & Millichap Co.*,
  2012 WL 713289 (N.D. Cal. Mar. 5, 2012), *aff'd*, 751 F.3d 990 (9th Cir. 2014)................... 10, 12

18

19

*Edejer v. DHI Mortg. Co.*,
  2009 WL 1684714 (N.D. Cal. Jun. 12, 2009).......................................................... 17

20

*Flores v. Strauss Water Ltd.*,
  2016 WL 5243950 (Del. Ch. Sept. 22, 2016) ..................................................... 15, 16

21

22

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
  2015 WL 401371 (Del. Ch. 2015) .......................................................................... 15

23

*Gantler v. Stephens*,
  965 A.2d 695 (Del. 2009) ....................................................................................... 16

24

25

*Gonzalez v. Planned Parenthood of Los Angeles*,
  759 F.3d 1112 (9th Cir. 2014) .................................................................................. 8

26

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ................................................................................................ 12

27

28

*Hartford Cas. Ins. Co. v. J.R. Marketing, LLC.*,
  61 Cal. 4th 988 (2015) ................................................................................... 20

*Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*,
  965 A.2d 715 (Del. Ch. 2008) ........................................................................ 14

*Hutchins v. Nationstar Mortgage LLC*,
  2017 WL 2021363 (N.D. Cal. May 12, 2017) ................................................ 20

*In re Accuray, Inc. S'holder Der. Litig.*,
  757 F. Supp. 2d 919 (N.D. Cal. Aug. 31, 2010) .............................................. 7

*In re Comverge, Inc. S'holders Litig.*,
  2014 WL 6686570 (Del. Ch. Nov. 25, 2014) ................................................. 15

*In re ConAgra Foods Inc.*,
  908 F. Supp. 2d 1090 (C.D. Cal. 2012) .......................................................... 20

*In re Extreme Networks Inc. S'holder Deriv. Litig.*,
  573 F. Supp. 2d 1228 (N.D. Cal. Aug. 12, 2008) ............................................ 6

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................................. 8

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009) ................................................. 12

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2020 WL 6271173 (N.D. Cal. Oct. 23, 2020) ................................................ 11

*In re MIPS Technologies Inc., Deriv. Litig.*,
  542 F. Supp. 2d 968 (N.D. Cal. Jan 11, 2008) ................................................ 7

*In re Tower Air, Inc.*,
  416 F.3d 229 (3d Cir. 2005) ........................................................................... 16

*In re Verisign Inc. Der. Litig.*,
  521 F. Supp. 2d 1173 (N.D. Cal. Sept. 14, 2007) ............................................ 7

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  2013 WL 12130034 (C.D. Cal. July 19, 2013) ............................................... 10

*Jolley v. Chase Home Finance, LLC.*,
  213 Cal. App. 4th 872 (2013) ......................................................................... 20

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................... 8, 17

*Keirsey v. eBay, Inc.*,
  2012 WL 12920765 (N.D. Cal. Aug. 6, 2012) ............................................... 20

*Kopchuk v. Countrywide Fin. Corp.*,
  2010 U.S. Dist. LEXIS 23884 (E.D. Cal. Mar. 15, 2010) .............................. 17

*Kuroda v. SPJS Holdings, LLC.*,
    971 A.2d 872 (Del. Ch. 2009) .................................................................................. 19

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ........................................................................................... 17

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ..................................................................................... 14

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*,
    6 Cal. App. 4th 603 (1992) ..................................................................................... 18

*McDermott, Inc. v. Lewis*,
    531 A.2d 206 (Del. 1986) ....................................................................................... 16

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*,
    833 F.2d 1360 (9th Cir. 1987) ................................................................................ 13

*Metaxas v. Lee*,
    2020 WL 7025095 (N.D. Cal. Nov. 30, 2020) ................................................. 12, 13

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ..................................................................................... 19

*Oakdale v. Village Group v. Fong*,
    43 Cal. App. 4th 539 (1996) ................................................................................... 19

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ........................................................................ 8, 11, 12

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) .................................................................................. 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................................................ 10

*Royce Int'l Broad. Corp. v. Field*,
    2000 WL 236434 (N.D. Cal. Feb. 23, 2000) .......................................................... 13

*Schoon v. Smith*,
    953 A.2d 196 (Del. 2008) ......................................................................................... 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................................ 13

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ...................................................................................... 7

*Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*,
    2020 WL 4342260 (C.D. Cal. May 22, 2020) ............................................. 11, 13, 14

*State Farm Mut. Automobile Ins. Co. v. Superior Court*,
    114 Cal. App. 4th 434 (2003) ................................................................................. 16

*Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996,*
302 F.3d 998 (9th Cir. 2002) ................................................................................... 12

*Stephenson v. Capano Development Co.,*
462 A.2d 1069 (Del. 1983) ...................................................................................... 15

*Stitt v. Citibank, N.A.,*
942 F. Supp. 2d 944 (N.D. Cal. 2013) ..................................................................... 10

*Sumotext Corp. v. Zoove, Inc.,*
2017 WL 2774382 (N.D. Cal. June 26, 2017) ........................................................... 8

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ..................................................................................... 8

*Tarmann v. State Farm Mut. Auto. Ins. Co.,*
2 Cal. App. 4th 153 (1991) ...................................................................................... 17

*Temujin Labs Inc. v. Abittan et al.,*
No. 20CV372622 (filed Nov. 6, 2020) ....................................................................... 6

*United States v. Bohonus,*
628 F.2d 1167 (9th Cir. 1980) ................................................................................. 13

*United States v. Cyphers,*
604 F.2d 635 (9th Cir. 1979) ................................................................................... 13

*United States v. Taylor,*
802 F.2d 1108 (9th Cir. 1986) ................................................................................. 13

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003) ................................................................................. 14

*Virden v. Graphics One,*
623 F. Supp. 1417 (C.D. Cal. 1985) ....................................................................... 13

*W. Airlines, Inc. v. Sobieski,*
191 Cal. App. 2d 399 (1961) ................................................................................... 16

*Wimo Labs LLC v. eBay, Inc.,*
2016 WL 11507382 (C.D. Cal. Jan. 28, 2016) .......................................................... 12

*Windsor I, LLC v. CWCapital Asset Mgmt. LLC,*
238 A.3d 863 (Del. 2020) ........................................................................................ 19

**Statutes**

18 U.S.C. § 1961(4) .................................................................................................. 11

18 U.S.C. § 1962(c) ............................................................................................ 9, 10, 11

8 Del. C. § 327 ............................................................................................................ 7

Cal. Civ. Proc. Code § 367 ...................................................................................... 18

Racketeer Influenced and Corrupt Organizations Act ................................................... 6, 13

**Rules**

Rule 12(b)(1) ................................................................................................................... 1

Rule 12(b)(6) ................................................................................................................... 1

Rule 23.1 ............................................................................................................... 1, 2, 6, 7

Rule 23.1(b) .................................................................................................................. 6, 7

Rule 8(a)(2) ....................................................................................................................... 8

Rule 9(b) ...................................................................................................................... 8, 14

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on December 15, 2021 at 1:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Nathanael M. Cousins, located at the United States District Court for the Northern District of California, 280 South First Street, 4th Floor, San Jose, California, Temujin Labs Inc., a Cayman corporation ("Temujin Cayman") will, and hereby does, move to dismiss the complaint (the "Complaint").  Temujin Cayman moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack standing and failure to state a claim. This motion is based on the Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice and Declaration of Stephen Holmes and exhibits thereto, the [Proposed] Order, the arguments of counsel, and any other matters properly before the Court.[1]

## ISSUES TO BE DECIDED

1.      Whether the Plaintiff lacks standing to assert derivative claims on behalf of Eian Labs Inc. ("Eian") given that the Complaint was not verified and Plaintiff is not a shareholder of Eian, both of which are mandated by Rule 23.1;

2.      Whether Plaintiff otherwise fails to state a claim against Temujin Cayman.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a case of seller's remorse. More than a year *after* Plaintiff Ariel Abittan ("Plaintiff") approved the sale of Eian's intellectual property assets to Temujin Cayman, and just as the blockchain project on which Temujin Cayman and Temujin Delaware (together the "Temujin Defendants")[2] had started to work (which they fully developed and named "Findora") was poised for great success, Plaintiff began making tortiously false claims that he controlled the project and the associated technology. Temujin Delaware filed suit against Plaintiff and various of his co-conspirators in Santa Clara County Superior Court to prevent further tortious interference, and to

---

[1]  Unless otherwise noted, references to Exhibits ("Ex.") are to exhibits to the Bretan Declaration (ECF No. 37), referenced in the accompanying Request for Judicial Notice.
[2]  Temujin Delaware is wholly owned by Temujin Cayman. The Complaint was dismissed as to Temujin Delaware by this Court's July 19, 2021 Order (ECF No. 78).

recover damages for injuries inflicted by Plaintiff's attempted sabotage of the Findora project.

In a transparent attempt to deflect from his misdeeds, Plaintiff filed this suit, making the revisionist claim that the sale of assets related to Findora was procured by fraud. This assertion is irredeemably flawed, first and foremost because nothing was concealed from Plaintiff. Plaintiff reviewed and was aware of the terms of the agreement when he approved the sale of Eian's assets to Temujin Cayman in his capacity as a member of the majority shareholder of Eian. Plaintiff has also held himself out to be Eian's CEO and purports "[o]n information and belief" to be an Eian director. To the extent he **now** claims he did not understand the terms of the sale – purportedly because he was in a hurry to catch a plane and did not read the sale documents carefully – this would merely reflect a breach of **his** fiduciary duties to Eian. While Plaintiff may now regret his decisions, or the lack of any role for him on the Findora project, no facts are pleaded in the Complaint that show fraud. Plaintiff's vague claims of a continuing "ownership" interest are unsupported by any agreement and are contradicted by the asset sale agreement he approved. That is not the basis for any lawsuit, much less one purporting to assert claims on Eian's behalf (given that he was never an Eian shareholder), or with sensationalized, but deficient, allegations of "racketeering."

The claims against Temujin Cayman also fail for a variety of other reasons. **First**, Plaintiff purports to assert four derivative claims on behalf of Eian against Temujin Cayman. Rule 23.1 expressly mandates, however, that any Complaint pleading derivative claims be verified, and Plaintiff's failure to do so requires that the derivative claims be dismissed. In addition, only a current shareholder of Eian can assert derivative claims on its behalf. Plaintiff is not now, and never was, a shareholder of Eian. These defects doom the derivative claims.

**Second**, the Complaint routinely conflates claims against Temujin Cayman with those against other defendants, blurring the lines between the entities and the individual defendants. In the Ninth Circuit, as elsewhere, "group pleading" of this sort is not permitted. The prohibition applies with particular force here given that Plaintiff's claims sound in fraud and are subject to heightened pleading requirements. No particularized facts are alleged demonstrating what Temujin Cayman did to further any alleged fraud (e.g., who said what and had authority to speak for whom). Nor could Plaintiff plead such facts. Temujin Cayman **did not exist** until July 2019, years after all or virtually

all of the alleged wrongdoing alleged in multiple causes of action purportedly pleaded against it.

*Third*, the array of other claims Plaintiff purports to allege (civil RICO, conversion, unjust enrichment, and for an "accounting") suffer from other defects and fail to state a claim against Temujin Cayman. For all these reasons, Plaintiff's Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. Parties

Plaintiff is an individual residing in New York. ¶ 21.  He claims to be a co-founder and co-owner of a venture Temujin Delaware operates under the trade name "Findora."  ¶¶ 21, 24.  Temujin Delaware is a Delaware corporation with its principal place of business in Santa Clara County, California and provides services in connection with the development and operations of Findora pursuant to agreement with Temujin Cayman. ¶ 24.  Temujin Cayman is a Cayman Islands corporation and wholly owns Temujin Delaware. ¶ 25.  Plaintiff also purports to assert claims against certain individuals allegedly associated with Findora: "Lily Chao (a/k/a Tiffany Chen, a/k/a Yuting Chen)" ("LC") and "Damien Ding (a/k/a Damien Leung, a/k/a Tao Ding)" (collectively, "Individual Defendants").  Plaintiff also names Eian (formerly known as Porepsus Labs Inc. ("Porepsus")) as a nominal defendant, and purports to bring derivative claims on Eian's behalf. ¶¶ 22-23, 26.

### B. Findora Blockchain Technology

Findora is a blockchain-based financial technology project.  ¶ 43.[3]  Its mission is to support an online platform where blockchain concepts verify transactions in a transparent way, while also protecting transaction privacy.  *See id.*  For example, the "Findora ledger" is designed to record transactions publicly, while maintaining the confidentiality of the types and amounts of digital assets exchanged.  Thus far, Findora products have shown great promise.  *See e.g.*, ¶ 156.

---

[3] "Blockchain" refers to a process whereby a list of records (typically of digital currency) is vetted and confirmed by network participants in a decentralized fashion.  Blocks of verified records are periodically recorded on a public ledger referred to as the blockchain.

### C.   Plaintiff's Alleged Relationship with the Individual Defendants and the Findora Project

Plaintiff claims he met the Individual Defendants buying and selling luxury watches on the internet around May 2016, over three years before either Temujin Defendant was incorporated. ¶¶ 27-34.  Plaintiff pleads no facts linking his "watch" venture to either Temujin Defendant or to Findora (*see* ¶¶ 27-41), but says he "developed a relationship of trust" with the Individual Defendants.  ¶¶ 35, 41.

In January 2018, Plaintiff claims he and the Individual Defendants formed Juniper Ventures Inc. ("JVI") to start a blockchain business, and Plaintiff became a 50% shareholder.  ¶¶ 43-44. Plaintiff allegedly became a 50% shareholder in a second entity, Juniper Ventures Partners, LLC ("Juniper").  ¶ 48.  A third entity, Porepsus, issued 672,000 shares of common stock to Juniper and 176,471 shares to a non-party.  ¶ 49.  Through his 50% stake in Juniper, Plaintiff claims an indirect interest in 336,000 shares of Porepsus (about 40% of the 848,471 issued in total), but alleges no direct shareholdings in Porepsus and does not claim he personally held shares.  *See id.*  In October 2018, Porepsus changed its name to Eian, which allegedly "held the rights to all of the intellectual property associated with the blockchain business" and the name "Findora." ¶¶ 51-52.

From 2018 until July 2019, Plaintiff claims he collaborated with the Individual Defendants and others to make Findora a success.  ¶ 59.  Despite no relevant experience in the area (at least as pleaded in the Complaint), he supposedly "handled all aspects of hiring and negotiating with employees," including Stanford University-affiliated blockchain and cryptography experts; helped "in the creation of at least one white paper" and with "fundraising and investor pitches"; and held other undefined "operational responsibilities."  ¶¶ 59-62, 71-72.

### D.   Alleged Improprieties At Findora

Over the course of his claimed association with Eian and Findora, Plaintiff claims there was impropriety, including: hidden identities and relationships (¶¶ 53-58); unreimbursed credit card expenses (¶¶ 75-82); requests to return investor funds that were not honored (¶¶ 83-86); and diversion of funds from the Findora project (¶¶ 115-18).  Plaintiff does not allege facts showing any of these activities, even if true, were carried out or authorized by Temujin Cayman.

**E.      Formation of the Temujin Defendants and Sale of the Eian Assets**

Temujin Delaware and Temujin Cayman were incorporated on July 2, 2019.  *See* Ex. A, B.  On July 3, the following day, Plaintiff met with the Individual Defendants.  ¶ 87.  At that meeting, in his capacity as a member of Juniper (which, in turn, was a shareholder in Eian), Plaintiff signed a document approving the sale of Eian's assets (including intellectual property) to Temujin Cayman in exchange for satisfaction of $300,000 in outstanding debt.  ¶¶ 95, 101-02, 151; *see also* Ex. 1 to the Holmes Decl.  The transaction closed on or about August 12, 2019.  Ex. 2 to the Holmes Decl.  Temujin Cayman was a party to the transaction.  *Id.*  Plaintiff does not allege that either Individual Defendant, in negotiating the asset sale, did so on behalf of either Temujin Defendant.  Indeed, the Complaint does not plead that either Individual Defendant had any formal association with any Temujin Defendant, whether as an executive, a director, or otherwise.  Instead, Plaintiff states that Charles Lu ("Lu") was Temujin Delaware's CEO at the time of the asset sale, but did not participate in the negotiations. ¶¶ 88-98.

Following the Eian asset transfer, Plaintiff allegedly continued to engage with the Individual Defendants about his outstanding credit card debt and any ongoing business relationship but was ultimately asked to separate from the project.  ¶¶ 99-110.  Plaintiff also claims he was defamed when LC told others Plaintiff no longer owned any portion of the Findora project. ¶ 112.

**F.      Plaintiff's Interference with Temujin's Business and Prior Pending Litigation**

Plaintiff's claim that he holds an ownership interest in the Findora project is one he has been making for months before filing this action, most notably to Temujin Delaware employees and consultants.  The doubt sowed by Plaintiff's false ownership assertion ultimately caused key members of the team to stop contributing, and actively interfere with project development.  By October 2020, these distractions had reached a crisis level, with several individuals—including Lu (then CEO) and project advisor Ben Fisch and others—abruptly resigning from their employment and consulting relationships.  ¶¶ 5, 119, 124.  Pointing to Plaintiff's claims of ownership, several of them also conspired with Plaintiff to spur further defection and disrupt ongoing operations (e.g., by withholding access to Findora's social media and project development accounts), ostensibly to launch a competing project.  Because of the false claims of ownership, and the disruption and

injuries to the Findora project, Temujin Delaware was forced to file suit against Plaintiff (and certain individuals acting in concert with him) on November 6, 2020 in Santa Clara Superior Court. *Temujin Labs Inc. v. Abittan et al.*, No. 20CV372622 (Cal. Sup. Ct. Cnty of Santa Clara) (filed Nov. 6, 2020). Central to that dispute is the very claim Plaintiff presses here: right, entitlement, and ownership of the Findora project and its intellectual property.

### G.   Procedural History and Plaintiff's Claims

Ignoring the pendency of the state court action based on the same core set of facts, Plaintiff filed this suit on December 24, 2020. The Complaint asserts thirteen claims, ten of which are asserted against Temujin Cayman: (1) four derivative claims ostensibly on Eian's behalf (aiding and abetting breach of fiduciary duty, fraudulent inducement, unjust enrichment, and a request for an accounting); and (2) six direct claims (civil violation and conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, conversion, unjust enrichment, and accounting). None are well pleaded. On July 19, 2021, this Court dismissed the Complaint as to Temujin Delaware on the ground that the claims should have been brought as compulsory counterclaims in the state court action. ECF No. 78.

## III.   ARGUMENT

### A.   Plaintiff's Derivative Claims Violate the Pleading Requirements of Rule 23.1 in Multiple Respects and Must Therefore Be Dismissed

Plaintiff purports to bring four causes of action (Counts 1 through 4) derivatively on behalf of nominal defendant Eian.   ¶¶ 142-65. Putting aside their lack of substantive merit (*see* Sections III(B)(1)-(4), *infra*), each of these claims must be dismissed for failure to comply with Rule 23.1, governing the pleading requirements for derivative actions.

#### 1.   The Derivative Claims Must be Dismissed As Unverified

Rule 23.1(b) requires that any complaint alleging derivative claims "must be verified." Plaintiff's Complaint is not verified, and on that basis alone each derivative claim must be dismissed. Fed. R. Civ. P. 23.1(b); *In re Extreme Networks Inc. S'holder Deriv. Litig.*, 573 F. Supp. 2d 1228, 1237 (N.D. Cal. Aug. 12, 2008) ("An unverified derivative complaint should be dismissed

1   with leave to amend"); *In re MIPS Technologies Inc., Deriv. Litig.*, 542 F. Supp. 2d 968, 974 (N.D.

2   Cal. Jan 11, 2008) (same).

3   **2.      Plaintiff Fails to Allege He Is (Or Ever Was) An Eian Shareholder**

4   To bring a derivative claim, Plaintiff needed to properly allege that he "was a shareholder or

5   member at the time of the transaction complained of . . . ." Fed. R. Civ. P. 23.1(b); *see also* 8 Del.

6   C. § 327.  Courts have strictly enforced this requirement, compelling plaintiffs to "unambiguously

7   indicate in any . . . complaint the dates they purchased [Company] stock, and whether they have

8   continuously owned [Company] stock from the time of purchase up to the present." *In re Verisign

9   Inc. Der. Litig.*, 521 F. Supp. 2d 1173, 1202 (N.D. Cal. Sept. 14, 2007).[4]

10  Plaintiff fails to satisfy this requirement, and indeed pleads no facts demonstrating he is or

11  ever was a shareholder of Eian **at all**.  Plaintiff never specifies how or when he purportedly acquired

12  his shares, and the Complaint makes clear he is ***assuming*** he is an Eian shareholder simply because

13  (he claims) LC allegedly said so.  ¶ 49.  The Complaint never explains how Plaintiff could become

14  an Eian shareholder on mere say so, or without having paid for shares or executing agreements

15  effectuating the stock transactions.  *Id*.  Such allegations do not remotely suffice to satisfy the

16  ownership requirements of Rule 23.1 and provide an independent ground for dismissal.  *See In re

17  Accuray, Inc. S'holder Der. Litig.*, 757 F. Supp. 2d, 919, 926 (N.D. Cal. Aug. 31, 2010) (the "strict

18  standard of Rule 23.1" mandates that plaintiffs "identify *when* they purchased [their company]

19  shares" (emphasis in original)).

20  **B.      Plaintiff Otherwise Fails to State a Viable Claim**

21  Dismissal is appropriate under Rule 12(b)(6) where a plaintiff fails to assert a cognizable

22  legal theory or to allege sufficient facts.  *See, e.g.*, *SmileCare Dental Grp. v. Delta Dental Plan of

23  Cal., Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996).  To raise an inference of wrongdoing, the facts

24  alleged must suggest a right to relief that is more than conceivable, but is plausible on its face.  *Bell

25  Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  More than "labels and conclusions, and a

26

27  [4] While plaintiff claims "on information and belief" to be a director of Eian (¶140), Delaware law

28  unambiguously holds that director status does not confer derivative standing. *Schoon v. Smith*, 953
    A.2d 196, 210 (Del. 2008) (rejecting effort by non-shareholder director to sue derivatively).

1   formulaic recitation of the elements of a cause of action," Plaintiff must offer facts that, if true, raise

2   the right to relief "above the speculative level." *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3   (2009) ("'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice) (internal

4   citation omitted).  Courts need not accept as true conclusory allegations, unwarranted deductions of

5   fact, or unreasonable inferences. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112,

6   1115 (9th Cir. 2014).

7          Where fraud is alleged, Plaintiff must "state with particularity the circumstances constituting

8   fraud or mistake." Fed. R. Civ. P. 9(b).  Specific facts are required to "give defendants notice of the

9   particular misconduct" alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)

10  (internal citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)

11  ("plaintiffs [must] differentiate their allegations . . . inform each defendant separately of the

12  allegations surrounding his alleged participation in the fraud"); *Odom v. Microsoft Corp.*, 486 F.3d

13  541, 553 (9th Cir. 2007) ("must state the time, place, and specific content of the false

14  representations" and the parties to the misrepresentations) (citation omitted).

15         **1.    All Claims Against Temujin Cayman Fail As Group Pleading**

16         In defiance of the requirement that specific facts be pleaded raising a reasonable inference

17  that ***each*** defendant "is liable for the misconduct alleged" (*Iqbal*, 556 U.S. at 678), the Complaint

18  instead engages in impermissible "group pleading."  Courts in this district have repeatedly held that

19  allegations made against defendants collectively are insufficient to meet the requirements of

20  Rule 9(b) *or* Rule 8(a)(2).  *See, e.g.*, *Sumotext Corp. v. Zoove, Inc.*, 2017 WL 2774382, at *10 (N.D.

21  Cal. June 26, 2017) ("[a]llegations which lump multiple defendants together are insufficient to put

22  any one defendant on notice of the conduct upon which the claims against it are based"); *In re*

23  *iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011) (same).  The

24  allegations must "differentiate . . . and inform each defendant separately of the allegations

25  surrounding his alleged participation in the fraud" or wrongdoing. *Swartz*, 476 F.3d at 764-65

26  (rejecting complaint under Rule 9(b) because it was "shot through with general allegations that the

27  'defendants' engaged in fraudulent conduct"); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th

28

Cir. 2011) (dismissing fraud complaint that grouped multiple defendants together and alleged that "everyone did everything").

The Complaint repeatedly flouts these pleading requirements by conflating Temujin Cayman, Temujin Delaware, and the individual defendants, describing them as one collective, or one company. *See, e.g.*, ¶ 2 ("Defendants' conspiracy flies under the banner of a fintech company called Findora"), ¶ 4 ("Defendants fraudulently induced Plaintiff to sign an intellectual property sale agreement"), ¶ 4 ("Defendants took advantage of their fiduciary relationship with Eian"),¶ 75 (vaguely describing "credit card accounts for the business"), ¶ 103 (describing the "Temujin transactions"), ¶¶ 125-30 (describing correspondence with unidentified "Findora" representatives). The Complaint does so without pleading any basis for disregarding the corporate form or imputing one defendant's dealings to another.

The group pleading defect is especially glaring when it comes to Temujin Cayman. Plaintiff bases each of his claims against Temujin Cayman (with the possible exception of conversion) in whole or in part on the allegedly coercive Eian asset sale. While Temujin Cayman was the party that bought the Eian assets, the Complaint contains no facts specifying what actions it took that were wrongful, much less by whom and with what authority.

And while Plaintiff levels a series of vague charges of impropriety against the Individual Defendants (based on a claimed luxury watch business, hidden identities or relationships, and the status of Plaintiff's credit card debt and other investments), Plaintiff pleads no facts connecting those claims to Temujin Cayman. As pleaded, the purported watch transactions occurred years before Temujin Cayman was formed, as did all or substantially all of the other events about which Plaintiff complains. Because the Complaint lacks specific facts tying any allegation of wrongdoing to the Temujin Cayman, all of the claims against that entity must be dismissed.

## 2.    Plaintiff Has Not Adequately Pleaded a RICO Claim

Group pleading is particularly fatal to Plaintiff's RICO claims against Temujin Cayman, even ignoring that a dispute over whether Plaintiff has any ownership interest in the Findora project is hardly the basis for a RICO claim. Nevertheless, Plaintiff alleges that ***all defendants*** conducted a RICO enterprise in violation of 18 U.S.C. § 1962(c), predicated on wire and mail fraud, interstate

transportation of stolen property, and the sale or receipt of stolen property.  ¶¶ 169-182.  To state such a claim, however, he must allege specific facts*, as to each defendant*, showing: (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, (5) causing injury to plaintiff's business or property.  *Eclectic Properties E., LLC v. The Marcus & Millichap Co.*, 2012 WL 713289, at *6 (N.D. Cal. Mar. 5, 2012), *aff'd sub nom. Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) (applying Rule 9(b)'s heightened pleading standard to RICO claim grounded in fraud).  Plaintiff makes no such showing with respect to Temujin Cayman (much less anyone else).

### (a)    Plaintiff Fails to Allege the Required "Conduct"

*First*, "conduct" under Section 1962(c) requires that a defendant played some part in directing the affairs of the RICO enterprise, not just defendant's own affairs.  *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19, 2013) (dismissing claims against co-defendant who acted independently of enterprise) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  Accordingly, Plaintiff must specify how each defendant participated in the enterprise.  *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 956 (N.D. Cal. 2013) ("Because the alleged racketeering activity fails to 'inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud,' the RICO claim fails.").

Here, Plaintiff generally avers that "[a]ll defendants" received misappropriated monies and intellectual property and that "[the Individual Defendants] formed a scheme to defraud Plaintiff" (¶¶ 171, 175-178) ostensibly in connection with: (1) the 2016 purchase and sale of watches (¶¶ 31-32); (2) the 2018 formation of and investments in JVI, Juniper, and Eian (¶¶ 44-45, 71); (3) the 2018 and early 2019 use of credit cards opened by Plaintiff (¶¶ 78-80, 82); and (4) the 2019 sale of Eian's assets to Temujin Cayman (¶¶ 92, 95).  Plaintiff contends, on this basis, that "all defendants" conducted a fraudulent enterprise.  This assertion flies directly in the face of the fact that three of these alleged activities pre-date the July 2, 2019 formation of either Temujin Defendant.  Thus, Plaintiff cannot properly plead that the activities constitute enterprise conduct directed by either entity, certainly not Temujin Cayman.  Moreover, even as to the Eian asset sale, Temujin Delaware was not a party to that agreement (*see* ¶ 151), and the Complaint lacks particularized facts indicating

1   that Temujin Cayman, which paid $300,000 for the assets, acted for any reason other than its own

2   interests.  *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 2020 WL 6271173, at

3   *26 (N.D. Cal. Oct. 23, 2020) (conduct furthering defendant's own interests, and not those of the

4   enterprise, fails to support RICO claim); *Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*, 2020 WL

5   4342260, at *3 (C.D. Cal. May 22, 2020) ("Courts have overwhelmingly rejected attempts to

6   characterize routine commercial relationships—in which the parties transact to provide services—as

7   RICO enterprises.").

8                              **(b)       Plaintiff Fails to Allege a RICO "Enterprise"**

9           *Second*, "enterprise" under Section 1962(c) is defined as "any individual, partnership,

10  corporation, association, or other legal entity, and any union or group of individuals associated in

11  fact although not a legal entity." 18 U.S.C. § 1961(4).  Here, Plaintiff asserts an "association-in-

12  fact."  ¶¶ 172-74.  This theory requires particularized facts demonstrating (1) a common purpose, (2)

13  an ongoing organization, either formal or informal, and (3) that the various associates function as a

14  continuing unit.  *Odom*, 486 F.3d at 552.  Plaintiff has not adequately pleaded those facts.

15          Notwithstanding that the alleged "frauds" here are highly attenuated and took place over

16  many years – *e.g.*, involving luxury watch deals, credit card debt, and purported investments in

17  various entities between 2016 and 2019 – Plaintiff asserts that "all defendants" had a common

18  purpose: "to generate profits by defrauding investors and business partners out of assets."  ¶ 171.

19  That conclusion is unsupported by well-pleaded facts.  The Complaint does not, for example, allege

20  any facts demonstrating how Temujin Cayman benefited from watch transactions, personal credit

21  card expenditures, or historical investments in unrelated entities (e.g., Juniper) – especially given

22  that it did not exist when these alleged improprieties occurred.  Further, even if Temujin Cayman

23  benefited from having purchased the Eian assets (another purported fraud), that alone does not

24  demonstrate a "common purpose" shared by all.  *See Comm. to Protect our Agric. Water v.

25  Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) ("Though plaintiffs now

26  argue in conclusory fashion that they have alleged the existence of a common purpose, the FAC

27  pleads no specific facts indicating that defendants acted with an objective unrelated to ordinary

28  business or government aims."); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *6 (S.D. Cal. May

---

1    22, 2009) (rejecting claim where plaintiff failed "to identify specific allegations in support of the

2    common purpose.").

3            Similarly, the Complaint offers nothing to suggest that any defendant (much less Temujin

4    Cayman) operated as an "ongoing organization," or "cooperated with [another]" to form such an

5    organization.  *Wimo Labs LLC v. eBay, Inc.*, 2016 WL 11507382, at *3-4 (C.D. Cal. Jan. 28, 2016)

6    (enterprise members must have cooperated by forming "a vehicle for the commission of at least two

7    predicate acts of fraud.").  Instead, the Complaint alleges the opposite, describing a host of different

8    interests in a variety of different ventures and entities over time.  Moreover, Plaintiff fails to plead

9    "that the various associates function as a *continuing* unit."  *Eclectic Properties E., LLC*, 2012 WL

10   713289, at *8 (emphasis added).  The "continuity requirement focuses on whether the associates'

11   behavior was 'ongoing' rather than isolated activity."  *Id.*at *8 (citing *Odom*, 486 F.3d at 553).  None

12   of the discrete interests, transactions, and events described in the Complaint meet the continuous and

13   ongoing activity by defendants contemplated by such a claim – particularly with respect to Temujin

14   Cayman, which did not even exist until mid-2019.

15            **(c)      Plaintiff Fails to Allege a "Pattern" of Racketeering Activity**

16            *Third*, to adequately plead the "pattern" element, Plaintiff must allege at least two predicate

17   acts which are (1) related, and (2) continuous.  *Steam Press Holdings, Inc. v. Hawaii Teamsters,*

18   *Allied Workers Union, Local 996*, 302 F.3d 998, 1011 (9th Cir. 2002).  "The pattern requirement

19   must be satisfied as to each defendant individually."  *Eclectic Properties E., LLC*, 2012 WL 713289,

20   at *9.  To be related, predicate acts must have "the same or similar purposes, results, participants,

21   victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics

22   and are not isolated events."  *Metaxas v. Lee*, 2020 WL 7025095, at *12 (N.D. Cal. Nov. 30, 2020)

23   (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).  Here, Plaintiff fails to allege that

24   either Temujin Defendant committed related acts.  Indeed, the Complaint only marginally ties

25   Temujin Cayman to a single act at issue (*i.e.*, the Eian asset sale).

26            The continuity requirement is met if the predicate acts pose a threat of continuing activity.

27   *Metaxas*, 2020 WL 7025095, at *12.  Continuity can be demonstrated in one of two ways: closed-

28   ended ("a series of related predicates extending over a substantial period of time" and more than "a

---

few weeks or months"); or open-ended ("past conduct that by its nature projects into the future with a threat of repetition."). *Id.* As above, because Temujin Cayman did not exist until after the alleged wrongdoing, neither showing is established. And, although Plaintiff now alleges that on July 3, 2019, he was misled to believe Eian was being "converted to a Cayman entity" in which he would have some continuing ownership (¶ 89), that alone is legally inadequate. *See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1364 (9th Cir. 1987) (even where two distinct predicate acts are alleged, no pattern is alleged where both acts are part of defendants' "single effort to induce [the plaintiff] to form [a] joint venture."); *Metaxas*, 2020 WL 7025095, at *12 ("[W]hen a plaintiff alleges only a single scheme with a single victim it cuts against a finding of both closed-ended as well as open-ended continuity."); *Royce Int'l Broad. Corp. v. Field*, 2000 WL 236434, at *4 (N.D. Cal. Feb. 23, 2000) (alleged fraudulent inducement of one contract failed to establish a pattern of racketeering).

### (d)    Plaintiff Fails to Allege "Racketeering" Activity

*Fourth*, the Complaint does not adequately plead the predicate racketeering activity of wire or mail fraud, interstate transportation of stolen property, or the sale or receipt of stolen property. Each of these activities involves a scheme or artifice to defraud or steal and scienter must be plead with particularity.[5] Conclusory assertions of fraud or deception by "all defendants" do not suffice. *Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*, 2020 WL 4342260, at *4 (rejecting as conclusory claims that fail to identify the time, place, and specific content of allegedly false representations or the parties to the communications).

### 3.    Plaintiff's RICO Conspiracy Claim Fails in Turn

Because Plaintiff has failed to plead primary RICO liability, his RICO conspiracy claim also fails. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.8 (9th Cir. 1992) ("Because we find that RTC has failed to allege the requisite substantive elements of RICO, the conspiracy cause

---

[5] *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986) (wire fraud); *Virden v. Graphics One*, 623 F. Supp. 1417, 1422 (C.D. Cal. 1985) (*citing United States v. Bohonus*, 628 F.2d 1167, 1171 (9th Cir. 1980)) (mail fraud); *United States v. Taylor*, 802 F.2d 1108, 1112 (9th Cir. 1986) (interstate transportation of stolen property); *United States v. Cyphers*, 604 F.2d 635, 636 (9th Cir. 1979) (sale or receipt of stolen property).

1  of action cannot stand."); *Spotlight Ticket Mgmt., Inc.*, 2020 WL 4342260, at *6 (same).  As to

2  Temujin Cayman, Plaintiff's conspiracy claim also fails for a second reason: he does not offer a

3  single particularized fact supporting an inference that it was aware of any purported racketeering

4  enterprise.  Nor could he, as the claims at issue here pre-dated its very existence.  *Baumer v. Pachl*, 8

5  F.3d 1341, 1346 (9th Cir. 1993) ("[C]onspiracy to violate RICO requires a showing that defendant

6  'was aware of the essential nature and scope of the enterprise and intended to participate in it.'")

7  (internal quotation omitted).

8          **4.      Plaintiff's State Law Claims Fail for Numerous Additional Reasons**

9                  **(a)      The Derivative Aiding and Abetting Claim Fails**

10          Putting aside that Plaintiff lacks standing to bring derivative claims on Eian's behalf, Plaintiff

11  purports to assert such a claim against Temujin Cayman for aiding and abetting LC's purported

12  breach of fiduciary duty to Eian (a Delaware Corporation).  ¶¶ 26, 140, 149-53.  Under applicable

13  Delaware law, to state that claim, Plaintiff must set forth well-pleaded facts demonstrating "(1) the

14  existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing

15  participation in that breach by [Temujin Cayman], and (4) damages proximately caused by the

16  breach."  *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (citation omitted).  Because

17  Plaintiff's overarching theory sounds in fraud, the heightened pleading requirements of Rule 9(b)

18  apply. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

19          The aiding and abetting claim fails on all accounts.  The Complaint is devoid of well-pleaded

20  facts (as opposed to Plaintiff's mere "belief") showing that LC owed fiduciary duties to Eian, and

21  thus Plaintiff has failed to plead the existence or breach of fiduciary duties to Eian.  *Malpiede*, 780

22  A.2d at 1097.  Moreover, as to Temujin Cayman, Plaintiff similarly fails to plead particularized facts

23  showing "knowing participation," offering only the rote assertion that Temujin Cayman knew LC

24  was a fiduciary of Eian and "assisted" and "conspired" with her "to obtain . . . Eian's corporate

25  assets at a woefully inadequate price." ¶ 151; *Malpiede*, 780 A.2d at 1097 (third party must "act

26  with the knowledge that the conduct advocated or assisted constitutes such a breach"); *see also*

27  *Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*, 965 A.2d 715, 748, n.88 (Del. Ch. 2008)

28  (aiding and abetting liability requires an unusual level of knowledge – an actual belief that actions

1   constituted a fiduciary breach); *In re Comverge, Inc. S'holders Litig.*, 2014 WL 6686570, at *17

2   (Del. Ch. Nov. 25, 2014) (knowing participation in breach must be supported by "non-conclusory

3   facts").

4            **(b)        The Derivative Fraudulent Inducement Claim Fails**

5            Plaintiff also attempts to assert a derivative claim against Temujin Cayman for fraudulent

6   inducement, based on the Eian asset sale.  ¶¶ 154-61. Under Delaware law, to plead fraudulent

7   inducement, Plaintiff is required to plead specific facts, as to each defendant, showing: (1) a false

8   representation of material fact; (2) knowledge of or belief as to the falsity of the representation or

9   reckless indifference to its truth; (3) intent to induce the plaintiff to act or refrain from acting; (4)

10  plaintiff's action or inaction in justifiable reliance upon the representation; and (5) damage to the

11  plaintiff as a result of such reliance.  *Stephenson v. Capano Development Co.*, 462 A.2d 1069, 1073

12  (Del. 1983).  The fraudulent inducement claim fails as to Temujin Cayman for two central reasons.

13           *First*, as discussed above, Plaintiff fails to plead facts linking any alleged representation by

14  the Individual Defendants to Temujin Cayman.  Nor are any facts alleged suggesting a knowing

15  misrepresentation regarding the asset sale by Temujin Cayman, which alone is fatal to this claim.

16  *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *6 (Del. Ch. 2015) (failure

17  to link specific misrepresentation to specific defendant defeats a fraud claim); *Vichi v. Koninklijke*

18  *Philips Elecs., N.V.*, 85 A.3d 725, 798-99 (Del. Ch. 2014) (statement of sales personnel will not be

19  imputed to joint venture participant absent facts showing actual or apparent authority to speak on

20  joint venture participant's behalf).

21           *Second*, Plaintiff fails to plead the necessary element of justifiable reliance as to Temujin

22  Cayman.  He claims he "reasonably relied" on supposed misrepresentations by LC (who, "on

23  information and belief," he claims was a director of Eian (¶ 140)) about "the contents and legal

24  effect of the paperwork" he signed.  ¶¶ 144, 158.  But reliance is unreasonable as a matter of law

25  where the party was on notice of facts contrary to the very representations at issue.  *See Flores v.*

26  *Strauss Water Ltd.*, 2016 WL 5243950, *7 (Del. Ch. Sept. 22, 2016) (rejecting as unreasonable

27  reliance on oral promises contradicted by the actual agreement).  According to Plaintiff, he was

28  presented with paperwork approving the Eian asset sale.  ¶ 91.  He reviewed that document and

1   signed it. ¶¶ 92-93, 155; *see also* Ex. 1 to Holmes Decl.  His purported reliance on any claimed oral

2   representation by anyone is not reasonable where it ran counter to the "unambiguous written

3   contract" that he signed.  *Flores*, 2016 WL 5243950, at *9 (rejecting attempt to "avoid the deal

4   [plaintiff] made in favor of the deal it now wishes it had made."). [6]

5        If Plaintiff did not fully understand the agreement or grasp its legal effect, he was free to

6   consult counsel or seek further information.  Indeed, as a purported Eian fiduciary (whether its CEO

7   or as a claimed director), he would have had a ***duty*** to inform himself.  "[O]fficers of Delaware

8   corporations, like directors, owe fiduciary duties of care and loyalty."  *See  Gantler v. Stephens*, 965

9   A.2d 695, 708-09 (Del. 2009).  Executing key agreements without understanding what they mean

10  would be a clear violation of such duties.  *See In re Tower Air, Inc.*, 416 F.3d 229, 241 (3d Cir.

11  2005) (plaintiff states a claim for breach of fiduciary duty and gross negligence based on officer

12  inattention and irrational decisionmaking). In sum, Plaintiff cannot possibly sustain a claim of

13  fraudulent inducement when the clear terms of what he was agreeing to were plainly in front of him.

14  *Flores*, 2016 WL 5243950 at *7.

                   **(c)        Plaintiff Has Not Adequately Pleaded Fraud**

16       Plaintiff fares no better in pleading direct claims of fraud against Temujin Cayman.  Because

17  substantially all of the alleged activities giving rise to the claims occurred in California, California

18  law applies to those claims.  *W. Airlines, Inc. v. Sobieski*, 191 Cal. App. 2d 399, 411 (1961)

19  (applying California law to affairs of Delaware corporation with principal place of business and

20  substantial contacts in California). [7]

21       Plaintiff's claim of common law fraud is ostensibly based on a series of alleged "false and

22  fraudulent misrepresentations and omissions" by the Individual Defendants, who he claims were

---

[6] For the same reason, this claim fails under California law.  *See* § III(B)(4)(c), *infra.*

[7] *Accord McDermott, Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1986) (describing a "preference for forum law" and an "emphasis on state interest in forum residents" . . . "[i]n fields like torts, where the typical dispute involves two persons . . . and where the common substantive policy is to spread the loss . . ." (internal citation omitted)).  Nor do the direct claims implicate any internal relationship among or between Temujin Cayman and its current officers, directors or shareholders.  *State Farm Mut. Automobile Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 442 (2003) (courts apply law of the state of incorporation only to "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders").

1   "acting in their own capacities and on behalf of Temujin in certain instances." ¶ 189.  Putting aside

2   the lack of any well-pleaded, particularized facts substantiating any of those claims (which largely

3   relate to the purported luxury watch business, Plaintiff's investments in other ventures, and other

4   statements that are not actionable (*see*, *id*. sub (a)-(e)), the only statement that even arguably relates

5   to Temujin Cayman is Plaintiff's oft-repeated refrain the he was told the "transfer of Eian's assets to

6   Temujin [Cayman] would not affect Plaintiff's or other investors' ownership rights in Findora in any

7   way." *Id.* sub (f).  But that claim, of course, is completely belied by the asset sale agreement

8   Plaintiff himself signed.

9           In any event, to plead fraud, Plaintiff is required to allege particularized facts showing (a) a

10  material misrepresentation; (b) knowledge of falsity; (c) intent to induce reliance on the

11  misrepresentation; (d) justifiable reliance on the misrepresentation; and (e) resulting damages.  *Lazar*

12  *v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *see also Kearns*, 567 F.3d at 1126 (same).  The

13  allegations pleaded in the Complaint fail to satisfy these elements in multiple respects.

14          *First*, no facts are offered to show that any alleged misrepresentation or omission was made

15  or authorized by Temujin Cayman.  *See Kopchuk v. Countrywide Fin. Corp.*, 2010 U.S. Dist. LEXIS

16  23884, at *19 (E.D. Cal. Mar. 15, 2010) (Plaintiff "failed to allege who actually made the

17  supposedly false representations or their ability to speak for the corporation"); *Edejer v. DHI Mortg.*

18  *Co.*, 2009 WL 1684714, at *12 (N.D. Cal. Jun. 12, 2009) (claims fail to  meet the heightened

19  pleading requirements for fraud where it is not alleged that the entity or its authorized agents made

20  the statements at issue.  Missing are the "the names of the persons who made the allegedly

21  fraudulent representations, ***their authority to speak [for Temujin Cayman]***, to whom they spoke,

22  what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins.*

23  *Co.*, 2 Cal. App. 4th 153, 157 (1991) (emphasis added).  Conclusory averments that the Individual

24  Defendants "in certain [unspecified] instances" made statements "on behalf of Temujin" do not

25  suffice.  ¶ 189.

26          *Second*, as previously noted, Temujin Cayman did not exist before July 2, 2019.  Even

27  assuming any of the vaguely alleged misrepresentations – whether about luxury watches, LC's

28  friendships, or potential future investors – were actionable (they are not), Plaintiff never explains

1    how statements **predating** the entities' existence by months or years can possibly amount to a fraud

2    by that entity.

3         *Third*, Plaintiff does not state a claim for fraud based on his allegation that **other non-party**

4    **investors** were somehow harmed when they were told their investments were secure and would be

5    repaid within ninety days.  ¶ 189(e).  Plaintiff has no standing to bring a direct claim on other

6    investors' behalf.  Cal. Civ. Proc. Code § 367 ("Every action must be prosecuted in the name of the

7    real party in interest . . . ."); *City of Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 59 (2005) ("A

8    party lacks standing if it does not have an actual or substantial interest in, or would not be benefited

9    or harmed by, the ultimate outcome [on the claim asserted].").  Indeed, even if he had standing,

10   Plaintiff concedes that the non-party investors "decided to roll their investments into future equity or

11   token offerings" (¶ 72), which is contrary to the purported harm Plaintiff now attempts to redress on

12   their behalf.

13        *Finally*, alleged misstatements about the impact of the Eian asset sale on Plaintiff's interest

14   (even if they could be attributed to Temujin Cayman) do not state a claim for fraud.  ¶ 189(f).  This

15   is true because Plaintiff had express written notice of the effect of the Eian asset sale, so could not

16   have justifiably relied on oral representations to the contrary.  *See, e.g.*, *Marketing West, Inc. v.*

17   *Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612 (1992) (finding employees' reliance on oral

18   representations that jobs were safe unreasonable where the written instrument expressly provided

19   that they could be terminated without cause).  While Plaintiff may have made a business decision he

20   now regrets, he cannot convert that into a fraud claim against Temujin Cayman.

          **(d)**      **The Conversion Claim Fails**

22        Plaintiff alleges a conversion claim against Temujin Cayman based on: (1) a property interest

23   in luxury watches (¶ 201); (2) $637,000 in unreimbursed credit card debt (¶¶ 85, 202); and (3) the

24   $50,000 he claims to have invested in JVI (¶ 203).  None of these supposed acts are alleged to have

25   anything to do with Temujin Cayman.

26        Under California law, "the elements of a conversion [claim] are the plaintiff's ownership or

27   right to possession of the property at the time of the conversion; the defendant's conversion by a

28   wrongful act or disposition of property rights; and damages." *Oakdale v. Village Group v. Fong*, 43

1    Cal. App. 4th 539, 543-44 (1996). Plaintiff's alleged watch transactions occurred in 2016 and no

2    facts suggest that the later-formed Temujin Cayman was involved with those transactions.  The same

3    is true for Plaintiff's claimed credit card debt, which allegedly arose in 2018 and culminated with

4    repayment demands in April and May 2019 (again, prior to Temujin Cayman's formation).  ¶¶

5    75-86.  Temujin Cayman could not have benefited from (much less directed) any of these activities

6    or conversations.  So too, Plaintiff's $50,000 investment in JVI *in January 2018* fails.  While

7    Plaintiff details that investment history (¶¶ 43-45), the balance of the Complaint is entirely silent,

8    and offers no facts to support, any claimed  misuse of those funds by anyone (much less Temujin

9    Cayman).  Because Plaintiff's conversion count lacks any factual foundation, it too must be

10   dismissed.

11                    **(e)      Plaintiff Cannot Recover on Grounds of Unjust Enrichment,
                                  Whether Derivative or Direct**

12

13            In light of the foregoing defects, Plaintiff also has no basis to allege that Temujin Cayman

14   was unjustly enriched and so cannot recover on that theory.  Because Eian was a Delaware

15   corporation, Delaware law applies to the derivative unjust enrichment claim (¶¶ 162-65) and

16   requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the

17   impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."

18   *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (quoting *Nemec v.*

19   *Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).  For the reasons discussed, Plaintiff cannot plead the

20   Eian asset sale or any other value transfer to Temujin Cayman was unjustified.  To the contrary, Eian

21   was hundreds of thousands of dollars in debt at the time of the sale (which debt Temujin Cayman

22   satisfied in exchange for the asset sale). ¶¶ 4, 95; Ex. 2 to the Holmes Decl.  Even if Plaintiff could

23   show that the sale was not justified at the time, the existence of adequate remedies at law – such as

24   those available if Plaintiff prevailed on his breach of contract or other claims – precludes recovery

25   on an unjust enrichment theory.  *See Kuroda v. SPJS Holdings, LLC.*, 971 A.2d 872, 891 (Del. Ch.

26   2009) ("a claim for unjust enrichment is not available if there is a contract that governs the

27   relationship between parties that gives rise to the unjust enrichment claim").

28

1    The same is true under California law (applicable to Plaintiff's direct claim for unjust

2    enrichment).  ¶¶ 207-210.  Plaintiff fails to plead that "the enrichment obtained lacks any adequate

3    legal basis and thus 'cannot conscientiously be retained.'"  *Hartford Cas. Ins. Co. v. J.R. Marketing,*

4    *LLC.*, 61 Cal. 4th 988, 998 (2015).  Further, in California, "unjust enrichment is a theory of

5    recovery, not an independent legal claim," and for that additional reason, is unavailable here.

6    *Keirsey v. eBay, Inc.*, 2012 WL 12920765, at *2 (N.D. Cal. Aug. 6, 2012) (dismissing unjust

7    enrichment claim because it "does not constitute a stand-alone cause of action"); *In re ConAgra*

8    *Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (same).

9                     **(f)        Plaintiff Is Not Entitled to an Accounting**

10   Finally, under both Delaware and California law, and irrespective of Plaintiff's attempt to

11   assert it as both a derivative and direct claim, an accounting is a remedy derivative of other claims,

12   not a standalone claim.  Because Plaintiff has failed to state any viable primary claim (whether on

13   Eian's behalf or directly against Temujin Cayman) there are no grounds for an accounting.

14   *DiGiacobbe v. Sestak*, 2003 WL 1016985, at *4 (Del. Ch. Mar. 3, 2003) (An accounting "is an

15   equitable remedy by which a fiduciary is required to account to those to whom he owed his fidelity

16   for the results of the exercise of his duty."); *Hutchins v. Nationstar Mortgage LLC*, 2017 WL

17   2021363, at *5 (N.D. Cal. May 12, 2017) ("The right to an accounting is derivative of other

18   claims."); *Duggal v. G.E. Capital Commc'ns Services, Inc.*, 81 Cal. App. 4th 81, 95 (2000) (same).

19   Moreover, because Plaintiff is not alleged to be a shareholder of Temujin Cayman, it did not owe

20   him fiduciary duties, and this is a further reason why an accounting is unavailable. *Bus. Funding*

21   *Grp., Inc. v. Architectural Renovators, Inc.,* 1993 WL 104611, at *2 (Del. Ch. Mar. 31 1993) ("an

22   accounting lies only where … a fiduciary relationship exists.); *Jolley v. Chase Home Finance, LLC.*,

23   213 Cal. App. 4th 872, 910 (2013) (dismissing request for an accounting absent a fiduciary duty

24   between the parties).

25   **IV.        CONCLUSION**

26   The Complaint should be dismissed with prejudice.  Plaintiff lacks standing to bring a series

27   of derivative claims on behalf of an entity as to which he lacks any standing to proceed, and offers a

28   series of indiscriminate direct claims, not one of which is well-pleaded.  For all of the foregoing

---

reasons, all claims against Temujin Cayman fail and the Complaint should be dismissed with prejudice.

DATED:  November 8, 2021

Respectfully submitted,

HANSEN LAW FIRM, P.C.


By:      /s/ Craig A. Hansen
Craig A. Hansen
Stephen C. Holmes
Philip E. Yeager
Collin D. Greene
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Defendant
Temujin Labs Inc., a Cayman corporation
By Special Appearance