Craig A. Hansen (SBN 209622)
  Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
  Email: steve@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
  Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
  Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Defendant
Temujin Labs Inc., a Cayman corporation
By Special Appearance

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ARIEL ABITTAN<br><br>PLAINTIFF,<br><br>v.<br><br>LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), DAMIEN DING (A/K/A DAMIEN LEUNG, A/K/A TAO DING), TEMUJIN LABS INC. (A DELAWARE CORPORATION), AND TEMUJIN LABS INC. (A CAYMAN CORPORATION),<br><br>DEFENDANTS,<br><br>and<br><br>EIAN LABS INC.,<br><br>NOMINAL DEFENDANT. | Case No.: 5:20-CV-09340-NC<br><br>**STEPHEN C. HOLMES' DECLARATION IN SUPPORT OF DEFENDANT TEMUJIN LABS INC., A CAYMAN CORPORATON'S MOTION TO DISMISS**<br><br>Date:    December 15, 2021<br>Time:    1:00 PM<br>Place:   Courtroom 5, 4th Floor<br>Judge:   Hon. Nathanael Cousins |

– 1 –

I, Stephen C. Holmes, hereby declare:

1. I am an attorney admitted to practice before this Court and an attorney at the law firm of Hansen Law Firm, P.C., which represents Temujin Labs Inc. (Cayman) ("Temujin Cayman") in this action. I have personal knowledge of the matters set forth in this declaration and, if called upon to do so, could and would testify competently as to the matters described below.

2. Attached as **Exhibit 1** is a true and correct copy of the July 3, 2019 Unanimous Action of Members of Juniper Venture Partners LLC approving the transfer of all assets from Eian Labs Inc. ("Eian") to Temujin Cayman.

3. Attached as **Exhibit 2** is a true and correct copy of the August 12, 2019 Intellectual Property Sale Agreement between Eian and Temujin Cayman.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of November, 2021, at San Jose, California.

By: /s/ Stephen C. Holmes
Stephen C. Holmes

# EXHIBIT 1

<u>UNANIMOUS ACTION OF MEMBERS</u>
Juniper Venture Partners LLC

The undersigned, being all the members of Juniper Venture Partners LLC (the "Company"), pursuant to the provisions of Section 18-404(d) of the Delaware Limited Liability Company Act, agree that the following action shall be deemed duly taken as if taken at a regularly called meeting and entered into the minutes of the company:

WHEREAS the Company is a shareholder of Eian Labs, Inc, a Delaware corporation. ("Eian Labs")

WHEREAS Eian Labs owes a debt in the amount of approximately $<u>300,000</u> (the "Debt") to <u>Temujin Labs Inc</u> (the "Creditor");

WHEREAS Eian Labs has no sufficient assets to repay the Debt;

WHEREAS the Creditor is willing to purchase any and all assets of Eian Labs, both tangible and intangible (including intellectual property of Eian Labs) for $1.00 in satisfaction of Company's debt obligation to Creditor; and

RESOLVED: It is in the Company's best interest to approve Eian Labs to sell all of its assets to Creditor for $1.00 as full settlement of the Debt owed to Creditor.

RESOLVED: The Company approves that Eian Labs is authorized to enter into a settlement and mutual release agreement as well as asset purchase agreement with the Creditor, the forms of which are set forth on Exhibit A attached here to.

RESOLVED: That any executive officer of the Company, and each of them acting singly, is hereby authorized, empowered and directed to take any further action, including the execution of such additional documents, as such person may deem necessary, appropriate or desirable to carry out the intent of the above resolution.


_____

By: <u>Guanghua Liang</u>
Title: CEO of Member Fourhair LLC

_____
By: Ariel M. Abittan, Member

Dated: July 3, 2019

# EXHIBIT 2

# INTELLECTUAL PROPERTY SALE AGREEMENT

This Intellectual Property Sale Agreement (this "*Agreement*") is entered into on August 12, 2019 (the "*Effective Date*") by and between Eian Labs Inc., a Delaware corporation ("*Seller*"), and Temujin Labs Inc., an exempted company incorporated in the Cayman Islands ("*Purchaser*").

## RECITALS

**WHEREAS**, Seller desires to sell, transfer and assign all of its right, title, and interest in and to the assets specified in Schedule 1 hereto (the "**Acquired Assets**") to Purchaser, and Purchaser desires to purchase the Acquired Assets from Seller, on the terms set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. Purchase and Sale of Acquired Assets. Subject to the provisions of this Agreement, Seller shall sell to Purchaser and Purchaser shall purchase from Seller all of Seller's right, title, and interest in and to the Acquired Assets, effective as of the Effective Date.

2. Consideration. In exchange for the Acquired Assets, Purchaser shall pay to Seller a purchase price of $300,000 USD (the "*Purchase Price*"), payable within five (5) business days after the Effective Date.

3. Representations and Warranties of Seller. Seller represents and warrants to Purchaser as follows:

    a. Seller is a company duly organized, validly existing, and in good standing under the State of Delaware.

    b. Seller has all requisite legal power and authority to enter into, execute, deliver and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

    c. The execution and delivery by Seller of this Agreement, and the assignment and transfer of the Acquired Assets to Purchaser, does not conflict with, or result in any violation of or default under (with or without notice or lapse of time, or both), any contract, concession, franchise, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or to any of the Acquired Assets.

    d. This Agreement has been duly executed and delivered by Seller.

    e. This Agreement is a valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, subject only to the effect, if any, of

        (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

4. <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Seller as follows:

    a. Purchaser is a company duly organized, validly existing, and in good standing under the laws of Cayman Islands.

    b. Purchaser has all requisite legal power and authority to enter into, execute, deliver and perform its obligations under this Agreement and to consummate the transactions contemplated hereby.

    c. The execution, delivery, and performance of this Agreement by Purchaser of this Agreement, and the transactions contemplated herein, do not conflict with, or result in any violation of or default under (with or without notice or lapse of time, or both), any contract, concession, franchise, judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Purchaser.

    d. This Agreement has been duly executed and delivered by Purchaser.

    e. This Agreement is a valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, subject only to the effect, if any, of (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to rights of creditors generally and (ii) rules of law and equity governing specific performance, injunctive relief and other equitable remedies.

5. <u>DISCLAIMER OF WARRANTIES</u>. EXCEPT AS EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT, SELLER HEREBY DISCLAIMS ALL CONDITIONS, WARRANTIES, AND STATEMENTS IN RESPECT OF THE ACQUIRED ASSETS, WHETHER EXPRESS OR IMPLIED, BY STATUTE, CUSTOM OF THE TRADE, OR OTHERWISE (INCLUDING, WITHOUT LIMITATION, ANY SUCH CONDITION, WARRANTY, OR STATEMENT RELATING TO THE DESCRIPTION OR QUALITY OF THE ACQUIRED ASSETS, THEIR MERCHANTABILITY OR THEIR FITNESS FOR A PARTICULAR PURPOSE OR USE UNDER ANY CONDITIONS) AND ANY SUCH CONDITION, WARRANTY OR STATEMENT IS HEREBY DISCLAIMED BY SELLER AND EXCLUDED. IN NO EVENT SHALL SELLER BE LIABLE UNDER OR WITH RESPECT TO THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS, BREACH OF WARRANTY, TORT, OR BREACH OR REPUDIATION OF ANY TERM OR CONDITION OF THIS AGREEMENT; PROVIDED, HOWEVER, THAT NOTHING IN THIS AGREEMENT OR ANY ASSIGNMENT INSTRUMENT SHALL LIMIT

THE LIABILITY OF SELLER OR PURCHASER TO THE OTHER PARTY PURSUANT TO ARTICLE 6 HEREOF FOR SUCH DIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OR LOSS OF PROFITS OF ANY THIRD PARTY PAID BY THE OTHER PARTY TO SUCH THIRD PARTY.

6. Indemnification.

   a. Subject to the limitations of this Section 7, Seller shall indemnify and hold harmless Purchaser and its directors, officers, agents and employees and each person who controls or may control Purchaser (the "***Purchaser Indemnified Persons***") after the Effective Date from and against any and all losses, liabilities, damages, costs and expenses, including costs of investigation and defense, reasonable legal fees and expenses and other professionals' and experts' reasonable fees and expenses (collectively, "***Damages***") arising from assessments, claims, demands, assertions of liability or actual or threatened actions, suits or proceedings (whether civil, criminal, administrative or investigative) directly or indirectly incurred, paid or accrued in connection with, resulting from or arising out of:

      (i) the breach of any representation or warranty made by Seller pursuant to Section 4 of this Agreement; and

      (ii) any acts, failures to act, or events relating to the Acquired Assets and occurring prior to the Effective Date.

   b. Subject to the limitations of this Section 6, Purchaser shall indemnify and hold harmless Seller and its directors, officers, agents and employees and each person who controls or may control Seller (the "***Seller Indemnified Persons***") after the Effective Date from and against any and all Damages arising from assessments, claims, demands, assertions of liability or actual or threatened actions, suits or proceedings (whether civil, criminal, administrative or investigative) directly or indirectly incurred, paid or accrued in connection with, resulting from or arising out of:

      (i) the breach of any representation or warranty made by Purchaser pursuant to Section 3 of this Agreement;

      (iv) any acts, failures to act, or events relating to the Acquired Assets and occurring after the Effective Date.

   c. The period during which claims for indemnification may be initiated (the "***Claims Period***") shall begin on the Effective Date and shall end 12 months thereafter.

   d. If either party (the "***Indemnitee***") becomes aware of a third-party claim which such party believes may result in a claim against the other party (the "***Indemnitor***") by or on behalf of an Indemnified Person, the Indemnitee shall promptly notify the Indemnitor of such third-party claim, and the Indemnitor shall be entitled, at its expense, to participate in, but not to determine or conduct, any

3

defense of such claim. No delay in providing, or failure to provide, such notice shall affect the Indemnitee's rights hereunder so long as the Indemnitor has not been materially prejudiced thereby. The Indemnitee shall have the right in its sole discretion to conduct the defense of and to settle any such claim; <u>provided, however</u>, that, except with the consent of the Indemnitor, which consent shall not be unreasonably withheld, conditioned or delayed and which shall be deemed to have been given unless the Indemnitor shall have objected within 20 days after a written request for such consent by the Indemnitee, no settlement of any such claim with any third party claimant shall be determinative of the existence of or amount of Damages relating to such matter. If the Indemnitor has consented to any such settlement, the Indemnitor shall have no power or authority to object to the amount of any claim by or on behalf of any Indemnified Person for indemnity with respect to such settlement.

7. <u>Confidential Information</u>.

    a. Seller shall use every reasonable effort to keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others any Confidential Information. As used herein, the term "***Confidential Information***" shall mean all information with respect to the Acquired Assets, including, without limitation, information with respect to any financial statements, marketing plans, budgets, third party contracts, technology, trade secrets, design specifications, formulae, processes, methods, procedures, formats, and data.

    b. Paragraph (a) shall not apply in the case of Confidential information which (i) at the time of receipt or thereafter becomes generally known to the public through no wrongful act of Seller, (ii) is disclosed to Seller by a third party having a bona fide right to do so, (iii) is approved for release by the written authorization of Purchaser; or (iv) is disclosed pursuant to the requirement of a government agency, by court order, or by other operation of law after Purchaser has been given reasonable notice and an opportunity to object to such disclosures.

8. <u>Further Assurances</u>. At the request of Purchaser, Seller shall take such action and execute such documents as Purchaser may reasonably require in order to complete, record, or perfect Seller's sale, assignment, and transfer of the Acquired Assets to Purchaser.

9. <u>Successors and Assigns</u>. No party shall be entitled to assign its rights and obligations under this Agreement without the prior written consent of the other party; provided, however, that at any time a party shall be entitled, without the prior written consent of the other party, to assign its rights and obligations hereunder to an affiliate, but such assignment to an affiliate or third party shall not relieve the assigning party of its obligations hereunder. No permitted assignment shall be deemed effective until the assignee has executed and delivered in writing such instruments as are reasonably satisfactory to assure the other party that the assignee has assumed all of the obligations of the assigning party. This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and permitted assigns of the parties hereto. A merger or

consolidation of a party with or into a third party shall not be considered an assignment hereunder.

10. Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to its choice of laws or conflict of laws principles, as though entered into between residents of California. All disputes arising out of this Agreement shall be subject to the exclusive jurisdiction and venue of the federal or state courts located in Santa Clara County, California. Each party consents to the personal and exclusive jurisdiction and venue of these courts.

11. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. Each Party hereby covenants and agrees to execute all duplicates or replacement counterparts of this Agreement as may be required.

12. Severability. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement, the balance of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms and the parties shall substitute a valid provision with the same intent and economic effect.

13. Notices. Any notice or other documents to be given under this Agreement shall be in writing and shall be deemed to have been duly given if sent by an internationally recognized overnight courier to the recipient's address specified below, provided that such courier regularly delivers to addresses in that area, by facsimile transmission at the facsimile number specified below, or to such other address or number as the party may from time to time designate by written notice to the other:

        To Seller:        Eian Labs Inc.
                            468 Middlefield Rd
                            Atherton, CA 94107

        To Purchaser:    Temujin Labs Inc.
                            Grand Pavilion Commercial Centre, Suite 24, 802 West Bay Road, P.O. Box 10281, Grand Cayman KY1-1003, Cayman Islands

**IN WITNESS WHEREOF**, the parties hereto have each caused this Agreement to be duly executed as of the date and time first written above.

| **Eian Labs Inc.** | **Temujin Labs Inc.** |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: Guanghua Liang | Name: |
| Title: Director | Title: Director |
| Date: 8/12/2019 | Date: 08/12/2019 |

**DRAFT**

## Schedule 1

## Acquired Assets

All intellectual property rights that are owned by Seller, including but not limited to all know-how, software in both source and object code forms, drawings, designs, technology, ideas, processes, formulas, compositions, data, techniques, improvements, inventions (whether patentable or not), works of authorship, mask works, trade secrets, domain names, URLs, web sites, unique names, logos used or proposed to be used in the business, business and product development plans, market studies, financial projections, customer lists, and all other information and items relating to the business of Eian Labs, Inc., as well as any precursors, derivatives, modifications, and improvements to the same, and any related materials (including but not limited to documentation, designs, algorithms, notes, etc. related thereto).