# Exhibit A

Katherine Eskovitz (CA Bar No. 255105)
Brianna Pierce (*CA Bar No. Pending*)
ROCHE FREEDMAN LLP
1158 26th Street, Suite 175
Santa Monica, CA 90403
Tel: (646) 791-6883
Email: keskovitz@rcfllp.com
          bpierce@rcfllp.com

Constantine P. Economides
ROCHE FREEDMAN LLP
Florida Bar No. 118177 (PHV)
200 S Biscayne Blvd
Suite 5500
Miami, FL 33131
Tel: (305) 971-5943
Email:  ceconomides@rcfllp.com

*Counsel for Plaintiff,*
*Ariel Abittan*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ARIEL ABITTAN, | Case No. 5:20-CV-09340-NC |
| PLAINTIFF, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), DAMIEN DING (A/K/A DAMIEN TAO LEUNG, A/K/A TAO DING), TEMUJIN LABS INC. (A DELAWARE CORPORATION), AND TEMUJIN LABS INC. (A CAYMAN CORPORATION), | Judge:  Nathanael Cousins |
| DEFENDANTS, | |
| and | |
| EIAN LABS INC., | |
| NOMINAL DEFENDANT. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.    INTRODUCTION ....................................................................................................... 1

II.   ISSUES TO BE DECIDED ......................................................................................... 2

III.  FACTUAL BACKGROUND ....................................................................................... 2

IV.   RELEVANT LEGAL STANDARDS ........................................................................... 6

V.    ARGUMENT .............................................................................................................. 7

    A.   Defendant's Compulsory Counterclaim Arguments Fail ................................... 7

        1.   Section 426.30 Does Not Apply in Federal Court ..................................... 7

        2.   Even If It Could Apply in Federal Court, § 426.30(a) Has Not Been Triggered ......... 9

        3.   Even If § 426.30 Could Apply in Federal Court and Had Been Triggered, This Action and the State Action Lack Identity of Claims and Identity of Parties ...... 9

    B.   Plaintiff Has Established His Ability to Bring the Derivative Claims ........................... 10

        1.   Rule 23.1 Does Not Specify a Specific Form of Verification .................................. 10

        2.   Plaintiff Is a Beneficial Owner of Eian Shares ......................................... 11

    C.   Plaintiff Has Adequately Alleged RICO Claims (Counts VI and VII) ........................... 12

        1.   Temujin Delaware engaged in "conduct" ................................................... 13

        2.   Temujin Delaware was part of an "association-in-fact enterprise" .......................... 14

        3.   Temujin Delaware engaged in a "pattern" of "racketeering activity" ...................... 15

        4.   Temujin Delaware participated in a RICO conspiracy ............................... 17

    D.   Plaintiff Has Adequately Alleged the Derivative Aiding and Abetting Claim (Count II) ...... 18

    E.   Plaintiff Has Adequately Alleged the Derivative Fraudulent Inducement Claim (Count III) ...... 18

    F.   Plaintiff Has Adequately Alleged the Fraud Claim (Count VIII) ................................... 20

    G.   Plaintiff Has Adequately Alleged the Conversion Claim (Count X) ............................... 21

    H.   Plaintiff Has Adequately Alleged the Unjust Enrichment Claims (Counts IV, XI ) ....... 22

    I.   Plaintiff Has Adequately Alleged the Accounting Claims (Counts V, XIII)................... 23

VI.  CONCLUSION ........................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:20-CV-09340-NC

# TABLE OF AUTHORITIES

**CASES**

*Banerian v. O'Malley*,
  42 Cal. App. 3d 604 (Cal. App. 1974) ............................................................ 10

*Charleston Rancho, LLC v. Stanley Convergent Sec. Sols., Inc.*,
  218CV02205APGVCF, 2019 WL 3754581 (D. Nev. Aug. 8, 2019) ........................ 22

*Cheiker v. Prudential*,
  820 F.2d 334 (9th Cir. 1987) .......................................................................... 8

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ....................................................................................... 7

*Erhart v. BofI Holding, Inc.*,
  15-CV-02287-BAS-NLS, 2020 WL 1550207 (S.D. Cal. Mar. 31, 2020) ................. 21

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1933) ......................................................................................... 7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ....................................................................................... 8

*In re Columbia Pipeline Group, Inc.*,
  2018-0484-JTL, 2021 WL 772562 (Del. Ch. 2021) ....................................... 18

*In re Crown Vantage, Inc.*,
  421 F.3d 963 (9th Cir. 2005) .......................................................................... 8

*In re Dole Food Co., Inc. Stockholder Litigation*,
  110 A.3d 1257 (Del. Ch. 2015) ..................................................................... 19

*In re Juul Labs, Inc., Mktg., Sales Practices, & Products Liab. Litig.*,
  19-MD-02913-WHO, 2021 WL 1391540 (N.D. Cal. Apr. 13, 2021) ............ 16, 17

*In re MIPS Tech., Inc. Derivative Litig.*,
  542 F. Supp. 2d 968 (N.D. Cal. 2008) ............................................................ 11

*Ketayi v. Health Enrollment Grp.*,
  20-CV-1198-GPC-KSC, 2021 WL 347687 (S.D. Cal. Feb. 2, 2021) ................... 14

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .......................................................................... 2

*Kline v. Burke Const. Co.*,
  260 U.S. 226 (1922) ....................................................................................... 7

*LD v. United Behavioral Health*,
  4:20-CV-02254 YGR, 2021 WL 930624 (N.D. Cal. Mar. 11, 2021) ............... 7, 16

*Lieberman v. BeyondTrust Corp.*,
   1:19-cv-01730-RGA, 2020 WL 1815547 (D. Del. 2020) .......................................... 19

*Lopes v. Vieria*,
   1:06-CV-01243 OWW, 2011 WL 1883157 (E.D. Cal. May 17, 2011) ............................... 10, 11

*Maldonado v. Harris*,
   370 F.3d 945 (9th Cir. 2004) .......................................................................... 9, 10

*Parsons Steel, Inc. v. First Alabama Bank*,
   474 U.S. 518 (1986) ........................................................................................ 8

*Patrick v. Alacer Corp.*
   (2008) 167 Cal.App.4th 995, [84 Cal.Rptr.3d 642] .................................................. 12

*Payward, Inc. v. Runyon*,
   20-CV-02130-MMC, 2021 WL 242903 (N.D. Cal. Jan. 25, 2021) ................................... 7, 8, 9

*Pearce v. Superior Court*,
   149 Cal.App.3d 1058 (Cal. App. 5 Dist) ............................................................... 12

*Rosenthal v. Burry Biscuit Corp.*,
   30 Del. Ch. 299 (1948) .................................................................................. 12

*Scripps Health v. Nthrive Revenue Systems, LLC*,
   19-CV-00760-H-DEB, 2021 WL 1978477 (S.D. Cal. May 18, 2021) ................................... 23

*Shuman v. SquareTrade Inc.*,
   20-CV-02725-JCS, 2020 WL 7458001 (N.D. Cal. Dec. 18, 2020) ................................... 22

*Sihler v. Fulfillment Lab, Inc.*,
   3:20-CV-01528-H-MSB, 2021 WL 1293839 (S.D. Cal. Apr. 7, 2021) ............................... 13, 14

*Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*,
   5:12-CV-04382-EJD, 2015 WL 183913 (N.D. Cal. Jan. 14, 2015) ................................... 20

*Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*,
   CV 19-10791 PA (JCx), 2020 WL 4342260 (C.D. Cal. May 22, 2020) ............................... 14

*Tan v. Quick Box, LLC*,
   3:20-CV-01082-H-DEB, 2021 WL 1293862 (S.D. Cal. Apr. 7, 2021) ......................... 13, 14, 17

**OTHER AUTHORITIES**

Cal. Civ. Proc. Code § 426.30(a) ....................................................................... 7, 8, 9

Corp. Code sec. 800, subd. (b)(1) ...................................................................... 11

Plaintiff Ariel Abittan respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss by Defendant Temujin Labs Inc. (Delaware) ("Motion" or "Mot.").[1]

## I.  INTRODUCTION

Defendants Lily Chao, Damien Ding, Temujin Labs (Delaware), and Temujin Labs (Cayman) defrauded Ariel Abittan. After some successful business dealings beginning in May 2016, Abittan partnered with Chao and Ding to create Eian (dba Findora; formerly Porepsus Labs, Inc.), a company with lucrative blockchain technology. Abittan spent years working tirelessly and in good faith with Chao and Ding to grow Eian. Abittan recruited a prominent team to develop the technology, and he secured investments from his friends and family. But just as Eian was poised for success—and purportedly garnering valuations as high as $60,000,000—Defendants committed fraud to misappropriate Abittan's interests in the company and its lucrative assets.

Leveraging the trust and reliance Defendants Chao and Ding had developed with Abittan, Chao misrepresented the contents, purposes, and effects of some corporate paperwork and tricked Abittan into signing those documents. In doing so, Chao picked her timing and words carefully. She approached Abittan when she knew he was rushing to catch a flight. She insisted that he sign the documents as a corporate protection to limit potential liability. When Abittan asked about the contents, she told him to trust her.

The ruse worked. Abittan signed documents that Defendants Chao and Ding used to transfer all assets of the multi-million-dollar Eian (dba Findora) to new shell entities in Delaware and the Caymans called Temujin Labs Inc. Within months, Defendants Chao and Ding, using Temujin (now dba Findora), had extricated Abittan from the company he had spent years co-founding. They put up a website that excluded him. They deleted his email account. They lied and equivocated to

---

[1] Unless otherwise noted, all emphasis has been added, and internal citations have been omitted. Citations to "¶" refer to the Complaint (ECF No. 1). Capitalized terms that are not defined have the meanings ascribed in the Complaint or Motion.

Abittan, investors, and Findora's executives. They even refused to pay for hundreds of thousands of expenses they had charged onto business credit cards Abittan had taken out for Eian.

Today, Findora is worth tens of millions of dollars. Yet the "sale" of Findora's name, IP, and other assets from Eian to Temujin—as orchestrated by Defendants Chao and Ding with the sham paperwork—was for $300,000. Simply put, it was a facially fraudulent transaction to which an informed person or entity would never have agreed. On behalf of himself and derivatively on behalf of Eian, Abittan now seeks redress.

## II.    ISSUES TO BE DECIDED

1.    Whether Plaintiff's claims against Temujin Delaware must be dismissed because of separate state court litigation involving Temujin Delaware but no other Defendant in this action.

2.    Whether Plaintiff has stated valid derivative claims on behalf of Eian Labs Inc. against Temujin Delaware

3.    Whether Plaintiff has stated valid individual claims against Temujin Delaware.

## III.    FACTUAL BACKGROUND[2]

In or around May 2016, Plaintiff Ariel Abittan began a business partnership, focused on buying and reselling luxury watches worth millions of dollars, with Defendants Lily Chao and

---

[2] Defendant Temujin Cayman improperly seeks consideration of 34 pages of extraneous exhibits. *See* [ECF Nos. 38, 44]. "The overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results. . . . [T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).

Here, Defendant has not sufficiently established particular facts (as opposed to wholesale documents) that meet every requirement for judicial notice. *See Khoja*, 899 F.3d at 999 ("A court must also consider—and identify—which fact or facts it is noticing from such a [document]. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."). Nor has Defendant established a proper use of the incorporation by reference doctrine. *See id.* at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims."). Thus, the Court should limit its analysis to the facts pleaded in the Complaint.

Damien Ding. ¶¶ 27-31. By December 2017, Abittan had developed significant trust in Defendants, and their collective business plan had evolved into developing blockchain technology to facilitate secure and anonymous watch transactions. ¶¶ 35-42. By January 2018, the blockchain plan had progressed to a wider use case across myriad industries. ¶ 43.

To that end, Abittan, Chao, and Ding created a series of entities, including Eian. ¶¶ 43-52. Eian held the rights to all of the intellectual property associated with the blockchain business and also owned rights to the name Findora, which was (and remains) the public-facing name for the venture. ¶ 52.

Over the ensuing months, Abittan worked diligently to make Eian a success. ¶¶ 59-74. By December 2018, Eian had recruited, among others:

- Charles Lu as CEO;
- Benjamin Fisch as CTO/Chief Scientist;
- John Powers (who had previously run the Stanford Endowment Fund); and
- Dan Boneh (the head of Stanford's cryptography Ph.D. program).

¶¶60-61. By March 2019, Plaintiff had assisted Eian in building an operating demo, securing a contract with the Chinese government, pitching its blockchain product to funds as use cases, and completing several white papers. ¶ 64. Moreover, Eian was just six months away from a test net (*i.e.*, an alternative blockchain to use for testing). ¶ 64.

In this same time period, beginning July 2018, Abittan began raising funds for Eian from family friends. ¶¶ 69-70. He ultimately raised $1,200,000. *Id.* In return, Eian would either refund the money within 90 days or conduct an initial coin offering ("ICO") providing investors with coins at a 70% discount of the public token price. ¶ 71. Although Eian did not conduct the ICO within 90 days, the investors agreed to roll their investments into a future offering. ¶ 72.

By March 2019, Eian had not conducted the ICO. *See* ¶ 74. Accordingly, Defendant Chao and Abittan met with three of the investors to negotiate new terms. ¶ 74. Defendant Chao promised

that Eian would either issue a token or return the investments with a 25% annualized return. ¶ 74. Reinforcing Eian's ability to meet either obligation, Defendant Chao presented investors with a term sheet showing a $10,000,000 incoming investment from China Orient Group, valuing Eian at $60,000,000. ¶ 74.

Up to this point, Abittan had trusted and relied upon his partners and co-founders, Defendants Chao and Ding. In addition to securing investments from friends and family (¶¶69-70) and devoting substantial effort to recruit high profile officers and executives for Eian (¶¶ 60-61), for example, Abittan even used his personal credit to obtain credit cards for Defendants Chao and Ding to use on business expenses. ¶¶ 75-82. Through approximately April 2019, moreover, Defendant Chao had timely paid those credit card bills. *See* ¶ 85.

**In reality, Defendants Chao and Ding were defrauding Abittan**. And on July 2, 2019, they took a substantial step to effectuate that fraud. *See* ¶¶87-96. Defendant Chao explained to Abittan that Eian should be converted into a Cayman entity in order to minimize potential liability vis-à-vis the forthcoming ICO. ¶ 89. As Abittan was leaving for the airport, Defendant Chao provided him with paperwork, guaranteed that his equity interest in Eian and Findora would remain the same, and demanded that he sign the documents immediately. ¶ 91. When Abittan asked questions, Defendant Chao became upset and insisted that it was a "betrayal of trust" if he refused to accept her representations of the documents' contents. ¶ 92. Relying on Chao, Abittan signed. ¶ 92. Defendant assured Abittan that she would send him electronic copies of the signed documents, but she never did. ¶ 94.

**Defendant Chao had deceived Abittan into signing papers that purportedly looted Eian.** ¶ 95. Specifically, the papers—which Defendant Chao had insisted preserved Abittan's equity while mitigating liability for all of the founders—purported to transfer all assets (including IP) owned by Eian to new entities, Defendants Temujin Labs Inc. ("Temujin"), in exchange for

$300,000.[3] ¶ 95. Neither Abittan nor any investor (or reasonable person) would have knowingly agreed to that deal. ¶ 95. Indeed, Eian owned the valuable blockchain technology that Defendant Chao had valued at $60 million. *See* ¶ 76. Moreover, Abittan had worked tirelessly to obtain investments recruit top talent to develop those valuable assets, and the $300,000 was not enough to even cover the debt Defendant Chao had incurred on Abittan's business credit cards. *See* ¶¶ 70-71, 79, 85, 106, 110. Simply put, the purported sale of Eian's tens of millions of dollars in assets to Temujin for $300,000 was a fraud. *See* ¶¶ 87-96.

Unfortunately for Abittan, however, Defendants Chao and Ding continued the fraud throughout the following months. In phone calls, emails, and texts, Defendant Chao continued representing that Abittan was an owner and co-founder with equity in Findora. ¶ 96. At the same time, Defendants Chao and Ding:

- surreptitiously began using contracts in the name of Temujin Labs (dba Findora) to operate the business (¶ 98);
- put up a Findora website omitting Abittan, while reassuring him that the site would be updated (¶ 99);
- cut off Abittan's access to his email account (¶ 100);
- fraudulently caused (or falsely stated that they had caused) the Board of Directors and shareholders of Eian to unanimously approve of the sale of Eian's assets to Temujin Labs (¶¶ 101-102);
- misled Abittan about payments on the business credit cards (¶¶ 103-111); and
- defamed Abittan to Findora's executives (¶¶ 112).

Believing she had fraudulently bypassed Abittan, moreover, Defendant Chao was looting Findora. ¶¶ 115-118. She transferred millions of dollars from Findora to third parties, without Findora receiving anything of value in return. ¶¶ 115-118. As this conduct was coming to light, employee

---

[3] Plaintiff's investigation revealed two entities with the same name (Temujin Labs Inc.), both included as Defendants: "Temujin Delaware" and "Temujin Cayman." Although the entities appear to operate interchangeably (other than as to the place of incorporation), they have not jointly moved in response to the Complaint.

dissatisfaction escalated, and Findora executives, including the CEO and CTO, resigned. ¶¶ 113, 119, 125.

In sum, Abittan spent years building Findora as an owner and co-founder only to face fraud, deceit, breaches, and looting by his partners. Based on this conduct, Abittan—individually and derivatively on behalf of Eian—brings claims for:

(1)     Breach of fiduciary duty, derivatively, against Defendant Chao;

(2)     Aiding and abetting breach of fiduciary duty, derivatively, against Defendants Temujin Labs (Delaware), Temujin Labs (Cayman), and Ding)

(3)     Fraudulent inducement, derivatively, against all Defendants

(4)     Unjust enrichment, derivatively, against all Defendants

(5)     Accounting, derivatively, against all Defendants

(6)     RICO violations (18 U.S.C. § 1962(c)) against all Defendants;

(7)     RICO conspiracy (18 U.S.C. § 1962(d)) against all Defendants;

(8)     Fraud against all Defendants

(9)     Breach of Contract against Defendants Ding and Chao;

(10)    Conversion against all Defendants;

(11)    Unjust enrichment against all Defendants;

(12)    Defamation against Defendants Ding and Chao;

(13)    Accounting against all Defendants.

¶¶ 142-218. In response to these allegations, Defendant Temujin Delaware has appeared and filed the instant Motion, whereas Defendants Temujin Cayman, Chao, and Ding intend to contest service. *See* [ECF No. 44]. For the reasons stated below, Temujin Delaware's Motion should be denied in full.

## IV.     <u>RELEVANT LEGAL STANDARDS</u>

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *LD v. United Behavioral Health*,

4:20-CV-02254 YGR, 2021 WL 930624, at *3 (N.D. Cal. Mar. 11, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff." *Id.* Moreover, "[a] court should grant leave to amend unless the pleading could not possibly be cured by the allegation of other facts." *Id.*

## V.   ARGUMENT

### A.   Defendant's Compulsory Counterclaim Arguments Fail

Relying on Cal. Civ. Proc. Code § 426.30(a), Defendant argues that every cause of action is a compulsory counterclaim that Plaintiff should have brought in the separate state court action ("State Action"). Mot. at 6-9. For three primary reasons, this argument is specious. First, § 426.30 does not apply in federal court. Second, even it could apply in federal court, § 426.30 has not been triggered. Third, this action and the State Action lack identity of claims and parties.

### 1.   Section 426.30 Does Not Apply in Federal Court

"Section 426.30 is procedural in nature and, consequently, under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1933), is inapplicable to claims pending in federal court." *Payward, Inc. v. Runyon*, 20-CV-02130-MMC, 2021 WL 242903, at *7 (N.D. Cal. Jan. 25, 2021). "Indeed, application of § 426.30 to a complaint pending in federal court would be contrary to the general rule that a district court must exercise jurisdiction over a federal action even if the same issues are pending in a separate state action." *Id.* (citing *Kline v. Burke Const. Co.*, 260 U.S. 226, 230–32 (1922) (where "same issues are to be tried and determined" simultaneously in state and federal actions, "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court"); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–819 (1976) (holding federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them" and that only where "exceptional" circumstances exist may district court depart from general

1  rule that "pendency of an action in the state court is no bar to proceedings concerning the same

2  matter in the Federal court having jurisdiction")).

3      Accordingly, the earlier-filed State Action cannot bar Abittan from seeking relief in this

4  Court. The Court has diversity and federal question jurisdiction and, in turn, has a virtually

5  unflagging obligation to exercise that jurisdiction and adjudicate Abittan's claims. A procedural

6  state statute cannot deprive Abittan of his right to proceed with his claims in this federal forum.

7      Furthermore, Defendant's argument relies on inapposite cases. *See* Mot. at 6. In *Cheiker v.*

8  *Prudential*, the court found that a "final judgment in the state court action" precluded bringing

9  claims in a separate federal action. 820 F.2d 334, 336-37 (9th Cir. 1987). In other words, the court

10  held that the parties could not relitigate claims after having fully litigated to final judgment

11  substantially related causes of action in a state court case, where—pursuant to § 426.30—the

12  plaintiff could and should have litigated all counterclaims before proceeding to that final judgment.

13  *See id.* at 336 (affirming district court's "holding that each of appellant's causes of action was barred

14

15  by the final judgment in the state court action").[4]

16

17      Here, Plaintiff has not adjudicated his claims, and there is no final judgment. Therefore, §

18  426.30 does not apply, and Temujin Delaware's request for the Court to yield its valid jurisdiction

19  is baseless. *See Runyon*, 2021 WL 242903 at *8 ("[N]o judgment having been entered in [the] state

20  court case, and, absent a final judgment entered in a state court action, § 426.30(a) has no application

21  in federal court.").[5]

22

23  _____

24  [4] In *In re Crown Vantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005), the court considered the propriety of an injunction issued by a bankruptcy court and never mentioned § 426.30.

25  [5] Notably, even when a state court in a parallel case reaches a final judgment, the federal court still maintains jurisdiction and considers only the preclusive effect of the state court judgment. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986) ("[P]roperly invoked federal jurisdiction does not vanish if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court; rather, disposition of the federal action, once the state-court adjudication is complete, would simply be governed by preclusion law."); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 282 (2005) ("In parallel litigation, a federal court may be

26

27

28

8

**2. Even If It Could Apply in Federal Court, § 426.30(a) Has Not Been Triggered**

Section 426.30(a) provides as follows:

(a) Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

(b) This section does not apply if either of the following are established:

(1) The court in which the action is pending does not have jurisdiction to render a personal judgment against the person who failed to plead the related cause of action.

(2) The person who failed to plead the related cause of action did not file an answer to the complaint against him.

Cal. Civ. Proc. Code § 426.30. Accordingly, a compulsory cross-complaint is due only at "the time of serving [Abittan's] answer to the complaint." *Id.* Moreover, § 426.30 "does not apply if . . . [Abittan] did not file an answer[.]" *Id.*

When Abittan initiated this litigation on December 24, 2020, his answer was **not** due in the State Action. As of May 21, 2021, he still has **not** answered (or otherwise responded to) the complaint, and his deadline to respond to the complaint is stayed. Consequently, Abittan falls within the statute's explicit exception. When he filed this action, Abittan had no obligations under § 426.30; therefore, he could not have waived or otherwise lost his right to bring his claims in this forum.

**3. Even If § 426.30 Could Apply in Federal Court and Had Been Triggered, This Action and the State Action Lack Identity of Claims and Identity of Parties**

"Section 426.30 requires a defendant in a state court action in California to raise any related causes of action which he has against the *plaintiff* in that action" *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004). In other words, "[e]xcept as between plaintiffs and defendants, there is no

_____

bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.").

compulsory cross-complaint in California procedure. Rather, a cross-complaint is permissive as between co-parties and between parties and nonparties." *Banerian v. O'Malley*, 42 Cal. App. 3d 604, 612 (Cal. App. 1974); *see also Harris*, 370 F.3d at 951 ("Under the plain language of § 426.30, Maldonado was not required to bring a § 1983 action against the director of Caltrans because the director was not the plaintiff in the state nuisance action.").

Temujin Delaware is the only plaintiff in the State Action. Therefore—if § 426.30 could apply, notwithstanding the arguments above—Abittan has no obligation to assert his claims against Defendants Chao, Ding, or Temujin Cayman or nominal defendant Eian Labs in the State Action. Consequently, the practical effect of the requested dismissal by Temujin Delaware would be for Abittan to proceed with his claims against the other joint-tortfeasors in this forum, while litigating the same claims against Temujin Delaware in the State Action.[6]

**B.**  **Plaintiff Has Established His Ability to Bring the Derivative Claims**

Temujin Delaware raises two challenges to Plaintiff's standing to raise derivative claims. First, it asserts that the claims must be dismissed as unverified. Mot. at 9. Second, it asserts that Plaintiff fails to allege his interest in Eian. Mot. at 10. Neither argument warrants dismissal.

**1.**  **Rule 23.1 Does Not Specify a Specific Form of Verification**

"When a court finds that a complaint in a derivative suit lacks a valid verification, dismissal is appropriate under Rule 41(b), **unless subsequent events demonstrate that the objectives of verification have been satisfied**." *Lopes v. Vieria*, 1:06-CV-01243 OWW, 2011 WL 1883157, at *36 (E.D. Cal. May 17, 2011). "The rule's original purpose was to prevent strike suits," and "[c]ombined, Rule 11 and Rule 23.1 serve to assure the court that some person, party, attorney,

---

[6] Indeed, Temujin Delaware's co-defendants have not offered to accept service in or otherwise appear in the State Action, despite having the same counsel as Temujin Delaware. It appears that Defendants are invoking § 426.30 as a tactic to thwart Abittan's pursuit of his claims, not as an effort to conserve resources and streamline litigation in a single forum.

1  advisor, or otherwise has responsibly investigated the allegations at the behest of the named plaintiff,

2  who then stands behind the merits of the complaint." *Id.*; *In re MIPS Tech., Inc. Derivative Litig.*,

3  542 F. Supp. 2d 968, 974 (N.D. Cal. 2008) (granting leave to amend unverified derivative

4  complaint).

5      Here, the Complaint comports with this policy, is not a strike suit, reflects a thorough

6  investigation, and demonstrates that Plaintiff stands behind the merits. The Complaint is a targeted

7  action brought by a 40% shareholder to redress both indirect and direct harms caused to Plaintiff

8  and Eian by Temujin Delaware and its co-defendants. To that end, Plaintiff's complaint includes

9  twenty-four (24) pages of detailed facts to substantiate thirteen (13) claims. Those allegations and

10  claims followed a responsible investigation undertaken by Plaintiff's counsel at the behest of

11  Plaintiff. In signing his name to the complaint, Plaintiff's counsel stood behind the investigation and

12

13  the Complaint's merits. As the sole Plaintiff, Abittan intends to vigorously pursue this litigation.

14      These facts serve the purpose of the verification requirement under Rule 23.1(b). To the

15  extent the Court seeks further support for the Complaint, Plaintiff respectfully requests leave to

16  submit a declaration verifying the allegations or, alternatively, to file an amended complaint.

17

18      **2.      Plaintiff Is a Beneficial Owner of Eian Shares**

19      Without specifying the applicable law, Defendant contests that Abittan is a shareholder able

20  to bring derivative claims on behalf of Eian. Mot. at 10. This argument is flawed.[7]

21      State law governs the question of whether a plaintiff is a shareholder that can bring derivative

22  claims. To have standing in California, a plaintiff must allege that he "was a shareholder, of record

23

24  or beneficially… at the time of the [relevant] transaction." Corp. Code sec. 800, subd. (b)(1).

25  ───────────────
[7] As a threshold matter, the crux of the case is that Defendants are continuing a scheme—through

26  fraudulently induced and sham paperwork—to misappropriate Abittan's interest in Eian and Eian's

27  assets. Defendant's argument amounts to a claim that the alleged corporate mischief has succeeded

    in depriving Abittan of the ability to preserve his beneficial interest in Eian and Findora.

28

"[C]ourts in California have historically given derivative suit standing requirements a liberal construction." *Pearce v. Superior Court*, 149 Cal.App.3d 1058, 1066 (Cal. App. 5 Dist). "[I]t is sufficient that the plaintiff be an equitable shareholder or unregistered owner of shares." *Id*. at 1065. Accordingly, interest in one entity that, in turn, is the shareholder of the subject corporation is sufficient. *See Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1011–1012 [84 Cal.Rptr.3d 642, 657–658], *as modified on denial of reh'g* (Nov. 21, 2008) (holding that the plaintiff's interest in the trust, which owned the Alacer shares, "essentially makes [plaintiff] an unregistered Alacer shareholder . . . [and] satisfies the liberal standing requirement of beneficial ownership." *Id*.[8]

Eian has only two direct shareholders: Juniper Ventures Partners LLC (holding 672,000 of the 848,471, or 79.2%, of Eian's shares) and Lakeside Garden Heritage LLC (holding 176,571, or 20.8%, of Eian's shares). ¶ 49. Juniper in turn also has two 50% shareholders: (1) Plaintiff; and (2) Fourhair LLC. ¶¶ 48-49. Thus, Plaintiff owns 50% of Juniper, which owns 79.2% of Eian, and as a result, Plaintiff is the beneficial owner of 39.6% of Eian's shares. *See* ¶¶ 21, 48-51. As a beneficial owner, Plaintiff satisfies the threshold issue of being a "shareholder" who can assert a derivative action on behalf of Eian.

## C.    Plaintiff Has Adequately Alleged RICO Claims (Counts VI and VII)

Defendant contends that Plaintiff has failed to allege the conduct, enterprise, pattern, and racketeering elements of a RICO claim. Mot. at 12-17. Each argument fails.

"To maintain a civil RICO claim, a plaintiff must allege that the defendant engaged in: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." *Sihler v. Fulfillment*

---

[8] California and Delaware both recognize equitable ownership as valid grounds for standing. *See Rosenthal v. Burry Biscuit Corp.,* 30 Del. Ch. 299, 311 (1948).

*Lab, Inc.*, 3:20-CV-01528-H-MSB, 2021 WL 1293839, at *7 (S.D. Cal. Apr. 7, 2021). Plaintiff will address each element in turn.

### 1. Temujin Delaware engaged in "conduct"

"In order to participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must have *some part* in directing those affairs." *Tan v. Quick Box, LLC*, 3:20-CV-01082-H-DEB, 2021 WL 1293862, at *21 (S.D. Cal. Apr. 7, 2021). "This requirement does not limit RICO liability to those with primary responsibility for the enterprise's affairs, nor does it require a participant to exercise significant control over or within an enterprise." *Id.* "[T]o assess whether a defendant had a sufficient role in operation or management to meet the standard . . ., courts consider whether the defendant (1) gave or took directions; (2) occupied a position in the chain of command through which the affairs of the enterprise are conducted; (3) knowingly implemented decisions of upper management; **or** (4) was indispensable to achievement of the enterprise's goal in that the defendant's position is vital to the mission's success." *Id.*

Plaintiff's allegations meet each factor. As alleged "Defendants Ding, Chao, Temujin (Delaware), and Temujin (Cayman) formed an association-in-fact, whose joint and common purpose was to generate profits by defrauding investors and business partners out of assets." ¶ 171. Defendants "Ding and Chao ultimately controlled and managed the operations of the entire association-in-fact and personally directed the day-to-day operations of its related entities" ¶ 172. More specifically, Defendants Ding and Chao used Temujin (Delaware) as part of the association-in-fact enterprise that, *inter alia*, "transfer[red] intellectual property from Eian to Temujin for inadequate consideration." ¶175; *see also* ¶¶ 95-102. When taken as true, those allegations show that Temujin Delaware took directions from Ding and Chao, was part of the chain of command, implemented Ding and Chao's directives, and was indispensable to the mission of looting Eian and defrauding Abittan. Indeed, other members of the association-in-fact enterprise (Ding and Chao)

created Temujin (Delaware) and Temujin (Cayman) as sham entities to appropriate Abittan's interest in Findora. Those allegations show "conduct." *See Ketayi v. Health Enrollment Grp.*, 20-CV-1198-GPC-KSC, 2021 WL 347687, at *26 (S.D. Cal. Feb. 2, 2021) (finding "conduct" where "as the underwriter of the limited health plans, [Defendant]'s position was 'vital' to the success of an alleged enterprise predicated on the sale of the limited health Plans—Plaintiffs essentially allege that the scheme revolved around the sale of [Defendant]'s product").[9]

Relying on inapposite cases, Temujin Delaware incorrectly suggests that it engaged only in a routine commercial relationship. *See* Mot. at 13 (citing *Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*, CV 19-10791 PA (JCx), 2020 WL 4342260, at *3 (C.D. Cal. May 22, 2020)). In *Stubhub, Inc.*, there were two functioning entities with "a business relationship in which StubHub has hired Awin to perform certain services." *Id.* Here, however, Temujin (Delaware) had no legitimate business or commercial relationships. It was created solely to receive millions of dollars of IP from Eian while depriving Abittan of his rightful share. Defendants can seek to prove otherwise, but at this stage, Plaintiff's allegations suffice. *See Tan*, 2021 WL 1293862 at *22 (holding that "Defendants' arguments [as to conduct] are better suited to a motion for summary judgment when the record is more fully developed").

### 2.     Temujin Delaware was part of an "association-in-fact enterprise"

"An association-in-fact enterprise is a group of persons associated together for a common purpose of engaging in a course of conduct." *Sihler, Inc.*, 2021 WL 1293839 at *8. It "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* But it "does not require any particular organizational structure." *Id.*

---

[9] These particularized allegations also show the role that each Defendant, including Temujin Delaware, played in defrauding and harming Abittan. Accordingly, Temujin Delaware's cursory argument about group pleading is unpersuasive. *See* Mot. at 11-12.

The alleged association-in-fact enterprise has these three structural features. Defendants Chao, Ding, Temujin Cayman, and Temujin Delaware had a relationship lasting long enough to fulfill the purpose of misappropriating money and intellectual property. *See* ¶ 171; *see also* ¶¶ 30, 31, 32, 44, 45, 71, 78, 79, 80, 82, 92, and 95.

Largely ignoring those allegations, Defendant suggests that "even if Temujin Delaware benefited from having purchased the Eian assets (another purported fraud), that alone does not demonstrate a 'common purpose' shared by all." *See* Mot. at 14. But Temujin Delaware was not a normal business that profited while offering legitimate services. Rather, it was created solely to do business as Findora, even though a previous entity was already legitimately doing business as Findora. Temujin Delaware's (as well as Temujin Cayman's) sole purpose was to implement the intent of Defendants Chao and Ding to manufacture a fictitious ownership structure that cut out Abittan's equity and involvement in Findora.

### 3. Temujin Delaware engaged in a "pattern" of "racketeering activity"

"In order to establish a pattern of racketeering activity, a plaintiff must allege at least two related predicate acts occurring within a ten-year time period that amount to or pose a threat of continued criminal activity." *Sihler*, 2021 WL 1293839 at *8–9. Mail and wire fraud constitute racketeering activity and contain three elements: "(A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Id.* "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element, even if the mailing itself contain[s] no false information." *Id.* "The intent to defraud may be inferred from a defendant's statements and conduct." *Id.*

Furthermore, "a defendant may be held liable for mail or wire fraud if (1) the defendant was a knowing participant in a scheme to defraud; (2) the defendant had the intent to defraud; and (3) a

co-schemer committed acts of mail or wire fraud during the defendant's participation in the scheme, and those acts were within the scope of the scheme." *LD*, 2021 WL 930624 at *6. "So long as these requirements are met, a defendant need not make any fraudulent representations itself in order to be liable for the mail fraud or wire fraud committed by its co-schemer." *Id.*

As stated above, Temujin Delaware was a knowing participant, with intent, in the scheme to defraud Abittan. Temujin Delaware's co-schemers—Defendants Chao and Ding—"communicated materially false statements and deceitfully omitted material facts to [Abittan] and others via the use of wires." *See* ¶ 176; *see also* ¶¶ 31, 39, 41, 45, 55, 65–69, 71, 75–78, 80, 83, 86, 104–108, 119, 122–133. On repeated occasions, for example, they fraudulently caused Abittan and investors to wire money (¶¶ 45, 71) and repeatedly lied to Abittan in connection with business transactions (¶¶65-69). Ultimately, they created Defendants Temujin Delaware and Temujin Cayman as co-schemers to appropriate Findora's operations and value from Eian and Abittan. ¶¶ 95, 98-102. Thus, Temujin Delaware was an intentional co-schemer that is liable for the pattern of mail and wire fraud by Defendants Chao and Ding. ¶¶ 176-178.

Notwithstanding those well-pleaded allegations, Defendant raises <u>two</u> inapposite arguments. <u>First,</u> they aver that "Temujin Delaware did not exist until after the alleged wrongdoing." Mot. at 16. But that contention ignores the allegations that Defendants Chao and Ding created Temujin Delaware as a co-schemer in order to misappropriate Eian's—and, in turn, Abittan's—assets. ¶¶ 97-102, 117, 120, 171, 175. Defendants also ignore that Temujin Delaware is liable for RICO even if it did not engage in the alleged predicate acts. *See In re Juul Labs, Inc., Mktg., Sales Practices, & Products Liab. Litig.*, 19-MD-02913-WHO, 2021 WL 1391540, at *9 (N.D. Cal. Apr. 13, 2021) ("Plaintiffs are not required to show that each RICO defendant including Bowen personally committed at least two acts of mail or wire fraud to establish a pattern of racketeering.")

Second, Defendant contends that there are not particularized allegations of racketeering activity. Mot. at 16. However, the Complaint includes detailed allegations of multiple predicate acts. ¶¶ 30, 31, 32, 44, 45, 71, 78, 79, 80, 82, 92, 95. Consequently, Defendant's challenges fail.

**4.    Temujin Delaware participated in a RICO conspiracy**

"To establish a RICO conspiracy, Plaintiffs must allege either (1) an agreement that is a substantive violation of RICO, or (2) that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Tan*, 2021 WL 1293862 at *22. These claims largely rise and fall with § 1962(c) claims. *See id.* (rejecting "[Defendants]' arguments for dismissal of Plaintiff's RICO conspiracy claim" that "are the same as their arguments for dismissal of Plaintiff's § 1962(c) claim"); *In re Juul Labs, Inc., Mktg., Sales Practices, & Products Liab. Litig.*, 2021 WL 1391540 at *12 (same).

In addition to parroting their arguments as to primary RICO liability, Defendant contests the inference that Temujin Delaware was aware of a racketeering enterprise. Mot. at 16-17. However, the allegations show that Temujin Delaware functioned as an integral component of the enterprise run by Defendants Chao and Ding. ¶¶ 97-102, 117, 120, 171, 175.

*        *        *

In sum, Abittan's well-pleaded allegations, when taken as true, demonstrate that he was damaged by Defendants' RICO violations. Defendants Chao, Ding, Temujin Delaware, and Temujin Cayman acted as an association-in-fact enterprise that engaged in a pattern of predicate acts damaging Abittan. The enterprise lured Abittan to commit money and effort building Findora, and once Abittan had created significant value, the enterprise misappropriated Findora, its intellectual property, and Abittan's equity. Unlike the companies in the RICO cases cited by Defendant, moreover, Temujin Cayman and Temujin Delaware were not legitimate ongoing

businesses with known commercial relationships. They are shells, serving no operational purpose other than to take Findora from Eian and Abittan. Those facts establish Abittan's RICO claims.

**D.** **Plaintiff Has Adequately Alleged the Derivative Aiding and Abetting Claim (Count II)**

Defendant contends that Plaintiff fails to plead each element of aiding and abetting a breach of fiduciary duty. Mot. at 17-18. This argument fails.

To plead aiding and abetting breaches of fiduciary duty, "the Complaint must allege facts addressing four elements: (i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by a non-fiduciary defendant, and (iv) damages proximately caused by the breach." *In re Columbia Pipeline Group, Inc*., 2018-0484-JTL, 2021 WL 772562, at *53 (Del. Ch. 2021). "For purposes of a motion to dismiss under Rule 12(b)(6), a complaint need only plead facts supporting a reasonable inference of knowledge." *Id.*

The Complaint satisfies each element. Defendant Chao was a director and, therefore, fiduciary of Eian. ¶¶143-144, 150. She breached her fiduciary duty by, *inter alia*, effectively looting Eian's corporate assets. ¶¶145, 151-152. The Temujin entities were formed to receive those assets, without paying adequate consideration, and to continue operating as Findora. ¶¶ 95-102, 151-152. Accordingly, the Temujin entities, through their officers, knowingly participated in that breach. *See id*. As a result, Eian and its shareholders (Abittan) lost their valuable interests in the front facing Findora operation. ¶¶ 146, 153. Those allegations, if true, establish a plausible claim.

**E.** **Plaintiff Has Adequately Alleged the Derivative Fraudulent Inducement Claim (Count III)**

Defendant asserts that the fraudulent inducement claim should be dismissed for three reasons. First, Temujin Delaware contends that it did not make any false representations. Mot. at 18. Second, Temujin Delaware contends that it was not a party to the asset sale and, therefore, lacked the requisite knowledge. Mot. at 18. Third, Temujin Delaware argues that there was no justifiable reliance. Mot. at 18-19. For the following reasons, those arguments are unpersuasive.

"[T]o state a claim for fraudulent inducement under Delaware law, . . . [the] elements are (1) the [defendant] falsely represented or omitted facts that the [defendant] had a duty to disclose; (2) the [defendant] knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the [defendant] intended to induce the [plaintiff] to act or refrain from acting; (4) the [plaintiff] acted in justifiable reliance on the representation; and (5) the [plaintiff] was injured by its reliance." *Lieberman v. BeyondTrust Corp.*, 1:19-cv-01730-RGA, 2020 WL 1815547, at *2 (D. Del. 2020). Critically, "[b]ecause of its lack of a body and mind, a corporation only can act through human agents." *In re Dole Food Co., Inc. Stockholder Litigation*, 110 A.3d 1257, 1261 (Del. Ch. 2015).

Plaintiff satisfies the elements challenged by Temujin Delaware. He alleges that Temujin Delaware—via Defendants Ding and Chao as agents—"made repeated false and fraudulent misrepresentations and omissions to Plaintiff regarding the contents and legal effect of the paperwork they insisted he sign on behalf of Eian to effectuate the intellectual property sale from Eian to Temujin, including that this was a corporate re-organization that would protect Eian shareholders' rights, not one that would divest them of all of their equity in valuable intellectual property without adequate consideration." ¶ 155. He further alleges that Defendants knowingly made those statements to induce Plaintiff to unwittingly divest Eian of "millions of dollars in valuable intellectual property for the paltry amount of $300,000." ¶¶ 156-157. Additionally, Plaintiff alleges that he justifiably relied on those statements by fellow board member Chao. ¶ 158.

In sum, the allegations show that Temujin Delaware, acting through its agents, knowingly defrauded Plaintiff and Eian. Despite its arguments, Temujin Delaware cannot extricate itself from the knowledge, statements, and actions of its agents Chao and Ding, who used the entity as a tool to defraud Eian and Abittan. Thus, dismissal is unwarranted.

**F.**   **Plaintiff Has Adequately Alleged the Fraud Claim (Count VIII)**

Challenging the fraud claim, Temujin Delaware raises <u>four</u> flawed arguments. Mot. at 20-21. None warrants dismissal of Plaintiff's well-pleaded claim.

<u>First</u>, Temujin Delaware argues that the allegations do not show that Defendants Ding or Chao could speak for Temujin Delaware when they made false representations. Mot. at 20-21. But Temujin Delaware ignores the allegations, as well as the reasonable inferences to which Plaintiff is entitled.

"[F]raud against corporation must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written." *Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 5:12-CV-04382-EJD, 2015 WL 183913, at *5 (N.D. Cal. Jan. 14, 2015). Plaintiff satisfies that standard.

As alleged, Defendants Ding and Chao, on behalf of the Temujin Entities, knowingly and falsely represented to Abittan that, *inter alia*, "the transfer of Eian's assets to Temujin would not affect Plaintiff's or other investors' ownership rights in Findora in any way." ¶¶ 189-191. When speaking, moreover, Ding and Chao were in control and agents of the Temujin entities. Indeed, they orchestrated the sham deal giving the Temujin entities control of Findora's name, assets, and employees. ¶¶95-96. After defrauding Abittan into that sham deal, they controlled Findora's website (¶99), cut off Abittan's email (¶ 100), and finalized the Temujin entities' purchase of intellectual property (¶¶101-102). Those facts conclusively demonstrate—and, if not, give rise to a reasonable inference—that these Defendants acted for Temujin Delaware while speaking to and defrauding Plaintiff.

<u>Second</u>, Defendant raises the inapposite argument that it did not exist prior to July 2, 2019. Mot. at 21. If, as a matter of fact, Defendant proves that it had no existence prior to a date certain,

then its liability could be limited. But the prospect of limiting the scope of Plaintiff's fraud claim on the merits is not a basis for dismissal of that well-pleaded claim at the pleading stage.

Third, Defendant makes the misplaced assertion that certain fraudulent statements harmed non-party investors rather than Abittan. Defendant is free to contend at summary judgment and trial that Abittan's damages arising from fraud are limited. But that factual dispute is irrelevant to whether the allegations show that Abittan incurred some damage from fraud by the Defendants.

Finally, Defendant claims that, as a matter of law, Plaintiff signed a contract that forecloses his claimed recovery for fraud. This argument is specious. Plaintiff recalls (and alleges) that, based on misrepresentations and without an opportunity to review, he was coerced into signing documents. ¶¶ 92, 95. There was no actual notice of the contents. *See id.* There was no meeting of the minds. *See id.* He has not received copies of those documents. ¶¶ 94, 102. He incurred damages when those fraudulent documents were used as the pretext to oust him from Findora. ¶¶ 96-102. Those alleged facts establish a viable claim of fraud.

## G.      **Plaintiff Has Adequately Alleged the Conversion Claim (Count X)**

Defendant asserts that it has no connection to the allegations underlying the conversion claim. Mot. at 22. However, Plaintiff alleges that Defendants, including Temujin Delaware, have substantially interfered with his property, including interests in luxury watches and investments. ¶¶ 201-206. The full extent of Temujin Delaware's involvement in wrongfully taking possession of particular components of Plaintiff's property and the damages arising from that conduct are premature factual matters. *See Erhart v. BofI Holding, Inc.*, 15-CV-02287-BAS-NLS, 2020 WL 1550207, at *42 (S.D. Cal. Mar. 31, 2020) ("Because there are disputed issues of fact concerning [the] conversion claim, the Court denies [the] request to dispose of this claim in its entirety."). Thus, dismissal is inappropriate.

**H.** **Plaintiff Has Adequately Alleged the Unjust Enrichment Claims (Counts IV, XI )**

Temujin Delaware raises <u>two</u> inconsistent arguments for dismissal of the unjust enrichment claims under Delaware and California law. <u>First</u>, Defendant submits that there was a contract selling Eian's assets for sufficient consideration and providing an adequate remedy at law. Mot. at 22-23. But Plaintiff alleges that any such contract—even if properly in the record—was fraudulently induced and is subject to rescission. *See* ¶ 160. Additionally, the authenticity and validity of Defendants' purported contracts are in dispute and cannot be used to negate factual allegations. *See, e.g.*, *Charleston Rancho, LLC v. Stanley Convergent Sec. Sols., Inc.*, 218CV02205APGVCF, 2019 WL 3754581, at *2 (D. Nev. Aug. 8, 2019) ("I decline to consider this document because Charleston Rancho disputes that the 2004 contract attached to the motion is the one that governed the relationship between it and Stanley at the time of the events at issue.").

Even if there is a valid contract, moreover, Plaintiff is still free to plead unjust enrichment. *See, e.g.*, *Shuman v. SquareTrade Inc.*, 20-CV-02725-JCS, 2020 WL 7458001, at *7 (N.D. Cal. Dec. 18, 2020) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative. Because there are disputes about the existence and scope of the express contract upon which [plaintiff]'s breach of contract claim is based, the Court declines to dismiss [plaintiff]'s unjust enrichment claim at the pleading stage of the case.").

<u>Second</u>, Defendant (inconsistently) states that it was not party to the contract and, therefore, reaped no benefit. This narrative has no bearing on the plausible allegations that "Defendants have been unjustly enriched at the expense of" Plaintiff and Nominal Defendant in the form of "unjustified payments and transfers of" Eian's and Plaintiff's "assets and property." ¶¶ 163, 208. Simply put, Plaintiff alleges that Temujin Delaware unjustly received Plaintiff's assets, irrespective

of the existence of non-existence of contractual relationships between any parties or related parties. *See* ¶¶ 163-165, 208-210. Thus, dismissal is unwarranted.

## I.     Plaintiff Has Adequately Alleged the Accounting Claims (Counts V, XIII)

Defendant asserts that accounting is a derivative remedy that depends on establishing primary liability. Mot. at 23. Even if true, Plaintiff has pleaded multiple valid claims giving rise to the accounting remedy.

Citing Delaware law, Defendant further contends that an accounting claim requires a fiduciary relationship. Mot. at 23-24. However, Defendant has not established a basis for applying Delaware law to this claim.

Under California law, "[a]n action for an accounting has two elements: (1) that a relationship exists between the plaintiff and defendant that requires an accounting and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting." *Scripps Health v. Nthrive Revenue Systems, LLC*, 19-CV-00760-H-DEB, 2021 WL 1978477, at *10 (S.D. Cal. May 18, 2021). "The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender." *Id.* "An action for an accounting has been characterized as 'a means of discovery," meaning "the defendant in an accounting action possesses information unknown to the plaintiff that is relevant for the computation of money owed." *Id.*

Pursuant to those principles, Plaintiff is entitled to an accounting from Temujin Delaware. The fraudulent, racketeering, and otherwise tortious conduct by Defendants, including by Temujin Delaware, has wrongfully deprived Abittan of property and caused damages. ¶¶ 216-218. Consequently, Abittan is entitled to an accounting to determine what each Defendant owes. ¶ 218. Temujin Delaware has no basis to dismiss this claim.

# VI. CONCLUSION

For the reasons above, Plaintiff respectfully requests that the Court deny the Motion. If the Court does grant the Motion, Plaintiff respectfully requests leave to amend.

Dated: May 21, 2021

Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides
Florida Bar No. 118177 (PHV)
200 S Biscayne Blvd
Suite 5500
Miami, FL 33131
Tel: (305) 971-5943
Email: ceconomides@rcfllp.com

Katherine Eskovitz (CA Bar No. 255105)
Brianna Pierce (*CA Bar No. Pending*)
1158 26th Street, Suite 175
Santa Monica, CA 90403
Tel: (646) 791-6883
Email: keskovitz@rcfllp.com
       bpierce@rcfllp.com

*Counsel for Plaintiff,*
*Ariel Abittan*