Craig A. Hansen (SBN 209622)
  Email: craig@hansenlawfirm.net
Stephen C. Holmes (SBN 200727)
  Email: steve@hansenlawfirm.net
Philip E. Yeager (SBN 265939)
  Email: phil@hansenlawfirm.net
Collin D. Greene (SBN 326548)
  Email: collin@hansenlawfirm.net
HANSEN LAW FIRM, P.C.
75 E. Santa Clara Street, Suite 1250
San Jose, CA 95113-1837
Telephone: (408) 715 7980
Facsimile: (408) 715 7001

Attorneys for Defendant
Temujin Labs Inc., a Cayman corporation
By Special Appearance

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| ARIEL ABITTAN<br><br>PLAINTIFF,<br><br>v.<br><br>LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), DAMIEN DING (A/K/A DAMIEN LEUNG, A/K/A TAO DING), TEMUJIN LABS INC. (A DELAWARE CORPORATION), AND TEMUJIN LABS INC. (A CAYMAN CORPORATION),<br><br>DEFENDANTS,<br><br>and<br><br>EIAN LABS INC.,<br><br>NOMINAL DEFENDANT. | Case No.:  5:20-CV-09340-NC<br><br>**DEFENDANT TEMUJIN LABS INC., A CAYMAN CORPORATON'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Date:      December 15, 2021<br>Time:     1:00 PM<br>Place:    Courtroom 5, 4th Floor<br>Judge:    Hon. Nathanael Cousins |

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................. 1

II.  ARGUMENT ...................................................................... 2

    A.   Temujin Cayman's Motion to Dismiss is Timely and Ripe ....................... 2

    B.   The Purported "Derivative" Claims Fail ..................................... 4

        1.   Plaintiff Concedes He Did Not Follow Rule 23.1 on Verification .......... 4

        2.   Plaintiff's Admission That He is Not a Shareholder of Eian Confirms He Has No Standing to Bring Derivative Claims ................... 5

    C.   Plaintiff's Impermissible Group Pleading Mandates Dismissal ................. 6

    D.   Plaintiff's RICO Claims Fail ............................................... 7

        1.   Plaintiff Has Not Alleged RICO Claims with Particularity .............. 7

            (a)   Plaintiff Fails to Allege Any "Conduct" by Temujin Cayman ........... 7

            (b)   Plaintiff Fails to Allege the Existence of a RICO "Enterprise" ........... 8

            (c)   Plaintiff Fails to Allege a "Pattern" of "Racketeering Activity" ......... 9

        2.   The RICO Conspiracy Claim Likewise Fails ............................ 10

    E.   Plaintiff's State Law Claims Fail ......................................... 10

        1.   Plaintiff Has Not Alleged that Temujin Cayman Knowingly Aided and Abetted a Breach of Fiduciary Duty .................................... 10

        2.   Plaintiff Has Failed to Allege that Temujin Cayman Fraudulently Induced Anyone .................................................................. 11

        3.   Plaintiff Has Not Adequately Pleaded Fraud ............................ 11

        4.   The Conversion Claim Fails ............................................ 13

        5.   Plaintiff Cannot Recover on Grounds of Unjust Enrichment ............. 13

        6.   Plaintiff Is Not Entitled to an Accounting ............................. 14

III. CONCLUSION ................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aetna Life Ins. Co. v. Alla Medical Services, Inc.*,
  855 F.2d 1470 (9th Cir. 1988) ................................................................. 2, 4

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006)...................................................................................... 3

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ....................................................................... 10

*Bus. Funding Grp., Inc. v. Architectural Renovators, Inc.*,
  1993 WL 104611 (Del. Ch. Mar. 31, 1993).............................................. 15

*Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001) ...................................................................... 14

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017)....................................................... 9

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ....................................................................... 6

*Eclectic Props. E. LLC v. The Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................... 8

*Eclectic Props. E., LLC v. The Marcus & Millichap Co.*,
  2012 WL 713289 (N.D. Cal. Mar. 5, 2012), aff'd, 751 F.3d 990 (9th Cir. 2014)........................... 7

*Elvig v. Calvin Presbyterian Church*,
  375 F.3d 951 (9th Cir. 2004) ....................................................................... 3

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)...................................................................................... 9

*Hexion Specialty Chems., Inc. v. Huntsman Corp.*,
  965 A.2d 715 (Del. Ch. 2008)................................................................... 11

*In re Accuray, Inc. S'Holder Deriv. Litig.*,
  757 F. Supp. 2d 919 (2010) ......................................................................... 6

*In re Extreme Networks Inc. S'holder Deriv. Litig.*,
  573 F. Supp. 2d 1228 (N.D. Cal. 2008) ...................................................... 5

*In re Verisign Inc. Der. Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. Sept. 14, 2007) ............................. 5, 6, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)............................................ 10

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  2013 WL 12130034 (C.D. Cal. July 19, 2013) ........................................... 7

*Jensen v. Knowles*,
  621 F.Supp.2d 921 (E.D. Cal. 2008).......................................................... 3

*Jolley v. Chase Home Fin., LLC*,
  213 Cal. App. 4th 872 (2013) .................................................................... 15

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)........................................................................................ 5

*Keirsey v. eBay, Inc.*,
  2012 WL 12920765 (N.D. Cal. Aug. 6, 2012) ................................................... 14

*Ketayi v. Health Enrollment Grp.*,
  2021 WL 347687 (S.D. Cal. Feb. 2, 2021) ......................................................... 8

*Kopchuk v. Countrywide Fin. Corp.*,
  2010 U.S. Dist. LEXIS 23884 (E.D. Cal. Mar. 15, 2010) ................................. 12

*Kuroda v. SPJS Holdings, LLC*,
  971 A.2d 872 (Del. Ch. 2009) .......................................................................... 14

*Larson v. Johnson*,
  2007 WL 3390883 (D. Ariz., Nov. 13, 2007) ................................................. 3, 4

*LD v. United Behav. Health*,
  2021 WL 930624 (N.D. Cal. Mar. 11, 2021) .................................................... 10

*Lopes v. Vieria*,
  2011 WL 1883157 (E.D. Cal. May 17, 2011) ..................................................... 4

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) ............................................................................... 11

*Metaxas v. Lee*,
  2020 WL 7025095 (N.D. Cal. Nov. 30, 2020) .................................................... 9

*Miele v. Franklin Res., Inc.*,
  2015 WL 4934071 (N.D. Cal. Aug. 18, 2015) .................................................. 14

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*,
  6 Cal. App. 4th 603 (1992) ............................................................................... 12

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ................................................................................ 10

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) .............................................................................. 8

*Paracor Fin., Inc. v. GE Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................ 14

*Patrick v. Alacer Corp.*,
  167 Cal. App. 4th 995 (2008) ............................................................................. 5

*Patrick v. Rivera-Lopez*,
  708 F.3d 15 (1st Cir. 2013) ................................................................................. 3

*Pearce v. Superior Court*,
  149 Cal. App. 3d 1058 (1983) ............................................................................ 6

*Philpot v. Kos Media LLC*,
  2018 WL 10399910 (N.D. Cal., Dec. 6, 2018) ................................................... 2

*Rosenthal v. Burry Biscuit Corp.*,
  30 Del. Ch. 299 (1948) ....................................................................................... 6

*Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*,
  2020 WL 4342260 (C.D. Cal. May 22, 2020) .......................................... 8, 9, 10

*State Farm Mut. Auto Ins. Co. v. Superior Court*,
  114 Cal. App. 4th 434 (2003) ........................................................................... 14

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................... 6, 12

*Tan v. Quick Box, LLC*,
   2021 WL 1293862 (S.D. Cal. Apr. 7, 2021) ................................................................. 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................... 10

*Vichi v. Koninklijke Philips Elecs., N.V.*,
   85 A.3d 725 (Del. Ch. 2014) ...................................................................................... 11

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012) ..................................................................................... 3

*Xenium, S.A. de C.V. v. Carlson Hotels Worldwide, Inc.*,
   2005 WL 8173126 (S.D. Cal., Aug. 1, 2005) .............................................................. 2

**Statutes**

Cal. Civ. Proc. Code § 367 ............................................................................................. 12

**Rules**

Fed. R. Civ. P. Rule 12(b) ................................................................................................. 3

Fed. R. Civ. P. Rule 12(b)(1) .................................................................................... 2, 3, 4

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................... 2, 3, 4

Fed. R. Civ. P. Rule 12(c) ................................................................................................. 3

Fed. R. Civ. P. Rule 12(h)(3) ........................................................................................... 3

Fed. R. Civ. P. Rule 23.1 ...................................................................................... 1, 4, 5, 6

Fed. R. Civ. P. Rule 9(b) .............................................................................................. 7, 10

**Treatises**

Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. &
   9th Cir. Editions (2021), § 9:55 ................................................................................... 2

Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. &
   9th Cir. Editions (2021), § 9:62 ................................................................................... 3

Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. &
   9th Cir. Editions (2021), § 9:63 ................................................................................... 3

Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. &
   9th Cir. Editions (2021), §§ 9:110.2, 9:199 ................................................................. 2

1    Defendant Temujin Labs Inc., a Cayman corporation ("Temujin Cayman") respectfully submits

2    this Reply Memorandum of Points and Authorities in Support of its Motion to Dismiss ("Mot.").

3    **I.    INTRODUCTION**

4        Temujin Cayman's Motion to Dismiss identified myriad defects in Plaintiff's pleading of his

5    claims. Plaintiff Ariel Abittan's Opposition (which incorporates his previously-filed *Plaintiff's*

6    *Opposition to Defendant's Motion to Dismiss* [ECF No. 49] as Ex. A) ("Opp.") does not

7    convincingly address any of them. He fails to demonstrate that he has standing to bring his

8    derivative claims, and indeed, makes multiple concessions that confirm the opposite. Plaintiff admits

9    he ignored Rule 23.1's verification requirement for derivative actions (and multiple cases in this

10   district dismissing complaints on that basis), relying instead on inapposite authority that bears no

11   resemblance to the facts at issue here. Equally fatal is Plaintiff's concession that he is not a direct

12   shareholder of Eian Labs, establishing beyond dispute that he lacks standing to bring his derivative

13   claims. Plaintiff's attempt to invent a new basis for derivative standing – *i.e.*, that he is a

14   "shareholder of a shareholder" – is based on a fundamental misreading of case law and must be

15   rejected.

16       The Opposition fares no better as to the individual causes of action. In each instance, Plaintiff

17   engages in impermissible "group pleading" that conflates Temujin Cayman with the other

18   defendants in this case, which courts have repeatedly rejected as insufficient to satisfy the stringent

19   requirements for pleading claims sounding in fraud. Such nebulous pleading not only justifies

20   dismissal in and of itself, but also independently impairs each cause of action. The RICO claims fail,

21   for example, in the absence of any particularized facts demonstrating how Temujin Cayman

22   *specifically* was involved in any conduct, enterprise, or pattern of racketeering activity. The aiding

23   and abetting breach of fiduciary duty claim is similarly defective, given Plaintiff's failure to plead

24   specific facts showing actual knowledge of unlawfulness on the part of Temujin Cayman, much less

25   that any defendant owed a fiduciary duty to Eian Labs. Instead, Plaintiff impermissibly premises that

26   conclusory assertion on mere "information and belief." Plaintiff's fraud claims are even more

27   farfetched. Not only is Plaintiff unable to plead facts linking *Temujin Cayman* to any specific

28   misstatement, or point to any facts that were concealed from him, he advances the astonishing claim

1   that Temujin Cayman is liable for misstatements made ***before it even existed***.

2          Plaintiff's remaining claims – for conversion, unjust enrichment, and "accounting" – are

3   essentially afterthoughts. Each must be dismissed here, where Plaintiff fails to plead a predicate

4   violation and fails to satisfy multiple other elements of each cause of action.

5          Plaintiff's Complaint should be dismissed.

6   **II.     ARGUMENT**

7   **A.     Temujin Cayman's Motion to Dismiss is Timely and Ripe**

8          Abittan's assertion that Temujin Cayman's Motion to Dismiss is untimely misses the mark

9   entirely because the defenses that Temujin Cayman raises by its Motion under Rule 12(b)(1) and (6)

10  are "nonwaivable," (Phillips & Stevenson, Rutter Group Practice Guide: Federal Civil Procedure

11  Before Trial, Calif. & 9th Cir. Editions (2021) ("Phillips & Stevenson"), §§ 9:110.2, 9:199), and

12  regardless of any timeliness arguments, the Motion, in its entirety, should be considered now to

13  conserve judicial resources.

14         The *only* argument as to timeliness that Abittan makes is that "[a] failure to file a timely

15  answer does not extend a defendant's time to file a pre-answer motion under Rule 12." (see Opp. at

16  p. 3:25-26, citing *Xenium, S.A. de C.V. v. Carlson Hotels Worldwide, Inc.*, 2005 WL 8173126 (S.D.

17  Cal., Aug. 1, 2005), which is not binding on this Court.)

18         However, as set out in Phillips & Stevenson, § 9:55:  "In the Ninth Circuit, … Rule 12(b)

19  motions are timely if filed any time before the answer or other responsive pleading is filed," citing

20  *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988) (holding

21  "This circuit allows a motion under Rule 12(b) any time before the responsive pleading is filed.")

22  *See also, e.g., Philpot v. Kos Media LLC,* 2018 WL 10399910 at *3 (N.D. Cal., Dec. 6, 2018) (citing

23  *Aetna* and holding that "[w]hile [plaintiff] is right that [defendant] filed its present motion [to

24  dismiss] eighteen days after the stipulated deadline to answer the complaint, under controlling law,

25  that is not grounds to deny the motion given that it was filed before any responsive pleading was

26  filed.")  Likewise, here, Temujin Cayman has not yet filed an answer so its Motion to Dismiss is

27  timely.

28

1    Moreover, a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is prolonged by

2    Rule 12(h)(3), which permits the court to dismiss for lack of subject matter jurisdiction at any time.

3    (Phillips & Stevenson, § 9:62 (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir.

4    2012)).  "Indeed, '[t]he objection that a federal court lacks subject-matter jurisdiction ... may be

5    raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and

6    the entry of judgment.'"  (*Wood*, 678 F3d at 1082 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500,

7    506 (2006)).  So Temujin Cayman's Motion under 12(b)(1) cannot be "untimely."

8    With respect to Temujin Cayman's Motion under 12(b)(6), Abittan apparently seeks to only

9    delay the inevitable – the merits of the 12(b)(6) Motion will be heard now or shortly in the future.

10   Courts generally insist that Rule 12(b) motions must be made before answering and postanswer Rule

11   12(b) motions are "untimely."  (Phillips & Stevenson, § 9:63 (citing *Elvig v. Calvin Presbyterian

12   Church,* 375 F.3d 951, 954 (9th Cir. 2004); *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013);

13   *Jensen v. Knowles*, 621 F.Supp.2d 921, 925 (E.D. Cal. 2008)).  But "[b]y the same token, these cases

14   generally provide that an untimely Rule 12(b) motion can be 'recharacterized and considered under

15   Rules 12(c) or 56' or otherwise permitted under Rule 12…" (Phillips & Stevenson, § 9:63 (citing

16   *Jensen v. Knowles, supra*, 621 F.Supp.2d at 925; *Patrick v. Rivera-Lopez, supra*, 708 F.3d at 18—

17   postanswer 12(b)(6) motion should be converted to Rule 12(c) motion for judgment on the

18   pleadings)).

19   Not only has Temujin Cayman not answered yet, even if it had, it is clear Temujin Cayman

20   would not be foreclosed from bringing a motion against Abittan for failure to state a claim.  So

21   *assuming arguendo* that Temujin Cayman's Motion under Rule 12(b)(6) was untimely, this Court

22   would still need to consider the merits of the Motion in a future motion brought on the exact same

23   grounds.  As Abittan notes, Temujin labs, Inc. (Delaware) raised the same defects when it brought its

24   own motion to dismiss, but the Court did not consider the merits on that motion because the Court

25   granted the motion on other grounds.  (*See* Order Granting Temujin labs, Inc. (Delaware)'s Motion

26   to Dismiss Without Leave to Amend, ECF No. 78).  But the Complaint remains defective and this

27   Court has discretion to hear this Motion even if it were procedurally defective.  (*See Larson v.

28   Johnson*, 2007 WL 3390883, at *3 (D. Ariz., Nov. 13, 2007)).  Indeed, a court has "discretion to

hear a successive Rule 12(b)(6) motion if it is not interposed for delay." (*Id.* (citing *Aetna*, *supra*, 855 F2d at 1475 n. 2 (9th Cir.1988)). Since Temujin Cayman's arguments under 12(b)(6) are not brought to delay the case, but rather seek to expedite it, this Court should consider the merits. As the *Larson v. Johnson* court, explained,

> This motion does not unduly delay the prosecution of the case, as Plaintiff contends, but rather expedites final disposition of the case. Were the Court to not consider the motion, Defendants would simply raise the same issue in their Answer and a Rule 12(c) motion for judgment on the pleadings. Defendant would first need to draft and file and Answer, and Plaintiff would then need to draft and file a response to the 12(c) motion. Consideration of this motion will therefore expedite final disposition of the case, as the same issue would resurface at a later date and after additional expense.

(2007 WL 3390883, at *3). Additionally, some of the same arguments may be asserted by the individual Cross-Defendants in a future Rule 12(b) motion now that those individuals have just been served. As such, there is no "delay" to the case and to conserve judicial resources, the Court should simply consider the merits of the 12(b)(6) Motion now.

Neither of the cases Abittan cites in support of his untimeliness argument address any consideration of expediting final disposition of the case or conserving judicial resources. Because the Motion under Rule 12(b)(1) is already going to be heard by the Court, it is entirely reasonable to consider the 12(b)(6) grounds at the same time.

In summary, Abittan's argument as to timeliness is incorrect and also irrelevant as to Temujin Cayman's Motion under Rule 12(b)(1). Temujin Cayman's Motion under Rule 12(b)(6) is not brought to delay the case, but actually to expedite it since the same issue would inevitably resurface. Therefore, regardless of any alleged timeliness issue, the Court should consider Temujin Cayman's arguments under Rule 12(b)(6) as well as under Rule 12(b)(1).

**B.    The Purported "Derivative" Claims Fail**

### 1.    Plaintiff Concedes He Did Not Follow Rule 23.1 on Verification

Plaintiff concedes – as he must – that his Complaint is not verified. Opp. Ex. A at 10:18 – 11:17. Plaintiff's derivative claims must therefore be dismissed under the plain terms of Rule 23.1. Plaintiff's citation to *Lopes v. Vieria* in support of his assertion that "subsequent events demonstrate that the objectives of verification have been satisfied" is entirely inapposite. 2011 WL 1883157, at

*36 (E.D. Cal. May 17, 2011). The defendant in *Lopes* did not challenge the lack of a verification at the pleading stage, waiting until the case had been litigated ***for four years*** to seek dismissal at summary judgment. *Id.* The fact pattern in *Lopes* plainly bears no resemblance to that presented here, and the Court should follow the multiple authorities cited by Defendant – ***none*** of which Plaintiff attempts to distinguish – that unambiguously hold that an unverified derivative complaint must be dismissed pursuant to Rule 23.1. *See* Mot. at 6:24 – 7:2 (citing cases); *see also In re Extreme Networks Inc. S'holder Deriv. Litig.*, 573 F.Supp.2d 1228, 1237 (N.D. Cal. 2008).

### 2.  Plaintiff's Admission That He is Not a Shareholder of Eian Confirms He Has No Standing to Bring Derivative Claims

Plaintiff's Opposition admits that Mr. Abittan is not a "direct shareholder[]" of Eian Labs. Opp. Ex. A at 12:10-17. Under controlling Delaware law and federal cases in this district interpreting that law – none of which Plaintiff distinguishes – this absence of share ownership requires the derivative claims be dismissed for lack of standing. Mot. at 7:3-19; *In re Verisign Inc. Der. Litig.*, 531 F.Supp.2d 1173, 1202 (N.D. Cal. Sept. 14, 2007).

In a desperate attempt to salvage his derivative claims, Plaintiff asserts, without citation to any authority, that California law governs whether he has derivative standing. Opp. Ex. A at 11:21 – 12:9. This averment runs directly contrary to the internal affairs doctrine, which states that Delaware law governs not only the merits of derivative claims, but also the question of whether standing requirements and other prerequisites for asserting those claims are satisfied. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991); *see Verisign*, 531 F. Supp. 2d at 1202 (applying Delaware law and dismissing derivative claims for failure to demonstrate share ownership and consequent lack of standing).

Plaintiff's invocation of California law is futile in any event. His assertion that he has derivative standing because he owns an "interest in one entity that, in turn, is the shareholder of the subject corporation" (Opp. Ex. A at 12:4-5) is based on a misreading of the Court's ruling in *Patrick v. Alacer Corp.*, 167 Cal.App.4th 995, 1011-12 (2008). In *Patrick*, the family trust that owned company shares was contractually required to convey a portion of those shares to the plaintiff after her husband had died. *Id.* at 1013 ("Through her alleged community property interest, plaintiff is

1  already entitled to some of the [company] stock held in the trust's name."). Thus, the Court's ruling

2  in *Patrick* was premised on a ***direct shareholding interest*** by plaintiff in the subject company –

3  which Plaintiff has conceded ***he does not have*** in this action. *Id.*; Opp. Ex. A at 12:10-17.

4  Consequently, Plaintiff's derivative claims must be dismissed for failure to plead a shareholding

5  interest that confers standing in accordance with Rule 23.1. *In re Accuray, Inc. S'Holder Deriv.*

6  *Litig.*, 757 F.Supp.2d 919, 926 (2010); *Verisign*, 531 F.Supp.2d at 1202.[1]

7      **C.**      **Plaintiff's Impermissible Group Pleading Mandates Dismissal**

8      Putting aside that Plaintiff has no standing to bring derivative claims, his Complaint

9  independently fails to state a claim for multiple reasons. As a threshold matter, Plaintiff fails to

10  justify his disregard of the basic pleading principle that allegations regarding Temujin Cayman,

11  Temujin Labs Inc., a Delaware corporation ("Temujin Delaware") and the individual defendants

12  cannot be conflated into a single collective, which his Complaint does repeatedly. Mot. at 9:3-11.

13  This impermissible "group pleading" defies the requirement that plaintiff "differentiate . . . and

14  inform each defendant separately of the allegations surrounding his alleged participation in the"

15  wrongdoing. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and quotations

16  omitted); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (dismissing fraud

17  complaint that grouped multiple defendants together and alleged that "everyone did everything").

18  Plaintiff sheepishly buries his discussion of group pleading in a footnote that inexplicably relies

19  upon allegations in the Complaint that make no specific mention of actions or representations by

20  Temujin Cayman at all, which only underscores the undifferentiated and defective nature of

21  Plaintiff's pleading. Opp. Ex. A at 14, n.9; see Compl. ¶¶ 95-102; 175.

---

25  [1]  Plaintiff's other authorities are readily distinguishable and do not support a departure from this
26  precedent. *See Rosenthal v. Burry Biscuit Corp.*, 30 Del. Ch. 299, 311 (1948) (addressing question of
    whether direct shareholder in corporation whose shares were "represented by street certificates
27  standing in the name of brokers" could sue derivatively); *Pearce v. Superior Court*, 149 Cal.App.3d
    1058, 1062-68 (1983) (permitting derivative suit to proceed based on California statutory
28  construction of "beneficial shareholder" where shares of corporation were held in a trust as to which
    plaintiff was the beneficiary).

1

### D.     Plaintiff's RICO Claims Fail

2

#### 1.     Plaintiff Has Not Alleged RICO Claims with Particularity

3

Plaintiff does not dispute that Rule 9(b)'s heightened pleading standard applies to his RICO

4

claims. *Eclectic Props. E., LLC v. The Marcus & Millichap Co.*, 2012 WL 713289, at *6 (N.D. Cal.

5

Mar. 5, 2012), aff'd, 751 F.3d 990 (9th Cir. 2014). Further, each element of a RICO violation must

6

be pleaded with respect to each defendant. *Id*. The Complaint falls short.

7

Stripped of conclusory assertions that parrot the statute, the Opposition (Ex. A) does no more

8

than assert that the consideration paid for Eian's assets by Temujin Cayman (which Plaintiff

9

expressly approved) was, in hindsight, too low, and that notwithstanding the language of the

10

agreement he signed, Plaintiff believed he should "own" an interest in the project. Even accepting

11

that theory at face value, it cannot support a RICO case against anyone. Temujin Cayman engaged in

12

nothing unlawful and is not alleged to have made any "false" statements whatsoever. RICO claims

13

should not be made lightly, and the Opposition, like the Complaint, fails to identify the required

14

facts needed to state a claim.

15

#### (a)     Plaintiff Fails to Allege Any "Conduct" by Temujin Cayman

16

Plaintiff indiscriminately alleges wrongdoing by "all Defendants," while failing to specify

17

what acts Temujin Cayman committed. *See, e.g.*, ¶¶ 171, 172, 175-78. The only allegation that even

18

remotely relates to Temujin Cayman is Eian's sale of assets to Temujin Cayman. But Plaintiff does

19

not allege that Temujin Cayman did any more than simply being a party to that transaction. *See In re*

20

*WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 2013 WL 12130034, at *15 (C.D. Cal. July 19,

21

2013) (must allege non-conclusory facts showing a defendant played some part in "directing the

22

enterprise's affairs," as opposed to "simply being involved"). Plaintiff also does not support an

23

inference that Temujin Cayman was acting for any reason other than its own commercial interests

24

when it acquired Eian's assets.

25

Rather than offering particularized facts, the Opposition offers overheated rhetoric, arguing

26

that "Temujin Delaware … was part of the chain of command, implemented Ding and Chao's

27

28

1   directives, and was indispensable to the mission of looting Eian"[2] and that Temujin Delaware and

2   Temujin Cayman were "sham entities" with "no legitimate business or commercial relationships."

3   Opp. Ex. A at 13:25-26, 14:1, 14:12-13.  But these are just empty conclusions, not facts. Absolutely

4   nothing pleaded in the Complaint supports them or bears them out.

5         Nor do Plaintiff's authorities support the notion that a claim is pleaded here. In *Ketayi v.*

6   *Health Enrollment Grp.*, 2021 WL 347687, at *26 (S.D. Cal. Feb. 2, 2021), the court held that

7   plaintiffs had sufficiently alleged "conduct" by defendants who were factually alleged to have

8   underwritten and marketed the health plan at issue. By contrast, the court dismissed RICO claims

9   against a co-defendant who was alleged merely to have administered the health plan; the

10  administrator's tangential involvement, like Temujin Cayman's here, was not enough. *See id.*

11        Similarly, in *Tan v. Quick Box, LLC*, 2021 WL 1293862, at *21 (S.D. Cal. Apr. 7, 2021), the

12  complaint alleged that defendants provided specific services to the alleged RICO enterprise. By

13  contrast, the Complaint here fails to do more than assert Temujin Cayman's involvement in the Eian

14  asset sale or connect it to any other purported wrongdoing (involving the sale of "watches" and other

15  activities long before Temujin Cayman even existed). The Opposition reaches for an inference of

16  corrupt intent, while the Complaint has pleaded nothing other than a routine corporate relationship.

17  *See Spotlight Ticket Mgmt., Inc. v. StubHub, Inc.*, 2020 WL 4342260, at *4 (C.D. Cal. May 22,

18  2020) (must "show more than a business deal gone bad for economic and non-fraudulent reasons")

19  (quoting *Eclectic Props.*, 751 F.3d at 997).

20              **(b)        Plaintiff Fails to Allege the Existence of a RICO "Enterprise"**

21        Additionally, to plead the existence of an "association-in-fact" enterprise, Plaintiff must set

22  forth particularized facts demonstrating (1) a common purpose, (2) an ongoing organization, either

23  formal or informal, and (3) that the various associates function as a continuing unit. *Odom v.*

24  *Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007). Plaintiff argues that the Complaint adequately

25  alleges the existence of such an enterprise, but all he cites in that regard are generic fraud allegations

26  which, without specificity, do nothing to implicate Temujin Cayman in a common purpose, ongoing

27

28  [2]  Abittan does not even attempt to modify his prior Opposition to Temujin Delaware's Motion to
    Dismiss to reflect that the present Motion is brought by Temujin Cayman.

organization, or continuing unit. *See e.g.*, ¶¶ 30, 31, 32, 44, 45, 71, 78, 79, 80, 82. Plaintiff attempts to fall back on naked conclusions, speculating that Temujin Cayman's "sole purpose was to implement the intent of Defendants Chao and Ding to manufacture a fictitious ownership structure that cut out Abittan's equity and involvement in Findora." Opp. Ex. A at 15:11-13. Plaintiff cites nothing to support such conjecture; even if such conclusions were factual (and they are not), they would not salvage the Complaint because they appear nowhere in it. *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F.Supp.3d 1132, 1175 (E.D. Cal. 2017) (no common purpose absent "specific facts [of] . . . an objective unrelated to ordinary business or government aims").

### (c)      Plaintiff Fails to Allege a "Pattern" of "Racketeering Activity"

Plaintiff's assertion that he has adequately pleaded a "pattern" of "racketeering activity" likewise cannot withstand scrutiny. See Opp. Ex. A at 15:14 – 16:16. Aside from criticizing the entity's existence, the Complaint does not even attempt to allege a predicate act committed by Temujin Cayman, much less a pattern of acts. Thus, in opposition, all Plaintiff can do is lump Temujin Cayman with other defendants, without specifying what predicate acts Temujin Cayman supposedly committed. *See id*. That does not suffice. *Spotlight Ticket Mgmt.*, 2020 WL 4342260, at *4 (conclusory averments of fraud inadequate).

Equally inadequate is Plaintiff's failure to explain how any supposed acts are "related" or "continuous," as he must. *See Metaxas v. Lee*, 2020 WL 7025095, at *12 (N.D. Cal. Nov. 30, 2020) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)) (to be related, predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events"; to be continuous, the predicate acts must pose a threat of continuing activity). This too justifies dismissal.

In a last-ditch attempt to salvage his claim, Plaintiff now purports to rely on a "co-schemer" theory of liability for mail or wire fraud. Opp. Ex. A at 16:17-26. But under a co-schemer theory, he would have had to plead that (1) Temujin Cayman was a "knowing participant in a scheme to defraud"; (2) Temujin Cayman had the "intent to defraud"; and (3) Temujin Cayman's co-schemer(s) (i.e., the individual defendants or Temujin Delaware) committed acts of fraud during

1   Temujin Cayman's participation in the supposed scheme and that those acts were within the scope of

2   the scheme. *LD v. United Behav. Health*, 2021 WL 930624, at *6 (N.D. Cal. Mar. 11, 2021); *see*

3   *also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL

4   4890594, at *12 (N.D. Cal. Oct. 30, 2017). Plaintiff has not pleaded facts supporting any of these

5   elements as to Temujin Cayman (which did not even exist at the time of many of the alleged

6   "wrongful" acts about which Plaintiff complains).

7         **2.        The RICO Conspiracy Claim Likewise Fails**

8         Plaintiff concedes that his RICO conspiracy claims "rise and fall" with his primary RICO

9   claims. Opp. Ex. A at 17:7-8. Because he has failed to state a claim under RICO, he has likewise

10  failed to state a RICO conspiracy claim. *Spotlight Ticket Mgmt.*, 2020 WL 4342260, at *6.

11  Additionally, the Complaint does not contain particularized facts supporting an inference that

12  Temujin Cayman was aware of the alleged racketeering enterprise, a necessary element of

13  conspiracy. *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993) ("[C]onspiracy to violate RICO

14  requires a showing that defendant 'was aware of . . . the enterprise and intended to participate in

15  it.'") (citation omitted).

16        **E.        Plaintiff's State Law Claims Fail**

17              **1.        Plaintiff Has Not Alleged that Temujin Cayman Knowingly Aided and**
18              **Abetted a Breach of Fiduciary Duty**

19        Plaintiff's discussion of his aiding and abetting breach of fiduciary duty claim does little

20  more than repeat the elements of the claim and assert in conclusory fashion that Plaintiff satisfies

21  them. Opp. Ex. A at 18:4-20. This does not remotely satisfy Plaintiff's Rule 9(b) burden of pleading

22  this claim – which sounds in fraud – with required particularity. *Vess v. Ciba-Geigy Corp. USA*, 317

23  F.3d 1097, 1103-04 (9th Cir. 2003). With regard to the existence of a fiduciary relationship,

24  Plaintiff's argument hinges entirely upon an assertion pleaded "on information and belief" that

25  defendant Chao was a director of Eian, without a single particularized fact stated in support. Opp.

26  Ex. A at 18:14-15; ¶ 140. This is defective pleading, which by itself warrants dismissal of this claim.

27  *See Neubronner v. Milken*, 6 F.3d 666, 672-73 (9th Cir. 1993) (affirming dismissal of fraud and

28  misrepresentation claims where plaintiff provided no factual basis for allegations made on

information and belief).

Furthermore, even if a duty was owed and breached, Plaintiff has failed to satisfy the stringent requirement to present facts showing Temujin Cayman "act[ed] with the knowledge that the conduct advocated or assisted constitute[d] such a breach." *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001). Plaintiff can point to nothing in the Complaint other than allegations regarding Chao's activities and rote assertions that Temujin Cayman knew of them, without any particularized facts showing why such knowledge can properly be imputed. Opp. Ex. A at 18:14-17 (citing ¶¶ 95-102 (describing Chao's alleged activities), ¶¶ 151-52 ("[d]espite such knowledge . . . conspiring")). That falls short of the high bar for pleading actual knowledge, and this claim should therefore be dismissed. *Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 747 n.88 (Del. Ch. 2008) (aiding and abetting liability requires an unusual level of knowledge – an actual belief that actions constituted a fiduciary breach).

### 2. Plaintiff Has Failed to Allege that Temujin Cayman Fraudulently Induced Anyone

Plaintiff likewise fails to satisfy his burden to plead his fraudulent inducement claim with particularity. His attempt to impute allegedly misleading statements made by the individual defendants to Temujin Cayman by claiming they were "agents" of the Company is not supported by a single specific fact substantiating that claim. *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 798-99 (Del. Ch. 2014) (statements made by individuals cannot be imputed to a company absent facts showing actual or apparent authority to speak on its behalf).

Separately, as an additional reason to dismiss this claim, there can be no justifiable reliance supporting fraudulent inducement where the plain language of a transaction document contradicted the supposedly false oral statements. Mot. at 15:21 – 16:14. Plaintiff's Opposition makes no effort to address these arguments, thus effectively conceding them. *See* Opp. Ex. A at 19:11-26.

### 3. Plaintiff Has Not Adequately Pleaded Fraud

Similarly unpersuasive is Plaintiff's argument regarding his direct claim for common law fraud. First, as is the case with his other claims, the Complaint contains no facts linking any misrepresentation or omission to Temujin Cayman. Mot. at 16:21 – 17:8. Plaintiff merely assumes

that the individual defendants were acting "on behalf of the Temujin Entities" (Opp. Ex. A at 20:14-16), while citing to a paragraph in the Complaint that says the individuals were doing so "in certain instances" (¶ 189) and a handful of other paragraphs which talk about the individual defendants' supposed scheme (¶¶ 95-96, 99-102, 190-91). Those conclusory assertions do not come remotely close to meeting the exacting standard for pleading fraud, which demands detailed factual allegations linking specific misrepresentations to a specific defendant, here, Temujin Cayman. *See Kopchuk v. Countrywide Fin. Corp.*, 2010 U.S. Dist. LEXIS 23884, at *20 (E.D. Cal. Mar. 15, 2010) (Plaintiff "failed to allege who actually made the supposedly false representations or their ability to speak for the corporation").

Second, Plaintiff takes the baffling position that the judicially noticeable fact that Temujin Cayman did not exist before July 2, 2019, a date after all or virtually all of the alleged fraud, is an "inapposite argument." Opp. Ex. A at 20:26. Plaintiff's assertion that this only limits the scope of the claim but does not serve as a basis for dismissal stands Plaintiff's pleading burden on its head. *Id.* at 20:27 – 21:2. The onus is on Plaintiff to plead particularized facts showing how Temujin Cayman committed fraud, which is a literal impossibility for an entity that did not exist at the time of the alleged misstatements. Such a temporal disconnect provides more than sufficient reason to dismiss on the pleadings. *See, e.g., Swartz*, 476 F.3d at 765 (affirming dismissal of common law fraud claim as against defendants attenuated from alleged misrepresentations).

Third, an alleged basis for this claim is harm to non-party investors, on whose behalf Plaintiff has no standing to sue. Mot. at 18:3-12 (citing ¶ 189(e)). Although his Opposition downplays this pleading defect as an issue for summary judgment, Plaintiff does not contest that black letter standing law precludes him from recovering on behalf of non-parties. Opp. Ex. A at 21:3-6; Cal. Civ. Proc. Code § 367 ("Every action must be prosecuted in the name of the real party in interest . . . ."). Accordingly, the purported harm to non-parties lends no support to the alleged fraud claim.

Fourth, Plaintiff cannot shirk the consequences of his knowing execution of the relevant contractual documents, which defeats the fraud claim as a matter of law. Mot. at 18:13-20 (citing *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612 (1992) (there can be no reasonable or justifiable reliance supporting fraud where a written instrument contradicted alleged

1   misrepresentations)). While Plaintiff argues he had no "opportunity to review" the paperwork and

2   was not on notice of the contents, these assertions are rebutted by Plaintiff's own Complaint, which

3   concedes that he did have an opportunity to review the paperwork he signed and was on notice of the

4   contents. Opp. at 217-14; Compl. ¶ 91 (Plaintiff was given the paperwork for signature); ¶ 92

5   (Plaintiff asked questions about the documents); ¶ 93 (Plaintiff noted details such as signature lines

6   for others to sign). If Plaintiff chose not to read carefully the contents of the documents he was

7   presented and signed – in direct contravention of his duty to inform himself of their contents – he

8   cannot shift responsibility for that dereliction to Temujin Cayman, who was merely a party to the

9   transaction. ¶¶ 88-98.

10              **4.      The Conversion Claim Fails**

11         Plaintiff fails to support his conversion claim as well. Citing an inapposite decision on

12   summary judgment, he argues that "[t]he full extent of Temujin Delaware's involvement in

13   wrongfully taking possession of particular components of Plaintiff's property and the damages

14   arising from that conduct are premature factual matters." Opp. Ex. A at 21:20-22.[3] That misses the

15   point entirely. As a failure of basic notice pleading, Plaintiff has set forth no facts indicating a

16   connection between Temujin Cayman and the property at issue: luxury watches; credit card debt;

17   and a $50,000 investment in an entity with no alleged link to Temujin Cayman. Mot. at 19:1-10. Nor

18   can he, because the alleged activity pertaining to this property pre-dated Temujin Cayman's

19   existence, a lack of concurrency to which Plaintiff has no response. Opp. at 21:16-26.

20              **5.      Plaintiff Cannot Recover on Grounds of Unjust Enrichment**

21         Given the foregoing defects, there is no unjustified value transfer to Temujin Cayman for

22   which Plaintiff can recover on an unjust enrichment theory. That holds true under the laws of

23   Delaware (applicable to the derivative claim) and California (applicable to the direct claim). Mot. at

24   19:13-20:8.

25         Plaintiff argues in opposition that because he asserts fraudulent inducement of a contract (the

26   Eian asset sale agreement), and demands rescission of that contract, his remedy at law on the

27

28   _____
     [3] Again, Abittan relies on his prior Opposition that relates to Temujin Delaware.

contract does not preclude unjust enrichment. That argument is misguided. Under both Delaware and California law, "a claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 891 (Del. Ch. 2009); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). An asset sale agreement governs the relevant transactional relationship among Plaintiff, Eian, and any purchaser of Eian's assets (*i.e.*, Temujin Cayman). That document controls and forecloses an off-contract equitable claim, even one levied against a non-party to the contract. *See Kuroda*, 971 A.2d at 891-92 (rejecting argument that unjust enrichment claim should survive as against defendants who were not parties to relevant contract); *Cal. Med. Assn. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal.App.4th 151, 172-73 (2001) (contracts "covering a subject" preclude unjust enrichment claims on that subject).

Additionally, under California law applicable to the direct claim, "unjust enrichment is a theory of recovery, not an independent legal claim." *Keirsey v. eBay, Inc.*, 2012 WL 12920765, at *2 (N.D. Cal. Aug. 6, 2012). Plaintiff has no response to that point either.

### 6.    Plaintiff Is Not Entitled to an Accounting

Finally, Plaintiff concedes that under both Delaware and California law, an accounting is a remedy derivative of other claims, not a standalone claim. *See* Opp. Ex. A at 23. Because Plaintiff has failed to state any viable primary claim, there are no grounds for an accounting. Mot. at 20:10-18.

Moreover, under Delaware law, which potentially applies to at least the derivative accounting claim,[4] Plaintiff would need to be a shareholder of Temujin Cayman, and thus owed fiduciary duties

---

[4]  Delaware law potentially applies to Plaintiff's derivative accounting claim, given that Plaintiff is seeking an accounting on behalf of Eian (a Delaware corporation) from Temujin Cayman. *VeriSign*, 531 F.Supp.2d at 1215 (Delaware law, the law of the state of incorporation, applies to claims which implicate corporate internal affairs, including a demand for an accounting); *Miele v. Franklin Res., Inc.*, 2015 WL 4934071, at *7-9 (N.D. Cal. Aug. 18, 2015) (collecting authorities and applying Delaware law to fiduciary duty claim per California's internal affairs doctrine); *State Farm Mut. Auto Ins. Co. v. Superior Court*, 114 Cal.App.4th 434, 442 (2003) (law of the state of incorporation applies to "matters peculiar to the relationships among or between the corporation and its . . . shareholders"). The Court need not conclusively rule on the choice of law issue, however, because under California law, the result is the same – the claim fails. Mot. at 20:10-24.

---

by it, to be entitled to an accounting. Mot. at 20:19-24 (citing *Bus. Funding Grp., Inc. v. Architectural Renovators, Inc.*, 1993 WL 104611, at *2 (Del. Ch. Mar. 31, 1993) ("an accounting lies only where . . . a fiduciary relationship exists")). He is not and never has been a shareholder of Temujin Cayman (see Opp. Ex. A at 12:10-17), however, which defeats this claim under Delaware law.

Likewise, Plaintiff's attempt to rely on California law is unavailing, even if it did apply to the direct accounting claim. California law would require a fiduciary relationship between Plaintiff and Temujin Cayman, or absent that, at least some "relationship . . . between the plaintiff and defendant . . . [and] that some balance is due the plaintiff that can only be ascertained by an accounting." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013). Plaintiff has pleaded no such relationship with Temujin Cayman—fiduciary, contractual, or otherwise.

## III.   CONCLUSION

For the foregoing reasons, and because amendment would be futile given the nature of the deficiencies identified, the Court should dismiss the Complaint in its entirety with prejudice as against Temujin Cayman.


DATED:  November 29, 2021                    Respectfully submitted,

                                             HANSEN LAW FIRM, P.C.



                                             By: ____/s/  Craig A. Hansen_____
                                             Craig A. Hansen

                                             Attorneys for Defendant
                                             Temujin Labs Inc., a Cayman corporation
                                             By Special Appearance