# Exhibit A

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/30/2023 1:20 PM
Reviewed By: R. Walker
Case #20CV372622
Envelope: 12097520

ORDER ON SUBMITTED MATTERS

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| TEMUJIN LABS INC., <br><br> Plaintiff, <br><br> vs. <br><br> ARIEL ABITTAN, et al., <br><br> Defendants. | Case No.: 20CV372622 <br><br> **ORDER CONCERNING DEFENDANTS AND CROSS-COMPLAINANTS BENJAMIN FISCH'S AND CHARLES LU'S MOTION FOR SANCTIONS (AND ARIEL ABITTAN'S JOINDER)** |
| TEMUJIN LABS INC., <br><br> Plaintiff, <br><br> vs. <br><br> FRANK FU, et al., <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS. | Case No.: 21CV375422 <br><br> **ORDER CONCERNING DEFENDANT AND CROSS-COMPLAINANT FRANK FU'S MOTION FOR SANCTIONS (AND ARIEL ABITTAN'S PURPORTED JOINDER)** |

T These related actions arise from the business dealings of: (1) Temujin Labs Inc., a Delaware corporation ("Temujin"); (2) a related Cayman Islands corporation; and (3) Temujin's

1

co-founders, who go by the aliases of Lily Chao and Damien Ding.[1]  These business dealings involve the development of Temujin as a financial technology company operating under the name "Findora."

In Case No. 20CV372622 ("*Abittan*"), Temujin alleges that Defendants and Cross-Complainants Ariel Abittan, Benjamin Fisch, and Charles Lu conspired to: (a) assert a false claim of ownership of its business; (b) misappropriate its trade secrets; (c) usurp and interfere with control over its assets, such as social media accounts; and (d) interfere with its relationships with investors and business partners.  Mr. Abittan, a former business partner of Ms. Chao and Mr. Ding, filed a cross-complaint alleging, among other things, that Ms. Chao and Mr. Ding stole from and defamed him.  Mr. Fisch and Mr. Lu filed a separate cross-complaint, asserting that Ms. Chao and Mr. Ding misrepresented a host of important facts about their business and activities to induce Mr. Fisch and Mr. Lu to work for Temujin.

In Case No. 21CV375422 ("*Fu*"), Temujin alleges that its former consultant, Defendant and Cross-Complainant Franklin Fu, demanded additional under-the-table payments for himself and secret payments to certain investors rather than performing his duties in good faith.  In a cross-complaint, Mr. Fu alleges that Ms. Chao and Mr. Ding repeatedly lied to him about a range of subjects, including Temujin's technology and even their own identities.

Now before the Court are:  (1) a motion for issue and monetary sanctions by Mr. Fisch and Mr. Lu; and (2) a motion for issue, evidentiary and terminating sanctions by Mr. Fu.[2]  The Temujin Parties filed separate oppositions to each motion.  As discussed below, the Court GRANTS both motions in large part.

---

[1] The Temujin entities, a related entity called Discreet Labs Ltd., Ms. Chao, and Mr. Ding are referred to collectively herein as the "Temujin Parties."

[2] Mr. Abittan moves to join in both motions, which the Court GRANTS in *Abittan* and DENIES in *Fu* (as he is not a party in that case).

2

## I. BACKGROUND

In *Abittan*, the Court lifted the initial discovery stay on May 19, 2021. *Fu* was not originally designated as complex, and no discovery stay was entered when it was so designated in January 2022. Still, the parties and the Court have agreed to prioritize certain "identity"-related discovery in preparation for a mediation scheduled for mid-June 2023.

Accordingly, Mr. Fisch and Mr. Lu and, separately, Mr. Fu propounded written discovery requests concerning Ms. Chao and Mr. Ding's identities. In an order filed on August 22, 2022 ("August 22 Order"), the Court granted their motions to compel further, substantive responses to those requests, concluding that there was good cause for the discovery of Ms. Chao's and Mr. Ding's identities and aliases.[3]

Meanwhile, disputes arose about Ms. Chao and Mr. Ding's compliance with the August 22 Order, specifically with regard to their failure to disclose their Chinese character names. On the date set by the Court for production, instead of complying with the August 22 Order, the Temujin Parties filed a motion to disqualify counsel and to "clarify" the August 2022 Order.

In response, Mr. Fu applied ex parte for an order compelling compliance with the August 22 Order, which Mr. Fisch and Mr. Lu joined. On September 29, the Court granted the ex parte application (the "September 29 Order"), requiring the Temujin Parties to produce documents on or before October 6, and denied the Temujin Parties' motion for clarification of the Court's prior order.

On October 6, the Temujin Parties produced only heavily redacted and illegible copies of two drivers' licenses and emails with various aliases, and failed to produce complete records of Ms. Chao and Mr. Ding's true identities, such as passports and other documents. No explanation was offered for the redactions. Further, although the production contained electronic data, none of the documents were produced with any of the accompanying metadata as required by California law.

---

[3] Mr. Fisch and Mr. Lu specifically moved to compel further responses to Requests for Production of Documents ("RFPs") (Set One) Nos. 25 and 26.

Consequently, in October 2022, Mr. Fisch and Mr. Lu, as well as Mr. Fu, were forced to file additional motions to compel further production regarding Ms. Chao and Mr. Ding's Chinese character names. On November 21, the Court granted both motions (the "November 21 Order"). The Temujin Parties were required to make the ordered production within 10 calendar days of the filing of the Court's order.

On December 1, the Temujin Parties produced one additional document, which is a heavily redacted and illegible version of Ms. Chao's passport. No documents were provided showing Mr. Ding's Chinese character name. Mr. Fisch and Mr. Lu notified the Temujin Parties of their continued failure to comply with the Court's August 22, September 29 and November 21 Orders and stated that if this failure was not remedied by December 23, they would seek sanctions for their repeated refusal to comply.

At the January 19, 2023 case management conference, the Court expressed concerns with how long it was taking the Temujin Parties to comply with its prior orders; noted that the parties should meet and confer to try to resolve the issue once and for all; and that Mr. Fisch, Mr. Lu and Mr. Fu could file motions for sanctions if necessary. On January 27, the parties met and conferred, at which time counsel for the Temujin Parties agreed to produce clearer versions of the identity documents and stated they would articulate what additional identity documents would be produced by the following week.

No additional documents were produced as promised. Therefore, on May 1, Mr. Fisch and Mr. Lu filed the instant motion for issue and monetary sanctions. That same day, Mr. Fu filed his own motion for issue, terminating, and monetary sanctions. In their motion, Mr. Fisch and Mr. Lu maintain that sanctions are not only warranted for the Temujin Parties' non-compliance with the Court's prior orders, but also because the Temujin Parties have engaged in evidence spoliation. Mr. Fu makes the same arguments. The Temujin Parties oppose both motions. The Court held oral argument on these motions on May 25, and took the matters under submission.

## II. DISCUSSION

### A. Legal Standard

In both motions, the moving parties request that the Court impose sanctions pursuant to Code of Code of Civil Procedure section 2023.030 ("Section 2023.030"), subdivision (b). This code section authorizes the Court to impose various types of sanctions against anyone engaging in conduct that is a "misuse of the discovery process," to wit:

(1) A monetary sanction ordering that the party engaging in the misuse, or any attorney advising that conduct, or both, pay the reasonable expenses, including attorney fees, incurred by anyone as the result of that conduct;
(2) An issue sanction ordering that designated facts shall be taken as established in accordance with the claim of the party adversely affected by the misuse, or one which prohibits any party engaging in the misuse from supporting or opposing designated claims or defenses;
(3) An evidence sanction prohibiting any party engaging in misuse from introducing designated matters in evidence;
(4) A terminating sanction striking out the pleadings or part of the pleadings of the misusing party, staying further proceedings until a discovery order is obeyed, dismissing the action (or any part of it), or rendering a judgment of default against that party.

Disobeying a court order is explicitly recognized as a "misuse of the discovery process." (Code Civ. Proc., § 2023.010, subd. (g).) "The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should attempt[] to tailor the sanction to the harm caused by the withheld discovery. The trial court cannot impose sanctions for misuse of the discovery process as a punishment. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 [internal citations and quotations omitted].)

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' If a lesser sanction fails to

curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.'" (*Doppes*, *supra*, 174 Cal.App.4th at 992 [internal citations and quotations omitted].)

The sanction imposed "should not exceed that which is required to protect the interests of the party entitled to but denied discovery. Where a motion to compel has previously been granted, the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.)

**B.      Mr. Fisch and Mr. Lu's Motion for Sanctions**

1.      *Issue Sanctions*

In their motion, Mr. Fisch and Mr. Lu request that the Court impose issue sanctions against the Temujin Parties. In particular, they ask the Court to order that the following facts be established:

- Ms. Chao and Mr. Ding utilized numerous identities and aliases to perform work on behalf of Temujin including but not limited to the following: Lily Chao, Tiffany Chen, Yuting Chen, Tiffany Lily Chen, Yang Rong, Damien Ding, Damien Leung, Tao Ding, Damien Ray Donovan, Damien Ray Donovan Leung, Jianrong Wang, Alex Wang, Yang Yang, and the two Chinese character names reflected at p. 16:4-5 in the memorandum of points and authorities;
- Ms. Chao and Mr. Ding utilized aliases to sign corporate documents on behalf of Temujin, including investment documents, incorporation documents, and employee contracts; and
- Ms. Chao and Mr. Ding disguised their true identities in order to mislead Mr. Fisch and Mr. Lu and other third parties regarding Temujin's business ventures.

In order to prevail on a request for issue sanctions, the moving party must establish that there has been a willful failure to comply with the court's discovery order. (*Liberty Mutual Fire*

1  *Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102.) If the moving party
2  makes such a showing, then the burden of proof shifts to the party seeking to avoid sanctions to
3  establish a suitable justification for her conduct. (*Corns v. Miller* (1986) 181 Cal.App.3d 195,
4  201.)
5        An issue sanction is considered a drastic remedy, which is only appropriate when a party
6  repeatedly and willfully fails to provide evidence to the opposing party as required by court
7  order. (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 390, disapproved on
8  another ground by *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 222, fn. 9.) The rationale
9  underlying the imposition of an issue sanction is "that a persistent refusal to comply with an
10 order for the production of evidence is tantamount to an admission that the disobedient party
11 really has no meritorious claim…." (*Id.* at p. 390 [internal quotations omitted].)
12       Here, Mr. Fisch and Lu maintain that issue sanctions are warranted due to the Temujin
13 Parties' persistent refusal to comply with numerous Court orders compelling them to produce
14 documents concerning Ms. Chao and Mr. Ding's identities and aliases, and are also warranted
15 because the Temujin Parties have engaged in evidence spoliation.
16       The Court agrees.  On three separate occasions, the Court has unequivocally found that
17 Mr. Fisch and Mr. Lu are entitled to documents concerning Ms. Chao's and Mr. Ding's identities
18 and aliases and yet, more than eight months after this conclusion was first reached, the Temujin
19 Parties still have not produced all of the responsive materials.
20       Despite the unambiguous nature of the Court's August 22 Order, the Temujin Parties
21 failed to produce responsive documents, which forced Mr. Fisch and Mr. Lu to move for ex parte
22 relief.  This resulted in the September 29 Order, wherein the Court reiterated the Temujin
23 Parties' obligation to produce materials concerning Ms. Chao's and Mr. Ding's identities and
24 aliases.  However, the Temujin Parties again failed to fully comply with the aforementioned
25 order, providing only redacted and illegible copies of Ms. Chao's and Mr. Ding's drivers'
26 licenses- that may have been doctored and did not include Chinese character names- and PDF
27 copies of various emails, none of which identified either individuals' use of aliases.  No
28 explanation for the redactions was provided, which were made at Ms. Chao's direction.  (See

Declaration of Timothy Reynolds in Support of Motion for Sanctions ("Reynolds Decl."), ¶ 10, Exhibit I at 81:20-82:9; 91:11-15, and Exhibit J (Ding Depo.) at 82:23-83:2, 96:2-19.)

      Mr. Fisch and Mr. Lu were once again forced to bring yet another motion to obtain what the Court had repeatedly found they were entitled to, and the Court's November 21 Order was equally as unequivocal as its prior ones. Yet the Temujin Parties' production was still sorely lacking, as they produced only a single page in response- an illegible and heavily redacted copy of Ms. Chao's passport- and failed to justify the redaction. All told, the Temujin Parties have refused to comply with the Court's prior orders to produce (1) any documents reflecting Mr. Ding's Chinese character name; (2) legible and unredacted identification cards for Ms. Chao and Mr. Ding; and (3) documents, such as contracts or employee files, relating to Ms. Chao and Mr. Ding using their true names or aliases as employees of Temujin or while conducting business for Temujin.

      Further, there appears to be merit to Mr. Fisch's and Mr. Lu's assertion that Ms. Chao and Mr. Ding have engaged in evidence spoliation. During her deposition in March 2023, when asked about the redacted driver's license she produced, Ms. Chao claimed she no longer possessed it because she had "lost" it. (See Reynolds Decl., ¶ 10, Exhibit I at 91:18-92:5.) Then, when questioned about the heavily redacted and illegible version of the passport she produced, Ms. Chao stated that she no longer was in possession of it and supposedly sent it to China in January of 2023. (*Id*. at 83:1-11.) This testimony appears to be contrary to the declaration, dated January 3, 2023, that Ms. Chao submitted in support of a prior application for an order designating documents highly confidential when she stated that she was planning to travel back to China in the near future--how would Ms. Chao travel if she did not have her passport? (Reynolds Decl., Exhibit L at ¶ 3.) Additionally, Mr. Ding admitted in his own deposition, also in March 2023, that he had deleted potentially relevant emails from his Findora-related email addresses this year to "be on the safe side." (*Id*., Exhibit J at 195:5-22.) The Court finds this admission troubling.

All told, the Court believes that moving parties have established, based on the Temujin Parties' persistent failure to produce all responsive identity-related documents, that there has been a willful failure to comply with its discovery orders. (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102.) Consequently, the burden shifts to the Temujin Parties to establish a suitable justification for their conduct. (*Corns v. Miller* (1986) 181 Cal.App.3d 195, 201.)

The Temujin Parties' response to all of the foregoing is to insist that they have complied with the Court's prior orders and produced all responsive documents, and to note that they have not been sanctioned for noncompliance previously. But they do not address any of the specific issues raised by the moving parties concerning the redacted and illegible copies of Ms. Chao and Mr. Dong's driver's licenses and Ms. Chao's passport that they produced, or their failure to produce documents reflecting Mr. Ding's Chinese character name and which relate to Ms. Chao and Mr. Ding using their true names or aliases as employees of Temujin or while conducting business for Temujin. Nor do they address their purported representations when the parties met and conferred in January 2023 that they would produce clearer versions of the identity documents and that they would articulate what additional identity documents would be produced by the following week. Consequently, the Temujin Parties have failed to justify their behavior.

The Temujin Parties emphasize that the Court issued an order on May 8, 2023, denying the opposing parties' request for further "identity" depositions of Ms. Chao and Ms. Ding. But this denial was not an endorsement of the Temujin Parties' conduct with respect to producing identify-related information for Ms. Chao and Mr. Ding; the Court opined that it appeared that Ms. Chao and Mr. Ding had provided "vague and evasive answers to many questions- or responded with hard-to-believe claims that they did not remember basic facts about their own lives." While it concluded that it did not believe issuing a "similarly vague order directing them to provide further testimony on the general subject of their identities" would be helpful and thus would not do so, it made clear that its order did not preclude "fuller" depositions of the parties in the future, most likely after the planned mid-June mediation.

Ultimately, the fact remains that repeated efforts by Mr. Fisch and Mr. Lu to obtain information necessary to ascertain the real identities of Ms. Chao and Mr. Ding have been regularly and willfully rebuffed by the Temujin Parties.  The Court will not continue to entertain such obstructionism by the Temujin Parties.  Thus, the Court concludes that the issue sanctions requested by the moving parties are warranted.

        2.     *Monetary Sanctions*

Mr. Fisch and Mr. Lu also request that the Court impose monetary sanctions in the amount of $500/day since the Court issued the September 29 Order, and an additional $1,500/day for each day the Temujin Parties refuse to comply with the Court's orders from the date of the Court's decision on this motion for sanctions.  The Court is not inclined to impose these significant monetary sanctions from the issuance of the September 29 Order, given the absence of any preceding orders imposing monetary sanctions for noncompliance.  As for other monetary sanctions, the Court does not believe such sanctions need to be imposed now, given the substantial issue sanctions that the Court has issued.  But if the information ordered to be produced by Ms. Chao and Mr. Ding is not produced within 30 days of the date of this order, Mr. Fisch and Mr. Lu can notice a new motion for monetary (or even terminating) sanctions, and the Court will seriously consider it.

**C.**     **Mr. Fu's Motion for Sanctions**

        1.     *Issue Sanctions*

In his motion, Mr. Fu requests that the Court impose issue sanctions against the Temujin Parties pursuant to Section 2023.030, subdivision (b).  Specifically, he seeks an order which establishes and prevents the Temujin Parties from disputing that:

- Ms. Chao and Mr. Ding have wrongfully used multiple aliases in the relevant time period of this lawsuit in an effort to impede discovery, delay the proceedings, and drive up the expense of litigation for Mr. Fu;
- Ms. Chao and Mr. Ding's withholding of identify information was without legal justification;
- Ms. Chao and Mr. Ding have wrongfully used aliases in the relevant period of lawsuit, including without limitation: Lily Chao, Tiffany Chen, Yuting Chen, Tiffany Lily Chen, Yang Rong, Damien Ding, Damien Leung, Tao Ding, Damien Ray Donovan, Damien Ray Donovan Leung, Jianrong Wang, Alex

10

> Wang, Yang Yang, and the same Chinese character names as requested by Mr. Fisch and Mr. Lu;
> - Ms. Chao and Mr. Ding utilized aliases to sign corporate documents on behalf of Temujin, including investment documents, incorporation documents, and employee contracts;
> - Ms. Chao and Mr. Ding have unlawfully and wrongfully withheld identity information from Mr. Fu in discovery and in violation of Court orders, including by refusing to turn over identity documents, improperly redacting new identify documents, and- in the case of Ms. Chao- sending her passport out of the Country while it was subject to discovery.

In substance, Mr. Fu's motion is largely similarly to Mr. Fisch's and Mr. Lu's, and thus is similarly persuasive. In fact, Mr. Fu offers further details on the evasive and arguably non-credible responses provided by Ms. Chao and Mr. Ding at their depositions in response to questions concerning their identities. Ms. Chao admitted that a "friend" had redacted her passport, which she had sent to China, but refused to provide any information as to the identity of that individual. She also claimed to have lost her Hong Kong driver's license, of which only a redacted copy was provided. The absence of the redacted information, Mr. Fu explains, makes it near-impossible to locate and investigate if the name on the passport is genuine and who really Ms. Chao is. (See Declaration of John Durrant in Support of Motion for Issue, Evidence and Monetary Sanctions ("Durrant Decl."), ¶ 5, Exhibit D (Chao Depo.) at 80:6-82:10-21, 83:2-11, 91:18-92:5.)

As for Mr. Ding, he was evasive in providing a current address and claimed not to remember the address of a residence he had lived in prior to that for many years. (Durrant Decl., ¶ 7, Exhibit E (Ding Depo.) at 86:22-87:1, 87:21-88:8, 88:23-89:7.) He also claimed not to remember other email addresses he had used relating to Temujin and Findora, while acknowledging that such addressed had been used. (*Id*. at 193:7-14, 210:4-211:17.) Mr. Ding also initially denied having a passport, but then admitted that he had travelled to China in the past and had a passport for such travel. (*Id*., 105:12-25, 106:1-20.) He claimed not to know where it was. (*Id*., 109:22-111:17.) Mr. Ding was similarly evasive when asked who redacted his driver's license.

The foregoing further demonstrates willfulness on the part of the Temujin Parties' in refusing to produce responsive materials concerning the identities of Ms. Chao and Mr. Dao.

11

1   The Temujin Parties' opposition to Mr. Fu's motion is largely the same as their
2   opposition to Mr. Fisch's and Mr. Lu's, save for an assertion that Mr. Fu lacks standing to
3   request sanctions because he did not propound the discovery at issue.[4]  But in its prior orders, the
4   Court did order the Temujin Parties to produce identity-related information about Ms. Chao and
5   Mr. Ding to Mr. Fu (who also regularly had to seek Court intervention to obtain what he was
6   entitled to), as well as Mr. Fisch and Mr. Lu, and thus he has been subject to the same misuse of
7   the discovery process experienced by them such that he too is entitled to sanctions for the
8   Temujin Parties' obstructionism.  (See *Parker v. Wolters Kluwer United States, Inc.* (2007) 149
9   Cal.App.4th 285, 301 [party who did not propound discovery may obtain award of sanctions if it
10  shows that it suffered detriment as the result of the sanctioned party's misuse of the discovery
11  process].)

As it did with Mr. Fisch and Mr. Lu's motion, the Court concludes that Mr. Fu is entitled
to the issue sanctions requested based on the Temujin Parties' willful and continued obstruction
into efforts to ascertain information concerning Ms. Chao and Mr. Ding's true identities.

2.  *Monetary Sanctions*

Mr. Fu also requests that the Court impose sanctions in the amount of $500/day since the
Court issued the September 29 Order, and an additional $1,500/day for each day the Temujin
Parties refuse to comply with the Court's orders from the date of the Court's decision on this
motion for sanctions.  The Court addressed this request with regard to Mr. Fisch and Mr. Lu, and
makes the same decisions here.

3.  *Terminating Sanctions*

As discussed above, the Court finds the conduct of Ms. Chao and Mr. Ding to be
egregious.  However, the Court is not ready to take the drastic step of terminating sanctions—at
least not yet.  But if the information ordered to be produced by Ms. Chao and Mr. Ding is not
produced within 30 days of the date of this order, Mr. Fu can notice a new motion for
terminating sanctions, and the Court will seriously consider it.

---

[4] The Temujin Parties also note that Mr. Fu has not included a separate statement with his motion papers.  While true (see Cal. Rules of Court, rule 3.1345), the Court declines to deny the motion on this technical basis, especially where no prejudice has been shown.

12

### III. CONCLUSION

Mr. Fisch and Mr. Lu's motion for sanctions is GRANTED IN PART as to the requested issue sanctions, and DENIED WITHOUT PREJUDICE concerning monetary sanctions.

Mr. Fu's motion for sanctions is GRANTED IN PART as to the requested issue sanctions, and DENIED WITHOUT PREJUDICE concerning monetary and terminating sanctions.

**IT IS SO ORDERED.**

Date: May 30, 2023



The Honorable Sunil R. Kulkarni
Judge of the Superior Court

13