Constantine P. Economides (*pro hac vice*)
(Florida Bar No. 118177)
Brianna K. Pierce
(CA Bar No. 336906)
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 971-5943
Email: ceconomides@fnf.law
           bpierce@fnf.law

*Attorneys for Plaintiff Ariel Abittan*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ARIEL ABITTAN,<br><br>            Plaintiff,<br><br>      v.<br><br>LILY CHAO (A/K/A TIFFANY CHEN, A/K/A YUTING CHEN), et al.<br><br>            Defendants. | Case No. 20-CV-09340-NC<br><br>**PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE RELATED TO COSTS ASSOCIATED WITH PLAINTIFF'S SUBPOENA FOR THE PRODUCTION OF DOCUMENTS TO HANSEN LAW FIRM** |

### I.     INTRODUCTION

Hansen Law Firm ("HLF") seeks $6,570 from Plaintiff Ariel Abittan ("Plaintiff") and his counsel for cost associated with Plaintiff's Subpoena for the Production of Documents ("Subpoena"). *See* [ECF Nos. 199 and 205]. To warrant sanctions, however, the Court must find that the Subpoena actually imposed an undue burden on HLF and that Plaintiff did not take reasonable steps to avoid imposing such a burden. The record does not support such a finding. Instead, Plaintiff planned to meet and confer over the Subpoena, but the Subpoena was quashed prior to any discussion between Plaintiff and HLF. As such, the record is devoid of evidence (and Craig Hansen's ("Hansen") declaration in support of the costs does not establish) that the Subpoena actually imposed an undue burden on HLF. Moreover, Plaintiff's Subpoena was served in good faith only after Plaintiff attempted to discover information about the individuals and

entities identified in the Subpoena from Defendants and appropriate government agencies. When Plaintiff's party requests were ignored, Plaintiff sought information from all previous attorneys purportedly hired by Defendants—not just HLF. If Plaintiff had conducted the meet and confer with HLF—as Plaintiff did with numerous other law firms that received substantially similar subpoenas—Plaintiff would have acted in good faith to narrow or limit the Subpoena where appropriate, based on information provided by HLF about the number of potentially responsive documents and any burdens associated with a review or production.

In sum, Plaintiff submits that it is inequitable to impose sanctions against Plaintiff and/or his counsel where Plaintiff took reasonable steps to obtain the information from other sources, Plaintiff had been coordinating to meet and confer with HLF about the Subpoena, and the record is devoid of facts showing undue burden.

## II.     LEGAL STANDARD

"In determining whether to impose Rule 45 sanctions, the Court employs a two-step process by which it first determines whether the subpoena at issue imposed an undue burden and, if so, what, if any 'reasonable steps' the party who served the subpoena took to avoid imposing such a burden." *Black v. Wrigley*, No. 18-CV-2367 GPC-BGS, 2019 WL 2717212, at *4–6 (S.D. Cal. June 28, 2019). In other words, courts consider the reasonableness of the subpoena as well as the subpoenaing party's actions *before* and *after* service of the subpoena.

In assessing reasonableness under Rule 45, Courts pay particular attention to the meet and confer process. For example, in *Miller v. Ghirardelli Chocolate Co.*, No. C 12-4936 LB, 2013 WL 6774072, at *5 (N.D. Cal. Dec. 20, 2013), the Court declined to award costs until a meet and confer occurred, noting: "One good insight that a meet-and-confer process gives is how much it might cost to get the discovery, which in turn will guide Plaintiff's decision about what to ask for (knowing that costs can be shifted) and the court's inquiry about whether to shift costs. The court will not order that cost-shifting without a record." By contrast, in *Franklin v. Allstate Corp.,* No. C-06-1909, 2008 WL 590508, **1-2 (N.D. Cal. Feb. 29, 2008), the Court imposed sanctions against a subpoenaing party for not adequately meeting and conferring in an attempt to obviate

the discovery dispute. Plaintiff is unaware of any case law in which a subpoenaing party is sanctioned after requesting a meet and confer but before the meet and confer occurs.

### III.  ARGUMENT

#### A.  The Factual Record Does Not Support a Finding That the Subpoena Imposed an Undue Burden On HLF

There is no evidence to support a conclusion that the Subpoena would have been unreasonably burdensome on HLF. Aside from the requests concerning the parties and related actions, Plaintiff submits, upon information and belief, that HLF has few (if any) documents responsive to most of the Subpoena's Requests. Indeed, Plaintiff's investigation has uncovered that the individuals and entities identified in the Subpoena are aliases and shell companies that have no active business or operations. Accordingly, the universe of documents responsive to those requests is likely small.

Furthermore, HLF has not stated how many documents it has in its possession. Plaintiff intended to inquire into the scope of the requests during the meet and confer with HLF. At the meet and confer, Plaintiff would have obtained an understanding as to the universe of HLF's documents, which would have educated Plaintiff as to how to tailor the requests to avoid undue burden, if such burden existed.

In other words, HLF's universe of documents is small (if existent) for its non-clients and unknown with respect to its prior clients. Without more, the record does not support a finding of undue burden.

#### B.  Plaintiff Took Reasonable Steps to Avoid Imposing an Undue Burden On HLF

Prior to serving the Subpoena, Plaintiff attempted to obtain the information from other sources. First, on January 13, 2022—nearly one and a half years prior to serving the Subpoena on HLF—Plaintiff served a similar set of requests on Temujin Labs in the related state action. Temujin Labs, through its agents Chao and Ding, did not produce any documents related to the aliases or non-party entities identified in the Subpoena. In a second attempt to obtain discovery into the parties, aliases, and non-party entities, Plaintiff obtained copies of all corporate

documents directly from the entities' states of incorporation. Plaintiff's investigation revealed that the non-party entities appear to lack legitimate management or operations. Accordingly, because Plaintiff was unable to obtain reliable information about the aliases and non-party entities from other sources, Plaintiff sought information about the entities and individuals that defrauded Mr. Abittan from the law firms that had purportedly contracted with those entities and individuals and that could confirm, at a minimum, the names, addresses, and identities of the defendants and their alleged co-conspirators. Plaintiff, therefore, acted reasonably before serving the subpoena on HLF.

After serving the subpoena, Plaintiff continued to take reasonable steps to limit the burden on HLF. After HLF served its objections, Plaintiff promptly requested a meet and confer. In response, HLF agreed to meet and confer with Plaintiff's counsel in good faith prior to moving to quash the Subpoena. However, Plaintiff's attempts to meet and confer about the Subpoena were cut short by Defendants'—not HLF's—discovery letter. If Plaintiff had concluded the meet and confer with HLF, Plaintiff would have inquired as to the burden imposed by the Subpoena, conferred over the applicability of the crime-fraud exception to any portion of otherwise privileged documents, and discussed the need (or lack thereof) of a privilege log. Notably, Plaintiff's counsel had already undertaken the foregoing meet and confer with other subpoena recipients, none of whom subsequently sought to quash the subpoenas. Because Plaintiff attempted to meet and confer with HLF, Plaintiff's actions after serving the Subpoena were reasonable.

C.      **Deductions From the Time Submissions are Appropriate**

Even if the Court awards fees, HLF hasn't shown that its claimed fees are reasonable. Hansen declares that HLF spent 16.9 hours on Subpoena-related actions. However, HLF does not provide any detailed time entries. For example, Hansen claims that some portion of HLF's 16.9 hours were expended on attending a hearing related to this discovery dispute. However, Hansen does not state whether he has excluded the portion of the hearing, which related only to the Chen action. Moreover, Hansen does not provide sufficient detail to explain the division of labor that

necessitated four attorneys to expend 16.9 hours responding to each request with nearly identical copy and paste objections. There is no indication of whether HLF conducted a search or review in conjunction with the subpoena, and as stated above, the parties were coordinating but had not yet met and conferred. Because the time entries are too vague to evaluate, Plaintiff submits that the fees should be reduced, if awarded.

HLF also requests costs in response to their opposition to Plaintiff's counsel's reasonable request for a one-week extension in light of a trial schedule. Plaintiff is unaware of any case law that supports the imposition of fees for opposing a reasonable request for a one-week extension— particularly when the extension is granted. Also, it is unclear why HLF undertook the time and cost to oppose the extension request or if any prejudice was suffered by the one-week delay. Accordingly, HLF's request for fees to oppose the extension should be denied.

**IV.     CONCLUSION**

Based on the foregoing, Plaintiff respectfully submits that HLF's request for fees should be denied or, in the alternative, reduced.

Dated: July 7, 2023

*/s/ Constantine P. Economides*
Constantine P. Economides (*pro hac vice*)
Brianna K. Pierce (CBN 336906)
FREEDMAN NORMAND FRIEDLAND LLP
1 SE Third Avenue, Suite 250
Miami, Florida 33131
Tel: (305) 971-5943
Email: bpierce@fnf.law
        ceconomides@fnf.law

C*ounsel for Plaintiff Ariel Abittan*